# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LESLIE CONTROLS, INC.,<br><br>             Debtor. | Chapter 11<br><br>Case No. 10-12199 (CSS)<br><br>**Related Docket No. 13** |

## INTERIM ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 361, 362, 363 AND 364, (I) APPROVING A POSTPETITION CREDIT AGREEMENT, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING SUPERPRIORITY CLAIMS AND LIENS TO POSTPETITION LENDER, (IV) GRANTING ADEQUATE PROTECTION TO PREPETITION LENDER, AND (V) SCHEDULING A FINAL HEARING

THIS MATTER having come before this Court on the motion dated July 12, 2010 (the "Motion")[1] of Leslie Controls, Inc. ("Leslie" or the "Debtor") seeking, among other things, entry of this interim order (the "Order"):

(i) Authorizing the Debtor, pursuant to sections 105(a), 361, 362, 363 and 364 of title 11 of the United States Code §§ 101, et seq. (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to obtain postpetition financing on a senior secured and superpriority basis in an amount not to exceed $10 million pursuant to the terms and conditions of the Postpetition Credit and Security Agreement, by and between the Debtor and CIRCOR International, Inc., its parent corporation ("CIRCOR"), in the form annexed as Exhibit A hereto (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "Postpetition Credit Agreement") to (a) fund, among other things, ongoing working capital and general corporate needs of the Debtor, (b) pay certain costs and

---

[1] Capitalized terms used but not defined herein have the meanings ascribed thereto in the Motion.

expenses of administration of the Chapter 11 Case, and (c) pay fees and expenses owed to

CIRCOR under the Postpetition Credit Agreement;

(ii)     Authorizing and empowering the Debtor to perform such acts as may be

reasonably necessary or desirable in order to give effect to the provisions of the Postpetition

Credit Agreement;

(iii)     Authorizing the Debtor pursuant to sections 361, 363(c) and (e), and

364(d)(1) if the Bankruptcy Code to use Cash Collateral (as defined under section 363 of the

Bankruptcy Code) and provide adequate protection to CIRCOR on account of its Prepetition

Promissory Note (as defined below) for any diminution to the Prepetition Collateral (as defined

below) caused by the use of Cash Collateral, the physical deterioration, consumption, use, sale,

lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral, the

imposition of the automatic stay, the seniority of the DIP Liens, the subordination to the Carve-

Out Expenses, and the terms of the financing and other relief granted herein;

(iv)     Granting CIRCOR, pursuant to section 364(c) of the Bankruptcy Code,

valid, binding, continuing, enforceable, fully perfected and unavoidable first priority senior

security interests in and liens on the Collateral,[2] subordinated only to the Carve-Out Expenses

as provided herein immediately upon entry of this Order;

---

[2] The "Collateral" means all of the Debtor's right, title and interest in and to all real estate, fixtures, real property leaseholds, chattel property, money, accounts (including accounts receivable), contract rights, lease rights, securities and securities accounts, deposit accounts, machinery, equipment, chattel paper, instruments, payment intangibles and general intangibles, and all other rights and obligations of any kind, whether or not arising out of or in connection with the sale or lease of goods or the rendering of services, and whether or not earned by performance (including, without limitation, any right with respect to workers' compensation or other deposits made by the Debtor and any right to receive tax refunds or other refunds, reimbursements or payments from any governmental authority), and all rights in and to all security agreements, leases and other contracts securing or otherwise relating to any such money, accounts, contract rights, securities and securities accounts, deposit accounts, equipment, chattel paper, instruments, payment intangibles and general intangibles; and all proceeds and supporting obligations of any and all of the foregoing (including proceeds from any lease of real property owned by the Debtor); provided, however, that, notwithstanding the foregoing, the Collateral shall not include (A) any rights under any agreements that have been validly assigned by the Debtor prior to the date hereof,

2

(v)     Authorizing and directing the Debtor to pay, without further order of this Court, the principal, interest, fees, expenses and other amounts payable to CIRCOR under the Postpetition Credit Agreement as they become due, all as and to the extent provided in the Postpetition Credit Agreement;

(vi)     Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary (a) to implement and effectuate the terms and provisions of the Postpetition Credit Agreement and this Order and (b) to permit CIRCOR to enforce the security interest in the Collateral and to pursue the rights and remedies thereunder after three (3) days notice to the Debtor, its counsel, any committee appointed in this case, and the United States Trustee; and

(vii)     Scheduling pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") before this Court to consider entry of an order approving entry into the Postpetition Credit Agreement.

This Court having considered the Motion and the Exhibits attached thereto, including, without limitation, the Postpetition Credit Agreement; and due and proper notice of the Motion having been provided in accordance with Bankruptcy Rule 4001(b) and (c) and Local Rule 4001-2; and an interim hearing having been held and concluded on July 13, 2010

---

(B) any claims, causes of action or recoveries realized pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code (other than with respect to recoveries received pursuant to Section 549 of the Bankruptcy Code to the extent the funds recovered were funds that were borrowed under the Post-Petition Credit Agreement), or (C) to the extent that the grant of a security interest in any of the Collateral would constitute a valid and enforceable restriction in favor of a third party, or give any party thereto a right to terminate its obligations thereunder, in each case after giving effect to Articles 9-407, 9-408 and 9-409 of the Delaware Uniform Commercial Code or equivalent provisions of applicable law (the "Excluded Assets"); provided further, however, that if, at any time, the security interest granted hereunder could include all or part of the Excluded Assets (as defined in the Postpetition Credit Agreement) without violating the rights of such third parties (whether because the applicable restriction, if any, becomes void or ineffective or lapses, or for any other reason), then the Collateral automatically shall be deemed to include such Excluded Assets as if the previous proviso had never been in effect.

46392/0001-6864388v3

(the "Hearing") to consider the relief requested in the Motion; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled on the merits by this Court; and it appearing that granting the relief requested in the Motion is necessary and appropriate, and is otherwise fair and reasonable and in the best interests of the Debtor, its estate, its creditors, its equity holders, and other parties in interest, and is essential for the Debtor's continued operation during the pendency of this case; and upon consideration of the evidence presented, proffered or adduced at the Hearing; and after due deliberation and consideration and good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

(A)　　Commencement Date. On July 12, 2010 (the "Commencement Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court, commencing this case (the "Chapter 11 Case"). The Debtor continues to manage and operate its business and property as debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

(B)　　Jurisdiction and Venue. This Court has jurisdiction over these proceedings, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a "core" proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2). Venue for this case and for the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

(C)　　Prepetition Promissory Note. Pursuant to that certain Secured Promissory Note dated as of July 29, 2009 by and between the Debtor, as Borrower, and CIRCOR, as Lender (the "Prepetition Promissory Note"), CIRCOR committed to make loans in an amount not to

4

exceed $30,000,000 for the benefit of the Debtor. As of the Commencement Date, the Debtor was indebted to CIRCOR in the amount of $14,661,064 on account of outstanding principal and accrued but unpaid interest under the Prepetition Promissory Note.

(D)     Prepetition Collateral. Pursuant to the Prepetition Promissory Note, the Debtor granted CIRCOR a continuing security interest in all of its existing and after acquired accounts, books, deposit accounts, equipment, general intangibles, inventory, investment property, negotiable collateral, real property, money, or other tangible or intangible property, the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any and all accounts, books, deposit accounts, equipment, general intangibles, inventory, investment property, negotiable collateral, real property, money, or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof (the "Prepetition Collateral").

(E)     CIRCOR, in its capacity as prepetition secured lender, has agreed to and consented to the granting hereunder of the senior security interests pursuant to the Postpetition Credit Agreement in consideration of the Replacement Liens and Administrative Claim provided hereunder as adequate protection to CIRCOR, in its capacity as prepetition secured lender.

(F)     Need for Postpetition Financing. The Debtor has demonstrated sufficient cause to warrant obtaining postpetition financing pursuant to section 364 of the Bankruptcy Code. In the absence of the financing provided by the Postpetition Credit Agreement, the Debtor risks being unable to continue operating its business and to successfully reorganize, to the detriment of the Debtor, its estate, its creditors, its equity holders and other parties in interest. Absent the

5

approval of the Postpetition Credit Agreement, the Debtor will not have financing generally available to operate its business, maintain the estate's property, and administer this case.

(G)     Purpose and Necessity of Financing, No Credit Available on More Favorable Terms. Given the Debtor's current financial condition, available assets and contingent liabilities, as well as current conditions in the credit markets, the Debtor is unable to obtain financing from any lender on terms equal to or more favorable than those provided by CIRCOR under the Postpetition Credit Agreement. The Debtor has been unable to obtain unsecured credit allowable solely as an administrative expense pursuant to sections 364(b) and 503(b) of the Bankruptcy Code. The Debtor also has been unable to obtain credit solely having priority over all other administrative expenses specified in sections 503(b) and 507(a) and (b) of the Bankruptcy Code.

(H)     Good Faith of CIRCOR. Based upon the record before the Court, the Debtor chose CIRCOR as its postpetition lender in good faith, without collusion, and after obtaining the advice of experienced counsel. The Debtor and CIRCOR proposed and negotiated the terms of the Postpetition Credit Agreement in good faith, at arm's length and without collusion. The terms of the Postpetition Credit Agreement are in the best interests of the Debtor, its estate, and its creditors and equity holders. CIRCOR is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is consequently entitled to the protections of the provisions of section 364(e) of the Bankruptcy Code. CIRCOR's claims, superpriority status, security interests and liens and other protections arising from or granted pursuant to this Order and the Postpetition Credit Agreement will not be affected by any subsequent reversal, modification, vacatur or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

46392/0001-6864388v3

(I)     Interim Financing. The Debtor has demonstrated sufficient cause to warrant an initial draw of not more than $2 million on an interim basis pending a final hearing on the relief sought herein.

(J)     Cash Budget. The Debtor has represented that the Cash Budget is reasonable and will allow the Debtor to operate this Chapter 11 Case as a going concern. CIRCOR is relying on the Debtor's compliance with the Budget in accordance with the terms of the Postpetition Credit Agreement and this Order in determining to enter into the Postpetition Credit Agreement. The Cash Budget is attached as Exhibit B to this Order.

(K)     Section 552. In light of the subordination of its security interest and super-priority administrative claims to the Carve-Out Expenses, CIRCOR is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

(L)     Notice. Notice of the Motion has been provided to: (i) the Office of the United States Trustee, (ii) counsel to CIRCOR, (iii) counsel to the Ad Hoc Committee, (iv) counsel to the proposed Future Claimants' Representative, (v) the United States Securities and Exchange Commission, (vi) the Internal Revenue Service, (vii) the Office of the United States Attorney for the District of Delaware, (viii) those entities or individuals listed on the Debtor's list of thirty largest unsecured creditors, (ix) those firms listed on the Debtor's list of fifty-eight asbestos plaintiff firms with the largest number of asbestos cases against the Debtor, (x) the insurance carriers providing asbestos insurance coverage to the Debtor, and (xi) all parties, if any, with recorded liens held against property of the Debtor. Notice of the Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). Under the circumstances, such notice of the Motion and the Hearing is sufficient and satisfies the

46392/0001-6864388v3

requirements of section 102(1) of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Rule 4001-1.

NOW, THEREFORE, on the Motion and the record before this Court with respect to the Motion, and with the consent or deemed consent of the Debtor and CIRCOR to the form and entry of this Order, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:**

1.      Disposition. The Motion is hereby granted as set forth in this Order.

2.      Authorization to Borrow Under the Postpetition Credit Agreement. The Debtor is authorized upon execution and delivery of the Postpetition Credit Agreement to obtain postpetition financing in the amount of not more than $10 million on a superpriority and secured basis pursuant to the terms and conditions of the Postpetition Credit Agreement and this Order.

3.      Authorization for Initial Draw. The Debtor is authorized to make an initial draw of not more than $2 million upon or after entry of this Interim Order.

4.      Approval of Postpetition Credit Agreement. The Debtor is hereby authorized to enter into and to perform all obligations under the Postpetition Credit Agreement, including paying the principal, interest, fees, expenses and other amounts due to CIRCOR pursuant to the Postpetition Credit Agreement as such become due, which payments shall not otherwise be subject the approval of this Court.

5.      Authorization to Enter Ancillary Documents. The Debtor is authorized to execute any and all ancillary documents necessary to evidence and document the Postpetition Credit Agreement and the DIP Liens (defined below) granted pursuant to the Postpetition Credit Agreement and this Order.

6.      Binding Obligations. Upon execution and delivery of the Post Petition Credit

46392/0001-6864388v3

Agreement, all of the obligations described in the Postpetition Credit Agreement and the documents related thereto constitute legal, valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the Postpetition Credit Agreement.

7. <u>DIP Liens</u>. CIRCOR is granted, pursuant to section 364(c)(2) and (d) of the Bankruptcy Code, continuing, valid, binding, enforceable, and automatically perfected postpetition senior security interests and liens (collectively, the "<u>DIP Liens</u>") in and on any and all of the Collateral. The DIP Liens (a) shall be subordinate to the Carve-Out Expenses, (b) shall not be made subject to or *pari passu* with any lien or security interest except by further order of this Court, (c) shall be valid and enforceable against any trustee appointed in this case, in any successor case, or upon the dismissal of this case, and (d) shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

8. <u>Superpriority Claim</u>. CIRCOR is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in this case (the "<u>Superpriority Claim</u>") for all reimbursement obligations and any other obligations, contingent or absolute, which may now or from time to time be owing by the Debtor to CIRCOR under the Postpetition Credit Agreement, including, without limitation, all principal, accrued interest, costs, and any other amounts due under the Postpetition Credit Agreement, (a) with priority over any and all administrative expense claims, adequate protection and other diminution claims, unsecured claims and all other claims against the Debtor or its estate in this case, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses and claims of the kind specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726,

9

1113, and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment and (b) which shall at all times be senior to the rights of the Debtor or its estate, and any trustee or other representative of the Debtor's estate to the extent permitted by law, which Superpriority Claim shall be subject and subordinate only to the Carve-Out Expenses.

9. <u>Conditions Precedent</u>. CIRCOR shall have no obligation to make any extension of credit pursuant to the Postpetition Credit Agreement unless and until all of the conditions precedent to the extension of such credit under the Postpetition Credit Agreement have been satisfied or waived by CIRCOR in its sole discretion.

10. <u>Perfection</u>. This Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens, without the necessity of filing or recording any financing statement or other instrument or document, or the taking of any other act that otherwise may be required under state or federal law, rule, or regulation of any jurisdiction to validate or perfect the DIP Liens or to entitle CIRCOR to the priorities granted herein; <u>provided however</u>, that the Debtor shall authorize CIRCOR to file one or more financing statements, continuation statements or other similar documents, and any amendments thereto, relating to all or any part of the DIP Liens without the signature of the Debtor, where permitted by applicable law.

11. <u>Automatic Stay</u>. The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified to the extent necessary to permit (a) the Debtor to grant the DIP Liens and the Superpriority Claim, (b) the Debtor to perform such acts as CIRCOR may request to assure the perfection and priority of the DIP Liens, (c) CIRCOR, upon five (5)

10

days written notice to the Debtor, its counsel, counsel for any committee appointed in this case, and the United States Trustee, to exercise remedies upon the occurrence and during the continuation of any Event of Default, including all rights and remedies provided for in the Postpetition Credit Agreements and documents related thereto; provided however, upon an Event of Default, CIRCOR may immediately (i) terminate all or part of the commitment to make advances pursuant to the Postpetition Credit Agreement, and (ii) declare the advances under the Postpetition Credit Agreement then outstanding to be due and payable in whole or in part without presentment, demand, protest or other notice of any kind, and (d) the implementation of the terms of this Order.

12. Acceptance of this Order. Each and every federal, state, and local governmental agency, department or office is hereby authorized to accept this Order and any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order and the Postpetition Credit Agreement.

13. Adequate Protection. In consideration for the use of the Prepetition Collateral (including Cash Collateral) and the subordination of the security interest in the Prepetition Collateral to the DIP Liens, CIRCOR shall receive the following (the "Adequate Protection"):

(a) Adequate Protection Liens. To the extent there is a diminution in CIRCOR's interest in the Prepetition Collateral (whether the reason for such diminution is as a result of, arises from, or is attributable to, any or all of the use of Cash Collateral, the imposition of the automatic stay, the seniority of the DIP Liens, the subordination to the Carve-Out Expenses, the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, or decline in market value of the Prepetition Collateral, or the terms of the financing and other relief granted herein), CIRCOR is hereby granted replacement liens (the "Replacement Liens") in the Prepetition Collateral, which Replacement Liens are valid, binding, enforceable, and fully perfected as of the Commencement Date without the necessity of the execution by the Debtor of security agreements, pledge agreements, financing statements, or other agreements, and which shall be subordinate only to the DIP Liens and shall be equivalent to a lien granted under section 364(c) of the Bankruptcy Code, and which such

11

Replacement Liens shall cover assets, interest, and proceeds of the Debtor that are or would be collateral under the Prepetition Promissory Note if not for Bankruptcy Code section 552(a) and all cash and cash equivalents;

(b)     Administrative Claim. CIRCOR is hereby granted an allowed administrative claim (the "Administrative Claim") under Bankruptcy Code section 507(b) with respect to all Adequate Protection obligations, to the extent that the Replacement Liens do not adequately protect the diminution in the valued of the Prepetition Collateral and such Administrative Claim shall be junior and subordinate only to and superpriority claim of the kind specified in, or ordered pursuant to, section 364 of the Bankruptcy Code which Adequate Protection obligations and Administrative Claim shall be (i) payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof; and (ii) subject to the Carve-Out.

14.     Avoidance Actions. Notwithstanding anything to the contrary in the Postpetition Credit Agreement or any other document or instrument contemplated thereby, the Collateral shall not include any claims, causes of action or recoveries realized pursuant to sections 542, 544, 545, 547, 548, 549, 550, 551, 553(b) or 724(a) of the Bankruptcy Code (other than with respect to recoveries received pursuant to Section 549 of the Bankruptcy Code to the extent the funds recovered were funds borrowed under the Post-Petition Credit Agreement).

15.     Carve-Out Expenses. The liens on and security interests in the Collateral, the Prepetition Collateral, the Replacement Liens, Administrative Claim and the Superpriority Claim of CIRCOR pursuant to this Order, the Postpetition Credit Agreement and the Prepetition Promissory Note shall be subordinate in their entirety to the following (collectively, the "Carve-Out Expenses"): (a) statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); (b) fees payable to the clerk of the Bankruptcy Court; (c) professional fees and expenses of any Chapter 7 trustee appointed in the Chapter 11 Case that are allowed pursuant to sections 326, 726 and 506(c) of the Bankruptcy Code in an amount not to exceed $50,000, and (d) after the occurrence of a Carve-Out Event, an amount equal to (X) the

12

reasonable and budgeted professional fees and expenses actually incurred in the Chapter 11 Case by any legal representative appointed by the Bankruptcy Court for the representation of persons that might assert future demands against the Borrower and for which section 524(g) of the Bankruptcy Code may be invoked, and other professionals retained under section 327, 363, or 1103(a) of the Bankruptcy Code (the "Permitted Professional Fees") prior to the occurrence of a Carve-Out Event but not paid on or before the date of such Carve-Out Event and (Y) $350,000 for payment of Permitted Professional Fees incurred after the occurrence of a Carve-Out Event, in each case to the extent subsequently allowed by the Bankruptcy Court. Upon the first day on which the Lender is entitled to exercise remedies under the Postpetition Credit Agreement (the "Carve-Out Event") and provides written notice thereof to the Debtor (the "Carve-Out Event Notice"), the right of the Debtor to pay Permitted Professional Fees outside the Carve-Out shall terminate.

16.    Excluded Policies.  Notwithstanding anything to the contrary in the Postpetition Credit Agreement or any other document or instrument contemplated thereby, the Collateral shall not include any of the Debtor's right, title and interest in, to and under, and the right to receive moneys due and to become due under or in respect of, each policy of insurance of the Debtor that purports to or may potentially provide coverage or indemnity for the Debtor's liabilities and to which the Debtor is now or may hereafter become a party, in each case as such policy may be revised, amended, supplemented or otherwise modified from time to time, and each settlement agreement with respect thereto (collectively the "Excluded Policies"), including, without limitation, all rights of the Debtor to receive payments arising under any indemnity, warranty or guaranty with respect to the Excluded Policies or settlement agreements with respect thereto, or any other instrument, agreement or document delivered pursuant

13

thereto; provided, however, that nothing in this Order shall be construed to exclude from Collateral any amounts actually paid to the Debtor from or on account of the Excluded Policies or settlement agreements with respect thereto.

17.     Reservation of Rights. Neither the failure of CIRCOR to seek relief or otherwise exercise its rights and remedies under this Order, the Postpetition Credit Agreement or any documents related thereto or otherwise (or any delay in seeking or exercising the same) shall constitute a waiver of CIRCOR's rights hereunder, thereunder, or otherwise. Except as prohibited by this Order, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of CIRCOR under the Bankruptcy Code or under non-bankruptcy law to (i) request the conversion of the Chapter 11 Case to a case under Chapter 7, dismissal of the Chapter 11 Case, or the appointment of a trustee in the Chapter 11 Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, and Chapter 11 plan or plans with respect to the Debtor, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of CIRCOR.

18.     Binding Effect. Except as otherwise provided in this Order, the terms and provisions of this Order shall, immediately upon entry of this Order by this Court, become valid and binding upon the Debtor, CIRCOR and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor's estate in this case or in any subsequent Chapter 7 case.

19.     Controlling Effect of this Order. To the extent any provisions of the Postpetition Credit Agreement are in conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

20.     Amendments to Postpetition Credit Agreement. The Postpetition Credit

14

Agreement or any other related document may from time to time be amended by the parties thereto without further order of this Court so long as such amendment is beneficial to the Debtor and does not materially prejudice the rights of third parties.

21.     <u>Findings of Fact and Conclusions of Law</u>.  This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.

22.     <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction to interpret and enforce the provisions of the Postpetition Credit Agreement and this Order in all respects; provided, however, that in the event this Court abstains from exercising or declines to exercise jurisdiction with respect to any matter provided for in this paragraph or is without jurisdiction, such abstention, refusal, or lack of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction of any other court having competent jurisdiction with respect to any such matter.

23.     <u>Final Hearing</u>.  The Final Hearing on the Motion shall be heard before this Court on August 9, 2010 at 1:00 p.m. (EST) at the United States Bankruptcy Court for the District of Delaware, Wilmington, Delaware.

24.     <u>Notice of Final Hearing</u>.  Within three (3) business days after the Court's entry of this Order, the Debtor shall serve, by United States mail, first-class postage prepaid (such service constituting adequate notice of the Final Hearing) (i) notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>") and (ii) a copy of this Interim Order, on the parties having been given notice of the Interim Hearing and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  The Final

46392/0001-6864388v3

Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Bankruptcy Court no later than August 2, 2010, which objections shall be served so that the same are received on or before such date by: (a) counsel for the Debtor, Cole, Schotz, Meisel, Forman & Leonard, P.A., 500 Delaware Avenue, Suite 1410, Wilmington, DE 19801; Attn: Norman L. Pernick and Marion M. Quirk; (b) counsel to the Ad Hoc Committee, Natalie D. Ramsey, Esq., Montgomery, McCracken, Walker & Rhoades, LLP, 1105 North Market Street, 15th Floor, Wilmington, DE 19801; (c) counsel to the Proposed Future Claimants' Representative, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, DE 19801, Attn: Edwin J. Harron; (d) counsel to CIRCOR, Goodwin Procter LLP, 901 New York Avenue, NW, Washington, DC 20001, Attn; William R. Hanlon and Richard M. Wyner; and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, in each case to allow actual receipt of the foregoing no later than August 2, 2010, at 4:00 p.m. (prevailing Eastern time).

Dated: July 14, 2010
       Wilmington, Delaware

                              Christopher S. Sontchi
                              United States Bankruptcy Judge

46392/0001-6864388v3