## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| LESLIE CONTROLS, INC., | Case No. 10-12199 (CSS) |
| Debtor. | |

## FIRST AMENDED PLAN OF REORGANIZATION OF LESLIE CONTROLS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Wilmington, Delaware
Dated: August 20, 2010

*This Plan of Reorganization provides for an "Asbestos PI Channeling Injunction" pursuant to section 524(g) of the Bankruptcy Code. For a description of the causes of action to be enjoined and the identities of the entities that would be subject to the injunction, see Article XI of this Plan.*

# TABLE OF CONTENTS

**Page**

ARTICLE I. DEFINITIONS AND INTERPRETATIONS ................................................................ 1

1.1.   Ad Hoc Committee ................................................................................................ 1

1.2.   Administrative Claims Bar Date ........................................................................... 1

1.3.   Administrative Expense Claim .............................................................................. 1

1.4.   Administrative Expense Request ........................................................................... 1

1.5.   Affiliate ................................................................................................................. 1

1.6.   Allowed ................................................................................................................. 2

1.7.   Allowed Amount ................................................................................................... 2

1.8.   Amended By-Laws ................................................................................................ 2

1.9.   Amended Certificate of Incorporation .................................................................. 2

1.10.  Asbestos Claimants Committee ............................................................................ 2

1.11.  Asbestos Insurance Action .................................................................................... 2

1.12.  Asbestos Insurance Entity ..................................................................................... 3

1.13.  Asbestos Insurance Entity Injunction ................................................................... 3

1.14.  Asbestos Insurance Rights .................................................................................... 3

1.15.  Asbestos PI Channeling Injunction ....................................................................... 3

1.16.  Asbestos PI Claim ................................................................................................. 3

1.17.  Asbestos PI Insurance Contract ............................................................................ 4

1.18.  Asbestos PI Insurer Coverage Defense ................................................................ 4

1.19.  Asbestos PI Trust .................................................................................................. 4

1.20.  Asbestos PI Trust Advisory Committee ................................................................ 4

1.21.  Asbestos PI Trust Agreement ............................................................................... 4

1.22.  Asbestos PI Trust Assets ....................................................................................... 4

i

1.23.    Asbestos PI Trust Bylaws ................................................................................ 4

1.24.    Asbestos PI Trust Contributions ..................................................................... 5

1.25.    Asbestos PI Trust Distribution Procedures ..................................................... 5

1.26.    Asbestos PI Trust Documents ......................................................................... 5

1.27.    Asbestos PI Trust Expense ............................................................................. 5

1.28.    Asbestos PI Trust Indemnification Agreement ............................................... 5

1.29.    Asbestos PI Trustee ........................................................................................ 5

1.30.    Asbestos Protected Party ................................................................................ 5

1.31.    Asbestos Records ............................................................................................ 5

1.32.    Asbestos Records Cooperation Agreement ..................................................... 6

1.33.    Asbestos Records Party .................................................................................. 6

1.34.    Avoidance Action ........................................................................................... 6

1.35.    Ballot .............................................................................................................. 6

1.36.    Bankruptcy Code ............................................................................................ 6

1.37.    Bankruptcy Court ........................................................................................... 6

1.38.    Bankruptcy Rules ........................................................................................... 6

1.39.    Business Day ................................................................................................... 6

1.40.    Cash ................................................................................................................ 6

1.41.    Cause of Action .............................................................................................. 6

1.42.    Chapter 11 Case .............................................................................................. 7

1.43.    Claim .............................................................................................................. 7

1.44.    Claims and Balloting Agent ........................................................................... 7

1.45.    Class ............................................................................................................... 7

1.46.    CIRCOR ......................................................................................................... 7

1.47.    CIRCOR Affiliate ........................................................................................... 7

1.48.    CIRCOR Asbestos PI Trust Contribution .................................................. 7

1.49.    CIRCOR Cash .................................................................................................. 7

1.50.    CIRCOR Pledge ............................................................................................... 7

1.51.    CIRCOR Related Parties ................................................................................ 7

1.52.    CIRCOR Secured Claim ................................................................................. 8

1.53.    Commencement Date ....................................................................................... 8

1.54.    Confirmation Date ........................................................................................... 8

1.55.    Confirmation Hearing ..................................................................................... 8

1.56.    Confirmation Order ......................................................................................... 8

1.57.    Control .............................................................................................................. 8

1.58.    Cure ................................................................................................................... 8

1.59.    Cure Notice ....................................................................................................... 8

1.60.    Debtor ................................................................................................................ 8

1.61.    Debtor in Possession ........................................................................................ 8

1.62.    Debtor Released Parties .................................................................................. 8

1.63.    Demand .............................................................................................................. 9

1.64.    Derivative Liability Asbestos PI Claim ........................................................ 9

1.65.    Derivative Liability Claim .............................................................................. 9

1.66.    DIP Agreement ............................................................................................... 10

1.67.    DIP Claim ....................................................................................................... 10

1.68.    DIP Lender ...................................................................................................... 10

1.69.    Disallowed ....................................................................................................... 10

1.70.    Disclosure Statement ..................................................................................... 10

1.71.    Disputed Claim ............................................................................................... 10

1.72.    Distribution Record Date .............................................................................. 10

1.73.    Distribution .................................................................................................. 11

1.74.    District Court ............................................................................................... 11

1.75.    Effective Date .............................................................................................. 11

1.76.    Encumbrance ............................................................................................... 11

1.77.    Entity ........................................................................................................... 11

1.78.    Equity Interest ............................................................................................. 11

1.79.    Estate ........................................................................................................... 11

1.80.    Executory Contract ...................................................................................... 11

1.81.    Final Judgment or Final Order .................................................................... 11

1.82.    Future Claimants' Representative ................................................................ 11

1.83.    Future Demand Holder ................................................................................ 12

1.84.    General Unsecured Claim ............................................................................ 12

1.85.    Impaired ...................................................................................................... 12

1.86.    Indirect Asbestos PI Claim ......................................................................... 12

1.87.    Insurance Settlement Agreement ................................................................. 13

1.88.    Insurer Contribution Claim ......................................................................... 13

1.89.    Intercompany Claim .................................................................................... 13

1.90.    Leslie ........................................................................................................... 13

1.91.    Leslie Affiliate ............................................................................................ 13

1.92.    Leslie Asbestos PI Claim ............................................................................ 13

1.93.    Leslie Contribution ..................................................................................... 14

1.94.    Leslie Promissory Note ............................................................................... 14

1.95.    Leslie Related Parties .................................................................................. 14

1.96.    Lien ............................................................................................................. 14

1.97.    Liquidate ..................................................................................................... 14

1.98.  Non-Debtor Released Parties ................................................................ 14

1.99.  Payment Percentage ........................................................................... 15

1.100. Plan ................................................................................................... 15

1.101. Plan Contributors .............................................................................. 15

1.102. Plan Documents ................................................................................ 15

1.103. Plan Supplement ............................................................................... 15

1.104. Pledge Agreement ............................................................................. 15

1.105. Post-Confirmation Settling Asbestos Insurance Entity ...................... 15

1.106. Preliminary Injunction Order ............................................................. 15

1.107. Pre-Petition Future Claimants' Representative ................................... 16

1.108. Priority Claim .................................................................................... 16

1.109. Priority Tax Claim ............................................................................. 16

1.110. Professional ...................................................................................... 16

1.111. Proof of Claim ................................................................................... 16

1.112. Rejection Claim ................................................................................. 16

1.113. Released Parties ................................................................................. 16

1.114. Reorganized Leslie ............................................................................ 16

1.115. Reorganized Leslie Common Stock .................................................... 16

1.116. Representative ................................................................................... 16

1.117. Schedules .......................................................................................... 16

1.118. Secured Claim ................................................................................... 16

1.119. Settling Asbestos Insurance Entity .................................................... 17

1.120. Settling Insurer ................................................................................. 17

1.121. Solicitation Procedures Order ............................................................ 17

1.122. Trust Distribution Effective Date ....................................................... 17

1.123. Unimpaired ................................................................................................ 17

1.124. United States Trustee ................................................................................. 17

1.125. Watts ........................................................................................................... 17

1.126. Watts Affiliate ............................................................................................ 17

1.127. Watts Related Parties ................................................................................. 18

ARTICLE II. ADMINISTRATIVE EXPENSE, PRIORITY TAX AND DIP CLAIMS ................. 18

    2.1.    Allowed Administrative Expense Claims ................................................. 18

    2.2.    Priority Tax Claims ................................................................................. 19

    2.3.    DIP Claim ................................................................................................ 19

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ........................... 19

    3.1.    Classification ............................................................................................ 19

ARTICLE IV. TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
INTERESTS ........................................................................................................... 20

    4.1.    Class 1 - Priority Claims ......................................................................... 20

    4.2.    Class 2 - Secured Claims ......................................................................... 20

    4.3.    Class 3 - Allowed General Unsecured Claims ......................................... 21

    4.4.    Class 4 - Asbestos PI Claims and Asbestos PI Trust Expenses ................ 21

    4.5.    Class 5 - Intercompany Claims ................................................................ 22

    4.6.    Class 6 - Equity Interests ......................................................................... 22

ARTICLE V. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY
INTERESTS ........................................................................................................... 22

    5.1.    Classes Entitled to Vote .......................................................................... 22

    5.2.    Class Acceptance Requirement ................................................................ 22

    5.3.    Issuance of Injunction Pursuant to Section 524(g) of the Bankruptcy
Code ......................................................................................................... 23

    5.4.    Acceptance by Unimpaired Classes ......................................................... 23

ARTICLE VI. DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS
OTHER THAN ASBESTOS PI CLAIMS ................................................................ 23

    6.1.    Distributions ................................................................................................ 23

    6.2.    Date of Distributions ................................................................................. 23

    6.3.    Postpetition Interest on Claims ................................................................. 23

    6.4.    Means of Cash Payment ............................................................................ 23

    6.5.    Delivery of Distributions .......................................................................... 24

    6.6.    Time Bar to Cash Payments ...................................................................... 24

    6.7.    Record Date for Holders of Claims .......................................................... 24

    6.8.    Distributions after Effective Date ............................................................. 24

    6.9.    Fractional Cents ........................................................................................ 24

    6.10.    Setoff ....................................................................................................... 24

ARTICLE VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ............................................................................................................. 25

    7.1.    General Treatment ..................................................................................... 25

    7.2.    Cure of Defaults ........................................................................................ 25

    7.3.    Bar to Rejection Damages ......................................................................... 26

    7.4.    Insurance Policies ..................................................................................... 26

    7.5.    Compensation and Benefit Plans and Treatment of Retiree and Pension
Benefits ..................................................................................................... 26

ARTICLE VIII. PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS OTHER THAN ASBESTOS PI CLAIMS ............................................. 27

    8.1.    Disputed Claims ........................................................................................ 27

    8.2.    Objection to Claims .................................................................................. 27

    8.3.    Payments and Distributions with Respect to Disputed Claims ................. 27

    8.4.    Preservation of Insurance .......................................................................... 27

    8.5.    Estimation of Claims ................................................................................. 27

8.6.     Preservation of Rights to Settle Claims ................................................. 28

ARTICLE IX. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................. 28

9.1.     Generally ........................................................................................ 28

9.2.     Transactions on the Effective Date .......................................................... 28

9.3.     The Asbestos PI Trust ......................................................................... 29

9.4.     Amended Certificate of Incorporation and By-Laws ................................... 32

9.5.     Reorganized Leslie Common Stock ....................................................... 32

9.6.     Corporate Governance of Reorganized Leslie ........................................... 32

9.7.     Effectuating Documents; Further Transactions ......................................... 32

9.8.     Treatment of each Settling Asbestos Insurance Entity ............................... 33

ARTICLE X. EFFECT OF CONFIRMATION ................................................................. 33

10.1.    Vesting of Reorganized Leslie's Assets .................................................. 33

10.2.    Preservation of Certain Causes of Action; Defenses ................................. 33

10.3.    Institution and Maintenance of Legal and Other Proceedings ...................... 34

10.4.    Insurance Neutrality ........................................................................... 34

10.5.    Terms of Injunction and Automatic Stay ................................................ 34

10.6.    No Liability for Certain Released Claims ................................................ 35

10.7.    Title to Asbestos PI Trust Assets ......................................................... 35

10.8.    Dissolution of Official Committees; Continuation of Future Claimants'
         Representative; Creation of the Asbestos PI Trust Advisory Committee ......... 35

ARTICLE XI. RELEASES, INJUNCTIONS AND WAIVERS OF CLAIMS .................................. 36

11.1.    Discharge ........................................................................................ 36

11.2.    Injunction ........................................................................................ 36

11.3.    Exculpation ..................................................................................... 37

11.4.    Release by Debtor Released Parties of Released Parties ............................ 37

11.5.    Release by Non-Debtor Released Parties of Released Parties ...................... 38

11.6. Release by Holders of Claims and Equity Interests.................................. 38

11.7. Asbestos PI Channeling Injunction......................................................... 39

11.8. Limitations of Injunctions....................................................................... 39

11.9. Releases and Indemnification by Leslie. ................................................ 39

11.10. Indemnification and Reimbursement Obligations. ................................ 39

11.11. Asbestos Insurance Entity Injunction. ................................................... 40

11.12. Reduction of Insurance Judgments. ....................................................... 41

ARTICLE XII. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ......................................................................... 41

12.1. Conditions Precedent to Confirmation of the Plan ............................... 41

12.2. Conditions Precedent to the Effective Date of the Plan.......................... 46

12.3. Conditions Precedent to the Trust Distribution Effective Date. .............. 46

12.4. Waiver of Conditions Precedent ........................................................... 46

12.5. Effect of Failure of the Effective Date of the Plan ............................... 46

ARTICLE XIII. JURISDICTION OF BANKRUPTCY COURT.................................... 47

13.1. Retention of Jurisdiction ....................................................................... 47

13.2. Modification of Plan ............................................................................. 49

13.3. Compromises of Controversies............................................................. 49

13.4. Revocation or Withdrawal of the Plan .................................................. 50

ARTICLE XIV. MISCELLANEOUS PROVISIONS..................................................... 50

14.1. Governing Law ..................................................................................... 50

14.2. Administrative Expense Claims Bar Date. ............................................ 50

14.3. Notices. ................................................................................................. 50

14.4. Plan Supplement ................................................................................... 52

14.5. Inconsistencies ..................................................................................... 52

14.6. Reservation of Rights............................................................................ 52

14.7.    Tax Reporting and Compliance ....................................................... 52

14.8.    Exemption from Transfer Taxes ..................................................... 53

14.9.    Binding Effect ............................................................................... 53

14.10.   Severability .................................................................................. 53

14.11.   Further Authorizations ................................................................. 53

14.12.   Payment of Statutory Fees ........................................................... 53

14.13.   Prepayment .................................................................................. 54

14.14.   Effective Date Actions Simultaneous ........................................... 54

14.15.   General Statements ...................................................................... 54

## SCHEDULES

| | |
|---|---|
| Schedule 1 | CIRCOR Affiliates |
| Schedule 2 | LESLIE Affiliates |
| Schedule 3 | WATTS Affiliates |

## EXHIBITS

| | |
|---|---|
| Exhibit A | Asbestos PI Trust Agreement |
| Exhibit B | Asbestos PI Trust Bylaws |
| Exhibit C | Asbestos PI Trust Distribution Procedures |
| Exhibit D | Leslie Promissory Note |
| Exhibit E | Pledge Agreement |
| Exhibit F | Schedule of Insurance Settlement Agreements and Settling Asbestos Insurance Entities |

## INTRODUCTION

Leslie Controls, Inc., the debtor, proposes the following plan of reorganization pursuant to section 1121(a) of title 11 of the United States Code:

## ARTICLE I.

## DEFINITIONS AND INTERPRETATIONS

In the Plan, the definitions provided in this Article I shall apply.  Unless otherwise specified, all Article, schedule or exhibit references in the Plan are to the respective Article of or schedule or exhibit to the Plan or the Plan Supplement, as the same may be amended or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Article, subsection or clause.  A term used but not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

**1.1.** **Ad Hoc Committee** means the group of law firms that represent certain current asbestos personal injury claimants formed prior to the Commencement Date for the purpose of negotiating the terms of a possible plan of reorganization for Leslie.

**1.2.** **Administrative Claims Bar Date** means the deadline to file an Administrative Expense Request which shall be the date that is sixty (60) days after the Effective Date or the First Business Day following such date.

**1.3.** **Administrative Expense Claim** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case Allowed under sections 503(b), 507(a)(1), and 507(b) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses of preserving Leslie's Estate; (b) any actual and necessary costs and expenses of operating Leslie's business; (c) any indebtedness or obligations incurred or assumed by Leslie as a Debtor in Possession during the Chapter 11 Case; and (d) any compensation for Professional services rendered and reimbursement of expenses incurred, to the extent Allowed by Final Order under section 330 or 503 of the Bankruptcy Code.

**1.4.** **Administrative Expense Request** means a request for payment of an Administrative Expense Claim.

**1.5.** **Affiliate** means, with respect to a specified Entity: (a) an Entity that directly or indirectly owns, controls or holds with power to vote twenty percent (20%) or more of the outstanding voting securities of such specified Entity; (b) an Entity, twenty percent (20%) or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote by such specified Entity, or by an Entity described in subclause (a); or (c) any other Entity that, directly or indirectly, through one or more intermediaries or otherwise, Controls or is Controlled by, or is under common

Control with the specified Entity; provided, however, that without limiting the generality of the foregoing, with respect to an Affiliate of Leslie or an Entity affiliated with Leslie, the term Affiliate shall include the meaning ascribed thereto in section 101(2) of the Bankruptcy Code.

1.6.    **Allowed** means, when used with respect to any Claim against Leslie, including Administrative Expense Claims but excluding Asbestos PI Claims, such Claim or portion thereof: (a) as to which no objection or request for estimation has been filed, no litigation has commenced, and Leslie otherwise has assented to the validity thereof (and as to which proof of such Claim has been properly and timely filed to the extent required by the Plan or any order of the Bankruptcy Court); (b) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn or denied by a Final Order; or (e) that is allowed (i) pursuant to the terms of a Final Order, (ii) pursuant to the terms of an agreement by and among the holder(s) of such Claim and Leslie (or Reorganized Leslie, as the case may be), or (iii) under the terms of the Plan; provided, however, that for the purposes of determining the status (i.e., Allowed or Disallowed) of a particular Claim prior to the expiration of the period fixed for filing objections to the allowance or disallowance of Claims, any such Claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court or the Plan shall be deemed a Disputed Claim unless such Claim is specifically identified by the Debtor as being an Allowed Claim.

1.7.    **Allowed Amount** means, with respect to any Claim (excluding Asbestos PI Claims), the lesser of: (a) the dollar amount of such Claim as Allowed; (b) the estimated amount of such Claim; and (c) the dollar amount agreed to by Leslie. Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court or the District Court, the Allowed Amount of an Allowed Claim, except for the Allowed Amount of the DIP Claim, shall not include interest or penalties accruing on such Allowed Claim from and after the Commencement Date. In addition, unless a Final Order of the Bankruptcy Court provides otherwise, the Allowed Amount of an Allowed Claim shall not, for any purpose under the Plan, include interest at any default rate of interest.

1.8.    **Amended By-Laws** means the amended and restated by-laws of Reorganized Leslie, substantially in the form as will be set forth in a Plan Supplement.

1.9.    **Amended Certificate of Incorporation** means the amended and restated certificate of incorporation of Reorganized Leslie, substantially in the form as will be set forth in a Plan Supplement.

1.10.    **Asbestos Claimants Committee** means the official committee of asbestos claimants appointed in the Chapter 11 Case, as such committee may be reconstituted from time to time.

1.11.    **Asbestos Insurance Action** means any Claim, Cause of Action (pending now or commenced in the future), arbitration or right of the Asbestos PI Trust, Leslie, or Reorganized Leslie against any Asbestos Insurance Entity related to any Asbestos PI Insurance Contract, any Insurance Settlement Agreement or any other settlement

2

agreement with any Asbestos Insurance Entity, or any Claim, Cause of Action (pending now or commenced in the future), or rights of any Asbestos Insurance Entity against any of the Asbestos PI Trust, Leslie, or Reorganized Leslie related to any Asbestos PI Insurance Contract, any Insurance Settlement Agreement or any other settlement agreement with any Asbestos Insurance Entity, including but not limited to any Claim or Cause of Action (pending now or commenced in the future), or right arising from, under or related to (a) any such Asbestos Insurance Entity's failure or alleged failure to provide coverage or pay amounts billed to it for Asbestos PI Claims, whether prior to or after the Commencement Date; (b) the refusal or alleged refusal of any Asbestos Insurance Entity to pay any obligations on, or compromise and settle, any Asbestos PI Claim under or pursuant to any Asbestos PI Insurance Contract; or (c) the interpretation or enforcement of the terms of any Asbestos PI Insurance Contract with respect to any Asbestos PI Claim.

**1.12.   Asbestos Insurance Entity** means any Entity, including any insurance company, broker, or guaranty association, that has issued, or that has any actual, potential, or alleged liabilities, duties, or obligations under or with respect to, any Asbestos PI Insurance Contract or any other insurance policy that provides or allegedly provides coverage to Leslie for Asbestos PI Claims.

**1.13.   Asbestos Insurance Entity Injunction** means the injunction described in Section 11.11 of the Plan.

**1.14.   Asbestos Insurance Rights** means any and all rights, titles, privileges, interests, claims, demands, or entitlements to any proceeds, payments, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action related to any and all Asbestos PI Insurance Contracts or Insurance Settlement Agreements, whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disposed or undisposed, fixed or contingent, including but not limited to:  (a) any and all rights to pursue or receive payments with respect to Asbestos PI Claims under any and all Asbestos PI Insurance Contracts or Insurance Settlement Agreements, whether for liability, defense, or otherwise; (b) any and all rights to pursue or receive payments related to any and all Asbestos PI Insurance Contracts or Insurance Settlement Agreements that were entered into by any domestic or foreign insolvent insurance company, whether in receivership, liquidation, rehabilitation, run-off, scheme or arrangement, or any other form of proceeding; and (c) any and all rights to pursue or receive payments related to any and all Asbestos PI Insurance Contracts or Insurance Settlement Agreements from any state insurance guaranty association in connection with any state insurance guaranty association statue.

**1.15.   Asbestos PI Channeling Injunction** means the injunction pursuant to section 524(g) of the Bankruptcy Code described more fully in Section 11.7 below.

**1.16.   Asbestos PI Claim** means each of the following: (a) a Leslie Asbestos PI Claim; (b) a Derivative Liability Asbestos PI Claim; and (c) an Indirect Asbestos PI Claim.  Notwithstanding anything in this Section 1.16, or in Sections 1.27, 1.64, 1.65,

1.86, or 1.92, the definitions of Asbestos PI Claim, Leslie Asbestos PI Claim, Derivative Liability Asbestos PI Claim, Derivative Liability Claim, Indirect Asbestos PI Claim, and Asbestos PI Trust Expense shall not include any claims, rights, or demands that any or all of the Watts Related Parties have asserted or may assert under the Distribution Agreement dated as of October 1, 1999 by and between Watts Industries, Inc. and CIRCOR.

**1.17.    Asbestos PI Insurance Contract** means any insurance policy or policies issued or allegedly issued by any Asbestos Insurance Entity to or for the benefit of Leslie, or to or for the benefit of any predecessor of Leslie that provide or allegedly provide coverage to Leslie for Asbestos PI Claims, including, without limitation, any settlement agreement or any Insurance Settlement Agreements.

**1.18.    Asbestos PI Insurer Coverage Defense** means any defense at law or in equity that any Asbestos Insurance Entity may have under applicable non-bankruptcy law to providing insurance coverage for or on account of any Asbestos PI Claim that has been channeled to or has been or will be assumed or incurred by the Asbestos PI Trust pursuant to the Plan, except for any defense that has been released, waived, altered or otherwise resolved, in full or in part, in any Insurance Settlement Agreement, any other settlement agreement with such Asbestos Insurance Entity, by binding adjudication or otherwise by conduct.

**1.19.    Asbestos PI Trust** means the asbestos personal injury trust that is to be established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan, the Confirmation Order and the Asbestos PI Trust Agreement, which trust shall be treated as a "qualified settlement fund" under section 468B of the Internal Revenue Code.

**1.20.    Asbestos PI Trust Advisory Committee** means the Asbestos PI Trust advisory committee established pursuant to the terms of the Plan and the Asbestos PI Trust Agreement.

**1.21.    Asbestos PI Trust Agreement** means the agreement, to be dated as of the Effective Date, by and among Reorganized Leslie, CIRCOR, the Asbestos PI Trustee, the Future Claimants' Representative and the Asbestos PI Trust Advisory Committee, governing the creation and terms of the Asbestos PI Trust, in substantially the form annexed hereto as Exhibit A.

**1.22.    Asbestos PI Trust Assets** means, collectively: (a) the Asbestos PI Trust Contributions; (b) the Asbestos Insurance Rights; (c) the Asbestos Insurance Actions; (d) all other assets, rights, and benefits assigned, transferred or conveyed to the Asbestos PI Trust in connection with the Plan or any Plan Documents; and (e) all proceeds of the foregoing.

**1.23.    Asbestos PI Trust Bylaws** means the Asbestos PI Trust Bylaws, effective as of the Effective Date, substantially in the form annexed as Exhibit B, as such bylaws may be amended or modified from time to time in accordance with the terms of the Asbestos PI Trust Agreement.

4

**1.24.    Asbestos PI Trust Contributions** means, collectively, the Leslie Contribution and the CIRCOR Asbestos PI Trust Contribution.

**1.25.    Asbestos PI Trust Distribution Procedures** means the trust distribution procedures for the Asbestos PI Trust, in substantially the form annexed hereto as Exhibit C, and such additional procedures as subsequently may be adopted by the Asbestos PI Trust, which provide for the liquidation and satisfaction of Asbestos PI Claims.

**1.26.    Asbestos PI Trust Documents** means, collectively: (a) the Asbestos PI Trust Agreement; (b) the Asbestos PI Trust Distribution Procedures; (c) the Asbestos PI Trust Bylaws; (d) the Asbestos PI Trust Indemnification Agreement; (e) the Asbestos Records Cooperation Agreement; and (f) the other agreements, instruments and documents governing the establishment and administration of the Asbestos PI Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

**1.27.    Asbestos PI Trust Expense** means any of the liabilities, costs, or expenses incurred by the Asbestos PI Trust (other than liabilities to holders of Leslie Asbestos PI Claims, Derivative Liability Asbestos PI Claims and Indirect Asbestos PI Claims in respect of Asbestos PI Claims), in carrying out the terms of the Asbestos PI Trust Agreement.

**1.28.    Asbestos PI Trust Indemnification Agreement** means the Indemnification Agreement entered into by and among Leslie or Reorganized Leslie, as the case may be, CIRCOR, on behalf of itself and for the benefit of each other Asbestos Protected Party (as defined therein), and the Asbestos PI Trust, substantially in the form annexed as Exhibit B to the Asbestos PI Trust Agreement.

**1.29.    Asbestos PI Trustee** means the individual set forth in a Plan Supplement and appointed pursuant to the Confirmation Order to serve as the trustee for the Asbestos PI Trust in accordance with the terms of the Plan and the Asbestos PI Trust Agreement or any successors thereof.

**1.30.    Asbestos Protected Party** means each of the following:

(a)    the Leslie Related Parties;

(b)    the CIRCOR Related Parties;

(c)    the Watts Related Parties;

(d)    any Settling Asbestos Insurance entity entitled to protection by agreement of the parties; and

(e)    any current or former Representative of any of the above.

**1.31.    Asbestos Records** shall have the meaning ascribed to it in the Asbestos Records Cooperation Agreement.

5

**1.32.   Asbestos Records Cooperation Agreement** means the cooperation agreement with respect to Asbestos Records entered into as of the Effective Date, substantially in the form as will be set forth in a Plan Supplement.

**1.33.   Asbestos Records Party** means each Entity whose books and records, or any portion thereof, are Asbestos Records.

**1.34.   Avoidance Action** means any avoidance or recovery action under any of sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, whether or not litigation has been commenced with respect to such cause of action as of the Effective Date.

**1.35.   Ballot** means each of the ballots and/or master ballots distributed with the Disclosure Statement to holders of Impaired Claims against or Equity Interests in Leslie on which ballot such holder of a Claim or Equity Interest may, among other things, vote to accept or reject the Plan.

**1.36.   Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C.§§ 101 et. seq., as in effect on the Commencement Date, together with all amendments, modifications and replacements of the foregoing, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Case.

**1.37.   Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware or such other court as may have jurisdiction over the Chapter 11 Case.

**1.38.   Bankruptcy Rules** means, collectively: (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as amended from time to time and applicable to the Chapter 11 case.

**1.39.   Business Day** means any day except: (a) Saturday; (b) Sunday; (c) any other day on which banking institutions in Wilmington, Delaware are required or authorized to be closed by law or executive order; and (d) the Friday immediately after Thanksgiving.

**1.40.   Cash** means legal tender of the United States of America.

**1.41.   Cause of Action** means any action, including any cause of action, liability, obligation, account, controversy, right to legal remedy, right to equitable remedy, right to payment, suit, debt, sum of money, damage, judgment, Claim or Demand whatsoever, whether known or unknown, now or in the future, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, whether asserted or assertable directly or derivatively, in law, equity or otherwise, which may be brought by or on

6

behalf of Leslie and/or the Estate, arising under any provision of the Bankruptcy Code or other applicable law or regulation or similar governmental pronouncement.

**1.42.    Chapter 11 Case** means Leslie's case under Chapter 11 of the Bankruptcy Code, captioned In re Leslie Controls, Inc., Case No. 10-12199 (CSS).

**1.43.    Claim** means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such right gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.44.    Claims and Balloting Agent** means the claims, noticing and balloting agent in the Chapter 11 Case, Epiq Bankruptcy Solutions, LLC.

**1.45.    Class** means a category of holders of Claims or Equity Interests described in Article IV below.

**1.46.    CIRCOR** means CIRCOR International, Inc., a Delaware corporation.

**1.47.    CIRCOR Affiliate** means each of the Entities listed on Schedule 1 hereto, as may be amended at any time prior to the Effective Date with the consent of CIRCOR, the Asbestos Claimants Committee, and the Future Claimants' Representative, with such consent not to be unreasonably withheld.

**1.48.    CIRCOR Asbestos PI Trust Contribution** means, in the aggregate, the following contributions made to the Asbestos PI Trust by CIRCOR, for itself and on behalf of both the other CIRCOR Related Parties and the Watts Related Parties, including:

> **(a)**    the CIRCOR Cash; and

> **(b)**    the CIRCOR Pledge.

**1.49.    CIRCOR Cash** means the $74 million contribution of Cash by CIRCOR on behalf of itself and both the other CIRCOR Related Parties and the Watts Related Parties, to the Asbestos PI Trust on the Effective Date.

**1.50.    CIRCOR Pledge** means the granting of a security interest in 100% of the outstanding voting equity interests of Reorganized Leslie to the Asbestos PI Trust as security for the Leslie Promissory Note pursuant to the Pledge Agreement.

**1.51.    CIRCOR Related Parties** means: (a) CIRCOR; (b) any CIRCOR Affiliate; (c) any predecessor in interest to CIRCOR or a CIRCOR Affiliate; and (d) any Entity that owned or owns a financial interest in CIRCOR, a CIRCOR Affiliate or their predecessors.

**1.52.  CIRCOR Secured Claim** means the Secured Claim held by CIRCOR against Leslie.

**1.53.  Commencement Date** means July 12, 2010.

**1.54.  Confirmation Date** means the later of, as applicable, with respect to the Chapter 11 Case: (i) the date on which the Confirmation Order is entered by Bankruptcy Court and affirmed by the District Court or (ii) the date on which the Confirmation Order is entered by the District Court.

**1.55.  Confirmation Hearing** means the hearing to be held by the Bankruptcy Court and/or District Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

**1.56.  Confirmation Order** means, as the context requires, the order or orders of the District Court confirming the Plan under section 1129 of the Bankruptcy Code or affirming an order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which shall contain, among other things, the Asbestos PI Channeling Injunction.

**1.57.  Control** means the possession, directly or indirectly, of the power to direct or cause the direction of management, policies, or activities of an Entity, whether through ownership of voting securities, by contract, or otherwise.

**1.58.  Cure** means the payment of Cash by Leslie, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to: (a) cure a default by Leslie under an Executory Contract; and (b) permit Leslie to assume such Executory Contract under section 365 of the Bankruptcy Code.

**1.59.  Cure Notice** means the pleading that the Reorganized Debtor shall file and serve within thirty (30) days after the Effective Date listing the amount of the proposed Cure for each assumed, or assumed and assigned, Executory Contract.

**1.60.  Debtor** means Leslie Controls, Inc. in the Chapter 11 Case.

**1.61.  Debtor in Possession** means Leslie Controls, Inc., as debtor in possession in the Chapter 11 Case pursuant to section 1101(1) of the Bankruptcy Code.

**1.62.  Debtor Released Parties** means, collectively, the Debtor, Reorganized Leslie, the officers, directors and employees of the Debtor who were either serving in such capacities as of the Confirmation Date, or who had served in such capacities during the Chapter 11 Case, the officers, directors and employees of Reorganized Leslie serving in such capacity after the Effective Date and, with respect to each of the above-named Entities, such Entity's principals, employees, agents, current and former officers, current and former directors, financial advisors, attorneys, investment bankers, accountants, consultants and other professionals, agents and any of their successors and assigns.

8

**1.63.    Demand** means any demand for payment, present or future, within the meaning of section 524(g)(5) of the Bankruptcy Code, that: (a) was not a Claim during the Chapter 11 Case; (b) arises out of same or similar conduct or events that gave rise to the Asbestos PI Claims; and (c) pursuant to the Plan, is to be paid by the Asbestos PI Trust.

**1.64.    Derivative Liability Asbestos PI Claim** means any claim based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, or conspiracy, upon which any of the CIRCOR Related Parties or Watts Related Parties are liable, or are allegedly liable, arising out of, resulting from, or relating to directly or indirectly, death, bodily injury, sickness, disease, or other personal injury, physical, emotional or otherwise, to persons, caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos or asbestos-containing products, to the extent arising, directly or indirectly, from acts, omissions, business, or operations of Leslie (including the acts, omissions, business, or operations of any other Entity for whose product or operations Leslie has liability, to the extent of Leslie's liability for such acts, omissions, business, or operations) (including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of Leslie or any other Entity for whose products or operations Leslie has liability or is alleged to have liability, or any conduct for which Leslie, or any other Entity for whose products or operations Leslie has liability or is alleged to have liability, may be deemed to have strict liability under any applicable law) including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, punitive, and special damages). For purposes of this definition, "veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, or conspiracy" claims shall include, but not be limited to, (a) fraudulent transfer or fraudulent conveyance claims under applicable state or federal law, (b) denuding the corporation claims, (c) single business enterprise claims, (d) claims that Leslie was the predecessor, (f) mere instrumentality, agent or alter ego of any of the CIRCOR Related Parties or Watts Related Parties, (g) trust fund claims, (h) claims that any of the CIRCOR Related Parties or Watts Related Parties conspired with Leslie, and (i) any causes of action against any CIRCOR Related Parties or Watts Related Parties that belong to the Debtor or Debtor in Possession, whether or not included in the foregoing list, including any other such claim or cause of action against an Entity entitled to protection under section 524(g)(4)(A)(ii).

**1.65.    Derivative Liability Claim** means any claim, other than a Derivative Liability Asbestos PI Claim, whether in existence or arising now or in the future, based upon a legal or equitable theory of liability in the nature of veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, or conspiracy, upon which any of the CIRCOR Related Parties or Watts Related Parties are liable, or are allegedly liable, arising out of, resulting from, or relating to directly or indirectly, death, bodily injury, sickness, disease, or other personal injury, physical, emotional or otherwise, to persons, caused, or allegedly caused, directly or indirectly, by acts, omissions, business, operations, or products of Leslie (including the acts, omissions, business, or operations of any other Entity for whose product or operations Leslie has actual or alleged liability, to

9

the extent of Leslie's actual or alleged liability for such acts, omissions, business, or operations, and any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of Leslie or any other Entity for whose products or operations Leslie has liability or is alleged to have liability, or any conduct for which Leslie, or any other Entity for whose products or operations Leslie has liability or is alleged to have liability, may be deemed to have strict liability under any applicable law) and all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, punitive, and special damages).  For purposes of this definition, "veil piercing, alter ego, successor liability, vicarious liability, fraudulent transfer, or conspiracy" claims shall include, but not be limited to, (a) fraudulent transfer or fraudulent conveyance claims under applicable state or federal law, (b) denuding the corporation claims, (c) continuation of business enterprise claims, (d) single business enterprise claims, (e) claims that Leslie was the predecessor, (f) mere instrumentality, agent or alter ego of any of the CIRCOR Related Parties or Watts Related Parties, (g) trust fund claims, (h) claims that any of the CIRCOR Related Parties or Watts Related Parties conspired with Leslie, and (i) any causes of action against any of the CIRCOR Related Parties or Watts Related Parties that belong to the Debtor or Debtor in Possession, whether or not included in the foregoing list.

    **1.66.    DIP Agreement** means the credit agreement to be entered into after the Commencement Date by and between Leslie and CIRCOR, as may be modified or amended by the parties or order of the Bankruptcy Court.

    **1.67.    DIP Claim** means any claim of the DIP Lender arising out of the DIP Agreement.

    **1.68.    DIP Lender** means the lender under the DIP Agreement.

    **1.69.    Disallowed** means, when used with respect to a Claim against Leslie, other than an Asbestos PI Claim, a Claim that: (a) is disallowed in whole or in part (but solely to the extent of such disallowance) by Final Order; or (b) has been withdrawn, in whole or in part, by the holder thereof.

    **1.70.    Disclosure Statement** means the written disclosure statement that relates to the Plan, including the exhibits and schedules thereto, as approved by the Bankruptcy Court after the Commencement Date as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

    **1.71.    Disputed Claim** means a Claim against Leslie, other than an Asbestos PI Claim, or any portion thereof, that is neither Allowed nor Disallowed or is contingent, disputed or unliquidated.

    **1.72.    Distribution Record Date** means the record date for determining an entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the Confirmation Date.

**1.73.    Distribution** means any: (a) Cash; (b) property; or (c) interest in property to be paid or distributed hereunder to the holders of Allowed Claims or Equity Interests, not including the Asbestos PI Claims.

**1.74.    District Court** means the United States District Court for District of Delaware.

**1.75.    Effective Date** means a date selected by the Debtor, which date shall be on or as soon as practicable after the first Business Day on which all conditions to the consummation of the Plan set forth in Section 12.2 have been satisfied or waived.

**1.76.    Encumbrance** means, with respect to any property (whether real or personal, or tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

**1.77.    Entity** means any person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.78.    Equity Interest** means any right, title and interest in Leslie existing as of the Petition Date.

**1.79.    Estate** means the estate created under section 541 of the Bankruptcy Code in the Chapter 11 Case.

**1.80.    Executory Contract** means any unexpired lease or executory contract of Leslie that is subject to treatment under section 365 of the Bankruptcy Code.

**1.81.    Final Judgment or Final Order** means a judgment or an order, as the case may be, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, that if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought; (a)(i) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed; or (ii) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; or (b) such appeal, writ of certiorari, or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking party.

**1.82.    Future Claimants' Representative** means James L. Patton, Jr. (or any court-appointed alternative or successor), in his capacity as the court-appointed legal

11

representative for all Future Demand Holders pursuant to section 524(g) of the Bankruptcy Code for the purpose of protecting their interests.

**1.83.    Future Demand Holder** means a holder of a Demand, whether now known or hereafter discovered.

**1.84.    General Unsecured Claim** means a claim against Leslie that is not secured by a valid and enforceable Lien against property of Leslie and that is not an Administrative Expense Claim, a Priority Claim, a DIP Claim, a Priority Tax Claim, an Intercompany Claim or an Asbestos PI Claim.

**1.85.    Impaired** means, when used with respect to a Claim or an Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.86.    Indirect Asbestos PI Claim** means those cross-claims, contribution claims, subrogation claims, reimbursement claims, indemnity claims, and other similar derivative or indirect Claims, Demands, or allegations against Leslie, any Settling Insurer, or any other Asbestos Protected Party whether or not any such Claim, Demand, debt, liability or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether or not the facts of or legal bases therefore are known or unknown, and whether in the nature of or sounding in tort, or under contract or implied by law (as defined by the applicable nonbankruptcy law of the relevant jurisdiction), warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or relating to directly or indirectly, death, bodily injury, sickness, disease, or other personal or emotional injuries to persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos - including asbestos-containing products, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any way used by Leslie or any Entity for whose products or operations Leslie has liability or is alleged to have liability - to the extent arising, directly or indirectly from acts, omissions, business or operations of Leslie (including the acts, omissions, business or operations of any other Entity for whose products or operations Leslie has liability, to the extent of Leslie's liability for such acts, omissions, business, or operations) (including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of Leslie or any other Entity for whose products or operations Leslie has liability or is alleged to have liability or any conduct for which Leslie, or any other Entity for whose products or operations Leslie has liability or is alleged to have liability, may be deemed to have strict liability under any applicable law) including claims, debts, obligations, or liabilities for compensatory damages, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages.

12

**1.87.    Insurance Settlement Agreement** means any of the agreements listed on the annexed Exhibit F, as such exhibit may be amended, supplemented, or otherwise modified by Leslie from time to time prior to the Confirmation Date.

**1.88.    Insurer Contribution Claim** means any claim, cause of action, cross-claim, contribution claim, subrogation claim, reimbursement claim, indemnity claim, or other similar claims, demands, or allegations asserted or to be asserted by any Asbestos Insurance Entity against the Asbestos PI Trust, Leslie, Reorganized Leslie, or another Asbestos Insurance Entity, whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law, equity, or admiralty, arising out of, resulting from, or relating to, directly or indirectly, any Asbestos PI Insurance Contract.

**1.89.    Intercompany Claim** means any General Unsecured Claim held by an Affiliate of Leslie against Leslie or by Leslie against an Affiliate of Leslie.

**1.90.    Leslie** means Leslie Controls, Inc., a Delaware corporation, and its predecessors.

**1.91.    Leslie Affiliate** means each of the Entities listed on Schedule 2 hereto, as may be amended from time to time prior to the Effective Date with the consent of CIRCOR, the Asbestos Claimants Committee, and the Future Claimants' Representative, with such consent not to be unreasonably withheld.

**1.92.    Leslie Asbestos PI Claim** means any Claim, Demand, or allegation or portion thereof against, or any debt, liability, or obligation of, Leslie or any other Asbestos Protected Party, whether now existing or hereafter arising, whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty for, arising out of, or resulting from, directly or indirectly, death, bodily injury, sickness, disease, or any other actual or alleged personal injury, physical, emotional or otherwise, to persons, caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to asbestos—including, without limitation, asbestos-containing products, equipment, components, parts, improvements to real property, or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any other way used by Leslie or any other Entity for whose products or operations Leslie has liability or is alleged to have liability - to the extent arising, directly or indirectly, from acts, omissions, business, or operations of Leslie (including the acts, omissions, business, or operations of any other Entity for whose products or operations Leslie has liability, to the extent of Leslie's liability for such acts, omissions, business, or operations) (including any acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of Leslie or any other Entity for whose products or operations Leslie has liability or is alleged to have liability, or any conduct for which Leslie, or any other Entity for whose products or operations Leslie has liability or is alleged to have liability, may be deemed to have strict liability under any applicable law) including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring,

13

personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages). Notwithstanding the foregoing, a Claim, Demand, allegation, debt, liability or obligation shall only be a Leslie Asbestos PI Claim to the extent of Leslie's liability for that Claim, Demand, allegation, debt, liability or obligation. For the purpose of this definition, Leslie Asbestos PI Claim does not include any Claim by any present or former employee of the Debtor for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer.

1.93.    **Leslie Contribution** means, collectively, contributions by Leslie or Reorganized Leslie to the Asbestos PI Trust, on account of Asbestos PI Claims, of the following:

        **(a)**      the Leslie Promissory Note; and

        **(b)**      an assignment of any and all rights of Leslie:

        **(i)**      to proceeds under existing insurance policies that provide coverage for Asbestos Personal Injury Claims; and

        **(ii)**      to $2,625,000 of the proceeds of the Insurance Settlement Agreement between Leslie and Continental Casualty Company dated April 19, 2010, plus the proceeds, if any, of any other Insurance Settlement Agreement that were received by Leslie on or after January 1, 2010.

1.94.    **Leslie Promissory Note** means that certain Promissory Note of Reorganized Leslie, secured by the CIRCOR Pledge, to be entered into as of the Effective Date between Reorganized Leslie and the Asbestos PI Trust in substantially the same form annexed hereto as Exhibit D for the payment of a principal amount of $1 million, with interest payable in equal quarterly installments, and such other agreements, instruments or documents relating thereto.

1.95.    **Leslie Related Parties** means: (a) Leslie or Reorganized Leslie; (b) any Leslie Affiliate; (c) any predecessor in interest to Leslie, Reorganized Lenders or a Leslie Affiliate; and (d) any Entity that owned or owns a financial interest in Leslie, Reorganized Leslie, a Leslie Affiliate or the predecessors in interest of each.

1.96.    **Lien** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.97.    **Liquidate** means to determine a payable value for an Asbestos PI Claim in accordance with the provisions governing the Asbestos PI Trust, but not to pay such a claim.

1.98.    **Non-Debtor Released Parties** means each of the following: (a) the Ad Hoc Committee; (b) the Asbestos Claimants Committee; (c) the CIRCOR Related Parties; (d) the Watts Related Parties; (e) the DIP Lender; (f) the Pre-Petition Future Claimants' Representative; (g) the Future Claimants' Representative; (h) the Asbestos

14

Protected Parties; (i) any current or former Representative of each of the foregoing and (j) for each of the foregoing Entities, such Entity's current and former principals, employees, agents, officers, directors, financial advisors, attorneys, investment bankers, accountants, consultants and other professionals, agents and any of their successors and assigns.

**1.99.    Payment Percentage** means the percentage of the liquidated value that holders of Asbestos PI Claims will be entitled to receive from the Asbestos PI Trust pursuant to the Asbestos PI Trust Distribution Procedures.

**1.100.   Plan** means this plan of reorganization of Leslie under Chapter 11 of the Bankruptcy Code, including any supplements, schedules and exhibits hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof.

**1.101.   Plan Contributors** means, collectively, (a) CIRCOR, on behalf of itself, the other CIRCOR Related Parties, and the Watts Related Parties, and (b) Leslie.

**1.102.   Plan Documents** means, collectively, (a) the Disclosure Statement, (b) any document contained in the Plan Supplement, (c) all of the exhibits and schedules attached to the Plan, the Disclosure Statement and/or the Plan Supplement and (d) any other document necessary to implement the Plan.

**1.103.   Plan Supplement** means the compilation of documents or forms of documents specified in the Plan, including, but not limited to, the documents specified in Section 14.3 below and any exhibits to the Plan not included herewith, each in form and substance acceptable to Leslie and CIRCOR, which Leslie shall file with the Bankruptcy Court on or before the date that is ten (10) Business Days prior to the deadline for the filing and service of objections to the Plan, all of which are incorporated herein by reference.

**1.104.   Pledge Agreement** means that certain pledge agreement that will be executed on the Effective Date by and among CIRCOR, Reorganized Leslie and the Asbestos PI Trust, substantially in the form annexed hereto as Exhibit E.

**1.105.   Post-Confirmation Settling Asbestos Insurance Entity** means any Asbestos Insurance Entity that enters into an insurance settlement agreement after the Confirmation Date that the Asbestos PI Trust determines, in its sole and absolute discretion, in writing, is sufficiently comprehensive to warrant that such Asbestos Insurance Entity receive the protections provided under section 524(g) of the Bankruptcy Code.

**1.106.   Preliminary Injunction Order** means an order granting an injunction pursuant to sections 105(a) and 362(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules enjoining all asbestos-related Derivative Liability Asbestos PI Claims against any of the CIRCOR Related Parties or Watts Related Parties.

46392/0001-6454424v16

**1.107.  Pre-Petition Future Claimants' Representative** means James L. Patton, Jr., who served as the representative of Future Demand Holders prior to the Commencement Date.

**1.108.  Priority Claim** means any Claim entitled to priority pursuant to section 507 of the Bankruptcy Code other than an Administrative Expense Claim, a DIP Claim, or a Priority Tax Claim.

**1.109.  Priority Tax Claim** means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.110.  Professional** means any person retained or to be compensated pursuant to section 327, 328, 330, 503(b), 506(b), 524(g) or 1103 of the Bankruptcy Code, including the Future Claimants' Representative and any Entity retained thereby.

**1.111.  Proof of Claim** means any proof of claim or interest filed with the Bankruptcy Court or the Claims and Balloting Agent pursuant to Bankruptcy Code section 501 and Rule 3001 or 3002 of the Bankruptcy Rules that asserts a Claim against or Equity Interest in Leslie.

**1.112.  Rejection Claim** means any Claim for damages under section 502(g) of the Bankruptcy Code resulting from the rejection of an executory contract or unexpired lease by Leslie or Reorganized Leslie.

**1.113.  Released Parties** means, collectively, the Debtor Released Parties and the Non-Debtor Released Parties.

**1.114.  Reorganized Leslie** means Leslie, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

**1.115.  Reorganized Leslie Common Stock** means all of the issued and outstanding shares of common stock of Reorganized Leslie to be deemed authorized and issued under Article IX. of the Plan.

**1.116.  Representative** means, with respect to any specified Entity, any current or former officer, director, employee, agent, attorney, accountant, financial advisor, other representative or any person who controls any of these within the meaning of the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended.

**1.117.  Schedules** means, the schedules of assets and liabilities and the statements of financial affairs of Leslie as filed with the Bankruptcy Court by Leslie on August 11, 2010 in accordance with section 521 of the Bankruptcy Code, as such schedules and statements may be amended or supplemented from time to time.

**1.118.  Secured Claim** means a Claim that is: (a) secured by a valid, duly perfected, non-avoidable security interest in the interest of Leslie in property, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such Claimholder's interest in Leslie's interest in such property, as

16

determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or as otherwise agreed in writing by Leslie and the Claimholder; or (b) secured by the amount of any valid, non-avoidable rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.119.  Settling Asbestos Insurance Entity** means any Asbestos Insurance Entity that has entered into an Insurance Settlement Agreement prior to the Confirmation Date if:  (a) such Insurance Settlement Agreement provides that (i) Leslie agreed to seek the protections under section 524(g) of the Bankruptcy Code for such Asbestos Insurance Entity or (ii) Leslie agreed to indemnify such Asbestos Insurance Entity with respect to any Asbestos PI Claim that may be channeled to the Asbestos PI Trust; (b) the proceeds of such Insurance Settlement Agreement are included in the Leslie Contribution to be contributed to the Asbestos PI Trust on the Effective Date; and (c) such Insurance Settlement Agreement is sufficiently comprehensive to warrant that such Asbestos Insurance Entity receive treatment under section 524(g) of the Bankruptcy Code.  Any Insurance Settlement Agreement agreed to after June 25, 2010 and prior to the Confirmation Date must be in form and content acceptable to the Asbestos Claimants Committee and the Future Claimants' Representative.

**1.120.  Settling Insurer** means any Asbestos Insurance Entity that is either a Settling Asbestos Insurance Entity or a Post-Confirmation Settling Asbestos Insurance Entity.

**1.121.  Solicitation Procedures Order** means the Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Procedures to Solicit Acceptances of the Proposed Plan; (III) Scheduling a Confirmation Hearing and (IV) Establishing Notice and Objection Procedures for Confirmation of the Proposed Plan, entered by the Bankruptcy Court on August 19, 2010.

**1.122.  Trust Distribution Effective Date** means a date selected by the Debtor, which date shall be on or as soon as practicable after the first Business Day on which all conditions to the consummation of the Plan set forth in Section 12.3 have been satisfied or waived.

**1.123.  Unimpaired** means a Claim or Equity Interest, or a Class of Claims or Equity Interests, as appropriate, that is not Impaired under the Plan.

**1.124.  United States Trustee** means the United States Trustee appointed under section 591 of title 28 of the United States Code to serve in the District of Delaware.

**1.125.  Watts** means Watts Water Technologies, Inc., a Delaware corporation, formerly known as Watts Industries, Inc.

**1.126.  Watts Affiliate** means each of the Entities listed on Schedule 3 hereto, as may be amended at any time prior to the Effective Date with the consent of CIRCOR, the Asbestos Claimants Committee, and the Future Claimants' Representative, with such consent not to be unreasonably withheld.

46392/0001-6454424v16

**1.127. Watts Related Parties** means: (a) Watts; (b) any Watts Affiliate; (c) any predecessor in interest to Watts or a Watts Affiliate; and (d) any Entity that owned or owns a financial interest in Watts, a Watts Affiliate or their predecessors.

# ARTICLE II.

## ADMINISTRATIVE EXPENSE, PRIORITY TAX AND DIP CLAIMS

**2.1.    Allowed Administrative Expense Claims.** Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, or as otherwise provided for in the Plan, in full satisfaction, settlement and discharge of and in exchange for such Claims, Leslie or Reorganized Leslie shall pay each Allowed Administrative Expense Claim in full and in Cash on, or as soon thereafter as is reasonably practicable, the latest of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the date the Administrative Expense Claim becomes an Allowed Administrative Expense Claim; and (c) the date the Allowed Administrative Expense Claim becomes due and payable according to its terms; provided however, that the Allowed Administrative Expense Claims representing liabilities incurred by the Debtor in Possession in the ordinary course of business or liabilities under loans or advances to or other obligations incurred by the Debtor in Possession may be paid by Leslie in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Reorganized Leslie, in its sole and absolute discretion, may settle Administrative Expense Claims in the ordinary course of business without further Bankruptcy Court approval. Leslie or Reorganized Leslie shall have the right to object to any Administrative Expense Claim by the later of: (a) 180 days after the Effective Date, subject to such extensions as may be granted from time to time by the Bankruptcy Court; and (b) 30 days after the date such Administrative Expense Claim is filed. Unless Leslie or Reorganized Leslie timely objects to an Administrative Expense Claim, such Claim shall be deemed Allowed in the amount requested. In the event that Leslie or Reorganized Leslie timely objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

All entities seeking awards by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 330 or 503 of the Bankruptcy Code shall (a) file, on or before the deadline specified in the Confirmation Order, their respective applications for final allowance of compensation for services rendered and reimbursement of expenses incurred; and (b) be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) upon the later of (A) the Effective Date and (B) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; or (ii) upon such other terms as may be mutually agreed upon by such holder and Reorganized Leslie. Reorganized Leslie is authorized to pay compensation for Professional services rendered and

18

reimbursement of expenses incurred after the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

**2.2.    Priority Tax Claims.** Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by Leslie prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim, if any, shall, in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, receive in full satisfaction, settlement and discharge of and in exchange for such Allowed Priority Tax Claim, either of the following, at the sole and absolute discretion of Reorganized Leslie: (a) Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, on the later of: (i) the Effective Date; (ii) the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable; and (iii) the date such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy law; or (b) regular installment payments in Cash (i) of a total value, as of the Effective Date, equal to the allowed amount of such Priority Tax Claim; (ii) over a period ending not later than five (5) years after the Effective Date; and (iii) in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors under section 1122(b)).

**2.3.    DIP Claim.** Except to the extent that a holder of an Allowed DIP Claim agrees to a different treatment, each Allowed DIP Claim shall be paid in full in Cash on the Effective Date.

## ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in Leslie.

**3.1.    Classification.** The categories of Claims and Equity Interests listed below, other than Administrative Expense Claims, Priority Tax Claims and the DIP Claim, are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

46392/0001-6454424v16

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Priority Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | General Unsecured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | Asbestos PI Claims | Impaired | Yes |
| Class 5 | Intercompany Claims | Unimpaired | No |
| Class 6 | Equity Interests in Leslie | Unimpaired | No |

## ARTICLE IV.

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

**4.1.     Class 1 - Priority Claims.**  Except to the extent a holder of an Allowed Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Claim shall receive in full satisfaction, settlement and discharge of and in exchange for such Priority Claim, Cash in an amount equal to the unpaid portion of such Allowed Priority Claim on or before the later of: (a) the Effective Date; and (b) the date the Priority Claim becomes an Allowed Priority Claim, or as soon thereafter as practicable.  All Allowed Priority Claims not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

Class 1 is Unimpaired under the Plan.  Each holder of a Priority Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

**4.2.     Class 2 - Secured Claims.**  Except to the extent a holder of a Secured Claim agrees to different treatment of that Claim, each holder of an Allowed Secured Claim shall have such Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code such that the Claim is rendered Unimpaired.  The failure of Leslie or any other party in interest to file an objection, prior to the Effective Date, with respect to any Secured Claim that is reinstated hereunder shall be without prejudice to the rights of Reorganized Leslie or any other party in interest to contest or otherwise defend against such Secured Claim in an appropriate forum when and if such Secured Claim is sought to be enforced.  Any amount that Leslie may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated Allowed Secured Claim shall be paid in full, in Cash, on, or as soon as practicable after, the later of (a) the Effective

20

Date; (b) the date on which such Secured Claim becomes an Allowed Secured Claim; (c) the date such Secured Claim becomes due and payable according to its terms; or (d) such other date as mutually may be agreed to by and among the holder of such Secured Claim and Leslie or Reorganized Leslie.  For the avoidance of doubt, Class 2 – Secured Claims includes the CIRCOR Secured Claim.

Class 2 is Unimpaired under the Plan.  Each holder of a Secured Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

**4.3.    Class 3 - Allowed General Unsecured Claims.**  Except to the extent a holder of an Allowed General Unsecured Claim agrees to different treatment of that General Unsecured Claim, each holder of an Allowed General Unsecured Claim shall have such General Unsecured Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code such that the General Unsecured Claim is rendered Unimpaired and, as a result, such treatment leaves unaltered the legal, equitable, and contractual rights to which such Allowed General Unsecured Claim entitles the holder of such Claim.  The failure of Leslie or any other party in interest to file an objection, prior to the Effective Date, with respect to any General Unsecured Claim that is reinstated hereunder shall be without prejudice to the rights of Reorganized Leslie or any other party in interest to contest or otherwise defend against such General Unsecured Claim in an appropriate forum when and if such General Unsecured Claim is sought to be enforced.  Any amount that Leslie may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated Allowed General Unsecured Claim shall be paid in full, in Cash, on, or as soon as practicable after, the latest of: (a) the Effective Date; (b) the date on which such General Unsecured Claim becomes an Allowed General Unsecured Claim; (c) the date such General Unsecured Claim becomes due and payable according to its terms; or (d) such other date as mutually may be agreed to by and among the holder of such General Unsecured Claim and Leslie or Reorganized Leslie.

Class 3 is Unimpaired under the Plan.  Each holder of a General Unsecured Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

**4.4.    Class 4 - Asbestos PI Claims and Asbestos PI Trust Expenses.**  As of the Effective Date, liability for all Asbestos PI Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the Asbestos PI Trust in accordance with, and to the extent set forth in, Articles IX and XI below, the applicable Plan Documents and the Confirmation Order.  Each Asbestos PI Claim shall be resolved, after the Trust Distribution Effective Date, in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.  The Asbestos PI Trust shall be funded in accordance with the provisions of Section 9.3 below.  The sole recourse of the holder of an Asbestos PI Claim on account of such Asbestos PI Claim shall be to the Asbestos PI Trust and each such holder shall have no right whatsoever at any time to assert its Asbestos PI Claim against any Asbestos Protected Party.

46392/0001-6454424v16

As of the Effective Date, liability for all Asbestos Trust Expenses shall automatically, and without further act, deed or court order, be assumed by the Asbestos PI Trust and resolved in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement.

Class 4 is Impaired under the Plan. Each holder of an Asbestos PI Claim shall be entitled to vote to accept or reject the Plan to the extent and in the manner provided in Article V below and in the Solicitation Procedures Order.

**4.5.    Class 5 - Intercompany Claims.** On or as soon as practicable after the Effective Date, all Intercompany Claims will either be reinstated to the extent determined to be appropriate by Leslie or Reorganized Leslie or adjusted, continued, or capitalized, either directly or indirectly, in whole or in part. Any such transaction may be effected on or subsequent to the Effective Date without any further action by the Bankruptcy Court.

Class 5 is Unimpaired under the Plan. Each holder of an Intercompany Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan

**4.6.    Class 6 - Equity Interests.** On the Effective Date, the holder of Equity Interests in Leslie shall retain its Equity Interests which shall become Reorganized Leslie Common Stock as of the Effective Date. The Reorganized Leslie Common Stock will be pledged to the Asbestos PI Trust by CIRCOR pursuant to the Pledge Agreement and held by the Asbestos PI Trust until such time as the Leslie Promissory Note is paid in full.

Class 6 is Unimpaired under the Plan. The holder of the Equity Interests is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

## ARTICLE V.

## ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR EQUITY INTERESTS

**5.1.    Classes Entitled to Vote.** Except as set forth below, each holder of an Allowed Claim, and each holder of a Claim that has been temporarily allowed for voting purposes, including each holder of an Asbestos PI Claim, in each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan unless such Impaired Class shall receive no distribution under the Plan, in which case, such Impaired Class shall be deemed to reject the Plan and shall not be entitled to vote to accept or reject the Plan.

Any holder of a Claim in an Unimpaired Class of Claims shall not be entitled to vote to accept or reject the Plan.

**5.2.    Class Acceptance Requirement.** Acceptance of the Plan by any Impaired Class of Claims shall be determined in accordance with section 1126 of the Bankruptcy Code and the terms of the Solicitation Procedures Order. With respect to Class 4, acceptance of the Plan shall also be determined in accordance with section 524(g) of the Bankruptcy Code.

22

**5.3.    Issuance of Injunction Pursuant to Section 524(g) of the Bankruptcy Code.** The Bankruptcy Court shall be asked to issue the Asbestos PI Channeling Injunction if the Plan has been accepted by at least two-thirds (2/3) in amount of those holders of Class 4 Claims actually voting on the Plan, in accordance with section 1126(c) of the Bankruptcy Code, and seventy-five percent (75%) in number of those holders of Class 4 Claims actually voting on the Plan, in accordance with section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code.

**5.4.    Acceptance by Unimpaired Classes.** Class 1 (Priority Claims), Class 2 (Secured Claims), Class 3 (General Unsecured Claims), Class 5 (Intercompany Claims) and Class 6 (Equity Interests) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, solicitation of votes of holders of Claims in Class 1, Class 2, Class 3, Class 5 and Class 6 is not required.

## ARTICLE VI.

## DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS OTHER THAN ASBESTOS PI CLAIMS

**6.1.    Distributions.** Other than with respect to distributions to be made to Asbestos PI Claims from the Asbestos PI Trust, Reorganized Leslie shall make all Distributions required to be made under the Plan as provided under this Article VI. All distributions to be made on account of Asbestos PI Claims shall be made in accordance with the terms of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures, subject to the conditions for the Trust Distribution Effective Date as set forth in Section 12.3 having been previously satisfied.

**6.2.    Date of Distributions.** Except as otherwise provided herein, any Distributions and deliveries to be made hereunder on account of Allowed Claims or Equity Interests (other than Asbestos PI Claims) shall be made on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**6.3.    Postpetition Interest on Claims.** Unless expressly provided for in the Plan, the Plan Documents and the Confirmation Order, or any contract, instrument, release, settlement or other agreement entered into in connection with the Plan, or unless required by applicable bankruptcy law (including the fair and equitable rule), interest shall not accrue on or after the Commencement Date on account of any Claim.

**6.4.    Means of Cash Payment.** At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in any applicable agreement.

23

**6.5.    Delivery of Distributions.**  Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim or Equity Interest shall be made at the address of such holder as set forth on the Schedules filed, as may be required, with the Bankruptcy Court, or on the books and records of Leslie or its agents, or in a letter of transmittal, unless Leslie has been notified in writing of a change of address.

If any holder's Distribution is returned as undeliverable, then no further Distributions to such holder shall be made unless and until Reorganized Leslie is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder without interest.  A Cash Distribution that is not claimed by the expiration of six (6) months from the date that such Distribution was made shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in Reorganized Leslie, and the Claim of any holder to such Distributions shall be discharged and forever barred.  Nothing contained in the Plan shall require Leslie or Reorganized Leslie to attempt to locate any holder of an Allowed Claim.

**6.6.    Time Bar to Cash Payments.**  Checks issued by Reorganized Leslie in respect of Distributions on Allowed Claims shall be null and void if not presented for payment within sixty (60) days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing to Reorganized Leslie by the holder of the Allowed Claim to whom such check originally was issued on or before thirty (30) days after the expiration of the sixty (60) day period following the date of issuance of such check.  After expiration of the thirty (30) day period, all funds held on account of such void check shall, in the discretion of Reorganized Leslie be used to satisfy the costs of administering and fully consummating the Plan or will become the property of Reorganized Leslie, and the Claim of any holder to such Distributions shall be discharged and forever barred.

**6.7.    Record Date for Holders of Claims.**  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Rule 3001 of the Bankruptcy Rules on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

**6.8.    Distributions after Effective Date.**  Distributions made after the Effective Date shall be deemed to have been made on the Effective Date.  No interest shall accrue or be payable on such Distributions.

**6.9.    Fractional Cents.**  Notwithstanding any other provision in the Plan to the contrary, no payment of fractional cents will be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with fractions of more than half a penny being rounded up and fractions of half of a penny or less being rounded down.

**6.10.    Setoff.**  Leslie or Reorganized Leslie may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed Amount of such Claim

24

on which Distribution shall be made), any claims of any nature whatsoever that Leslie or Reorganized Leslie may have against the holder of such Claim, and the failure to do so shall not constitute a waiver or release by Leslie or Reorganized Leslie of any such Claims that Leslie or Reorganized Leslie may have against the holder of such Claim.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1.    General Treatment.** Leslie shall assume, as of the Effective Date, all Executory Contracts to which Leslie is a party, except for: (a) the Executory Contracts specifically listed in certain Schedules to the Plan Supplement, which shall either be rejected or assumed and assigned, respectively, as described therein; and (b) the Executory Contracts specifically addressed herein or pursuant to a Final Order of the Bankruptcy Court entered on or before the Effective Date. Leslie may, at any time on or before the Effective Date, amend the Schedules to the Plan Supplement to delete therefrom, or add thereto, any Executory Contract. Leslie shall provide notice of any such amendment to the parties to the Executory Contract(s) affected thereby and to parties on any master service list established by the Bankruptcy Court in the Chapter 11 Case. The fact that any contract or lease is listed in the Schedules to the Plan Supplement shall not constitute or be construed to constitute an admission that such contract or lease is an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code or that Leslie or any successor in interest to Leslie (including Reorganized Leslie) has any liability thereunder.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such: (a) rejections; (b) assumptions; or (c) assumptions and assignments, as the case may be, pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**7.2.    Cure of Defaults.** Except to the extent that different treatment has been agreed to by the non-Debtor party or parties to any Executory Contract to be assumed (including any Executory Contract to be assumed and assigned) pursuant to Section 7.1 above, Reorganized Leslie shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within thirty (30) days after the Effective Date, file and serve a pleading with the Bankruptcy Court listing the amount of the proposed Cure for each such Executory Contract. The non-Debtor party or parties to each such Executory Contract shall have fifteen (15) days from service of the Cure Notice to object to the proposed Cure with respect to that Executory Contract. Within thirty (30) days after service of any objection to the proposed Cure for an Executory Contract, Leslie shall: (a) resolve such objection, which resolution shall not require approval of the Bankruptcy Court; (b) schedule a hearing before the Bankruptcy Court to determine the proper Cure for the Executory Contract; or (c) determine to reject the Executory Contract, and provide notice thereof to the applicable non-Debtor party or parties, which rejection shall be deemed effective as of the day before the Effective Date.

**7.3.    Bar to Rejection Damages.**  In the event that the rejection of an Executory Contract by Leslie pursuant to the Plan results in damages to the non-Debtor party or parties to such Executory Contract, a claim for such damages shall be forever barred and shall not be enforceable against Leslie, Reorganized Leslie, or their respective properties or interests in property, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for Leslie on or before (a) if such Executory Contract is rejected pursuant to Sections 7.1 and 7.2 above, the later of: (i) thirty (30) days after entry of the Confirmation Order; and (ii) thirty (30) days after the non-Debtor party receives notice of the rejection of such Executory Contract pursuant to Section 7.2 above; and (b) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by Leslie to reject that Executory Contract, thirty (30) days after entry of such order.

**7.4.    Insurance Policies.**  With the exception of the Asbestos PI Insurance Contracts and Insurance Settlement Agreements as described in Section 8.4 below, all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, to the extent necessary, are treated as executory contracts under the Plan.  On the Effective Date, the Debtor shall be deemed to have assumed and assigned to the Reorganized Debtor all insurance policies and any agreements, documents, and instruments relating to coverage of Claims covered by those insurance policies, subject to all rights, remedies and defenses of the Debtor under any agreements, insurance policies and applicable law.

**7.5.    Compensation and Benefit Plans and Treatment of Retiree and Pension Benefits.**  Except as otherwise expressly provided in the Plan or in any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, all of the Debtor's programs, plans, agreements and arrangements relating to employee compensation and benefits, including programs, plans, agreements and arrangements subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code and including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plans, incentive plans, life, accidental death and dismemberment insurance plans, workers' compensation plans, remaining benefits under the pension plan frozen in 2006 and employment, severance, salary continuation and retention agreements entered into before the Petition Date and not since terminated, will be deemed to be, and will be treated as though they are, executory contracts that are assumed under Section 7.1 of the Plan, and the Debtor's obligations under such programs, plans, agreements and arrangements will survive confirmation of the Plan, except for executory contracts or plans that previously have been rejected, are the subject of a motion to reject or have been specifically waived by the beneficiaries of any plans or contracts.  In addition, pursuant to the requirements of section 1129(a)(13) of the Bankruptcy Code, the Plan provides for the continuation of payment by the Debtor of all "retiree benefits," as defined in section 1114(a) of the Bankruptcy Code, if any, at previously established levels.

# ARTICLE VIII.

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN ASBESTOS PI CLAIMS

**8.1.    Disputed Claims.**  All Disputed Claims against Leslie shall be subject to the provisions of this Article VIII.  All Asbestos PI Claims shall be resolved by the Asbestos PI Trust in accordance with Section 9.3 below, the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.  Only the Asbestos PI Trust will have the right to object to and/or resolve Asbestos PI Claims.  All Asbestos PI Claims must be submitted solely to the Asbestos PI Trust for payment, which shall be in accordance with the Asbestos PI Trust Distribution Procedures.

**8.2.    Objection to Claims.**  Leslie or Reorganized Leslie, as the case may be, shall be entitled to file objections to Claims that have been or properly should have been brought in the Bankruptcy Court (other than Asbestos PI Claims), on or before the first (1st) anniversary of the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same may be extended from time to time by the Bankruptcy Court, and shall be authorized to settle, compromise, withdraw or litigate to judgment such objections without further approval of the Bankruptcy Court.

**8.3.    Payments and Distributions with Respect to Disputed Claims.** Notwithstanding any other provision hereof, if any portion of a Claim (other than an Asbestos PI Claim) is a Disputed Claim, no payment or Distribution provided for herein shall be made on account of such Claim, unless and until such Claim becomes an Allowed Claim.

**8.4.    Preservation of Insurance.**  Subject to the terms and provisions of Section 10.4 of the Plan, as such provisions may be amended from time to time prior to the Confirmation Date, nothing in the Plan, the Plan Documents, or the Confirmation Order, including the discharge and release of Leslie and the Asbestos PI Channeling Injunction, shall diminish, impair or otherwise affect the enforceability of any Asbestos PI Insurance Contract or any other insurance policy that may provide coverage for Claims or Demands against Leslie; provided, further, that all Asbestos PI Insurance Contracts and Insurance Settlement Agreements shall be assumed by the Debtor and assigned to the Reorganized Debtor as of the Effective Date and the Debtor shall assign Asbestos Insurance Actions and Asbestos Insurance Rights to the Asbestos PI Trust as part of the Leslie Contribution.

**8.5.    Estimation of Claims.**  Leslie or Reorganized Leslie, as the case may be, may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim (not including any Asbestos PI Claims) for any reason pursuant to section 502(c) of the Bankruptcy Code, regardless of whether Leslie previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate such Claim at any time, including, without limitation, during the pendency of litigation concerning any objection to any

27

Claim or of any appeal relating thereto. Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by the Bankruptcy Court.

**8.6.    Preservation of Rights to Settle Claims.** In accordance with section 1123(b) of the Bankruptcy Code, Leslie and Reorganized Leslie shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims (other than Asbestos PI Claims), rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, that Leslie or its estate may hold against any Entity, without the necessity for Bankruptcy Court approval under Bankruptcy Rule 9019.

## ARTICLE IX.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**9.1.    Generally.** On the Confirmation Date, Leslie shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable it to implement the provisions of the Plan, including, without limitation, the creation of the Asbestos PI Trust. From and after the Effective Date, Reorganized Leslie shall be governed pursuant to the Amended Certificate of Incorporation and Amended By-Laws.

**9.2.    Transactions on the Effective Date.**

(**a**)    Immediately on the Effective Date, the following shall be deemed for all purposes to have occurred simultaneously:

(i)    the making of the CIRCOR Asbestos PI Trust Contribution and the Leslie Contribution to the Asbestos PI Trust;

(ii)    the establishment of the Asbestos PI Trust; and

(iii)    the vesting in the Asbestos PI Trust of the Asbestos PI Trust Assets, as more fully described in, and subject to the conditions set forth in, Section 9.3 below.

(**b**)    Also on the Effective Date, but solely immediately after the occurrence of Section 9.2(a) herein, CIRCOR shall retain its Equity Interests in Leslie, as more fully described in Section 9.3 below, subject to the Pledge Agreement.

(**c**)    Also on the Effective Date, but solely immediately after the occurrence of each of Section 9.2(a) through (b) herein, the following events shall be deemed for all purposes to have occurred, simultaneously:

(i)    the effectiveness of the Pledge Agreement;

(ii)    the effectiveness of the Promissory Note;

28

(iii)    the effectiveness of the Amended Certificate of Incorporation and Amended By-Laws of Reorganized Leslie; and

(iv)    any Distributions required to be made on the Effective Date (or as soon thereafter as is reasonably practicable).

### 9.3.    The Asbestos PI Trust.

(a)    Creation of the Asbestos PI Trust. On the Effective Date, the Asbestos PI Trust shall be created in accordance with the Plan Documents, the Asbestos PI Trust Documents and section 524(g) of the Bankruptcy Code. The Asbestos PI Trust is intended to constitute a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code and the regulations issued thereunder. The purpose of the Asbestos PI Trust shall be to assume, Liquidate and, after the Trust Distribution Effective Date, resolve all liabilities determined to arise from, or relate to, the Asbestos PI Claims (whether existing as of the Effective Date or arising at any time thereafter) and, after the Trust Distribution Effective Date, to use the Asbestos PI Trust Assets to pay holders of Asbestos PI Claims in accordance with the terms of the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures, the Plan and the Confirmation Order, and in such a way as to provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, present Asbestos PI Claims and future Demands that involve similar claims in substantially the same manner, and to otherwise comply in all respects with the requirements of section 524(g)(2)(B) of the Bankruptcy Code. The Asbestos PI Trust shall have no liability for any Claim other than an Asbestos PI Claim, which shall be determined and, after the Trust Distribution Effective Date, paid in accordance with the terms, provisions and procedures of the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures. On the Effective Date, all right, title and interest in and to the Asbestos PI Trust Assets, and any proceeds thereof, will be transferred to, and vested in, the Asbestos PI Trust, free and clear of all Claims, Demands, Equity Interests, Encumbrances and other interests of any Entity without any further action of the Bankruptcy Court or any Entity, but subject to the remaining provisions of this Section 9.3.

(b)    Appointment of Asbestos PI Trustee. The initial Trustee of the Asbestos PI Trust shall be set forth in a Plan Supplement.

(c)    Appointment of Future Claimants' Representative. James L. Patton, Jr. shall serve as the Future Claimants' Representative.

(d)    Appointment of Asbestos PI Trust Advisory Committee Members. The initial members of the Asbestos PI Trust Advisory Committee shall be those persons designated in the Confirmation Order.

(e)    Claims Review. From and after the Effective Date, the Asbestos PI Trust may retain such third-party claims reviewers as the Asbestos PI Trustee and the Future Claimants' Representative deem appropriate to review and Liquidate (but not pay until the Trust Distribution Effective Date) all Asbestos PI Claims submitted to the Asbestos PI Trust in accordance with the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures.

29

(f)     Limitation on Incurrence of Costs Prior to Trust Distribution Effective Date. During the period on and after the Effective Date but prior to the Trust Distribution Effective Date, the Asbestos PI Trust shall not incur costs (defined broadly to include all obligations, including salaries, disbursements, expenses, and all other costs) in an aggregate total amount greater than $500,000.

(g)     Payment of Asbestos PI Claims. Prior to the Trust Distribution Effective Date, the Asbestos PI Trust shall not pay any Asbestos PI Claims. After the Trust Distribution Effective Date, the Asbestos PI Trust shall pay Asbestos PI Claims that have been determined to be payable pursuant to the provisions governing the Asbestos PI Trust.

(h)     Contributions to the Asbestos PI Trust. On the Effective Date, Reorganized Leslie and CIRCOR shall make the Leslie Contribution and the CIRCOR Asbestos PI Trust Contribution, respectively, to the Asbestos PI Trust.

(i)     Leslie Promissory Note. On the Effective Date, as part of the Leslie Contribution, Reorganized Leslie shall execute and deliver to the Asbestos PI Trust the Leslie Promissory Note. As security for the Leslie Promissory Note, on the Effective Date, CIRCOR shall execute and deliver to the Asbestos PI Trust the CIRCOR Pledge.

(j)     Transfer of Claims and Demands to the Asbestos PI Trust. On the Effective Date, all liabilities, obligations, and responsibilities relating to all Asbestos PI Claims and Demands shall be transferred and channeled to the Asbestos PI Trust and shall be satisfied solely by the assets held by the Asbestos PI Trust. The Asbestos PI Trust shall have no liability for any Claims other than Asbestos PI Claims, and no Claims other than Asbestos PI Claims shall be transferred and channeled to the Asbestos PI Trust.

(k)     Discharge of Liabilities to Holders of Asbestos PI Claims. The transfer to, vesting in, and assumption by the Asbestos PI Trust of the Asbestos PI Trust Assets, on or after the Effective Date, as contemplated by the Plan, and the occurrence of the Trust Distribution Effective Date shall, among other things, discharge all obligations and liabilities of all Asbestos Protected Parties for and in respect of all Asbestos PI Claims as of the Trust Distribution Effective Date.

(l)     Indemnification by the Asbestos PI Trust. As and to the extent provided in the Asbestos PI Trust Indemnification Agreement, the Asbestos PI Trust shall indemnify and hold harmless each of the following Entities for any liability, or alleged liability, arising out of, or resulting from, an Asbestos PI Claim: (i) Leslie and Reorganized Leslie; (ii) any CIRCOR Related Parties; (iii) any Watts Related Parties; and (iv) any current or former Representative of any of the above, in their capacities as such.

(m)     Investment Policy. Prior to the Trust Distribution Effective Date, except as otherwise authorized by prior written consent of each of the Asbestos PI Trustee, the Asbestos PI Trust Advisory Committee, the Future Claimants' Representative and CIRCOR, funds shall be invested in money market funds (a) the managers of which have a long term issuer rating of at least Aa3 or AA-, respectively, by Moody's Investor Services and Standard & Poor's, and (b) that invest exclusively in securities that (i) are issued by the United States Treasury or are

30

directly and fully guaranteed or insured by the United States Government or any agency or instrumentality thereof, (ii) have maturities of not more than three (3) years from the date of acquisition, and (iii) are rated Aaa and AAA, respectively, by Moody's Investor Services and Standard & Poor's. After the Trust Distribution Effective Date, investment of monies held in the Asbestos PI Trust shall be administered in the manner consistent with the standards set forth in the Uniform Prudent Investor Act drafted by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995, subject to such limitations and provisions as set forth in the Asbestos PI Trust Agreement.

(n)     Books and Records.  On the Effective Date, the Asbestos Records Cooperation Agreement shall become effective and the Asbestos Records shall be treated in accordance therewith.

(o)     Injunction.  Notwithstanding any other provision of the Plan or the Confirmation Order that might be construed to be to the contrary, the Asbestos PI Trust is hereby prohibited and permanently enjoined from seeking to recover (on its own behalf or on behalf of its beneficiaries) from any Settling Insurer any insurance coverage provided by the Settling Insurer that has been released by Leslie or by CIRCOR pursuant to a settlement agreement, including the settlement agreements listed in Exhibit F to the Plan.

(p)     Preservation of Insurance Claims.  The discharge, release, exculpation and indemnification of the Released Parties pursuant to the Plan shall neither diminish nor impair the enforceability of any Asbestos PI Insurance Contract.  The Asbestos PI Trust is, and shall be deemed to be for all purposes, including, but not limited to for purposes of insurance and indemnity, the successor to Leslie in respect of all Asbestos PI Claims.  An Asbestos PI Claim determined to be payable pursuant to the provisions governing the Asbestos PI Trust shall be, and shall be deemed to be a judgment against the Asbestos PI Trust (as successor for all purposes to the liabilities of Leslie in respect of Asbestos PI Claims) to be liquidated by the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures.

(q)     Failure of Trust Distribution Effective Date.  If the Confirmation Order is vacated, modified, or reversed after its affirmance or issuance by the District Court, then the Debtor, CIRCOR, Asbestos Claimants Committee and the Future Claimants' Representative shall negotiate in good faith to determine if they can agree upon a modified Plan acceptable to all such parties.  If the parties are unable to do so within 90 days from the date of such vacating, modification, or reversal of the Confirmation Order (which period may be extended by the agreement of the Debtor, CIRCOR, Asbestos Claimants Committee, and Future Claimants' Representative, filed with the Bankruptcy Court), then the following shall thereupon occur:

(i)     The Asbestos PI Trust shall immediately return the Leslie Promissory Note to Leslie;

(ii)     The Pledge Agreement shall be null and void;

(iii)     The Asbestos PI Trust shall immediately transfer all of its assets to CIRCOR, except for the Leslie Promissory Note which shall be returned to Leslie;

31

(iv)     All rights and interests relating to insurance previously transferred by the Debtor to the Asbestos PI Trust shall immediately and automatically revert to the Debtor; and

(v)     The Asbestos PI Trust shall immediately thereafter be dissolved and its determinations with respect to any Asbestos PI Claims shall be deemed void.

**9.4.     Amended Certificate of Incorporation and By-Laws.** The Amended Certificate of Incorporation and Amended By-Laws shall contain such provisions as are necessary to satisfy the provisions of the Plan and, to the extent necessary, to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code, subject to further amendment of the Amended Certificate of Incorporation and Amended By-Laws after the Effective Date as permitted by applicable law.  Except as otherwise provided herein, such Amended Certificate of Incorporation and Amended By-Laws shall contain indemnification provisions applicable to the officers and employees of Reorganized Leslie and such other Entities as may be deemed appropriate in the discretion of Reorganized Leslie and will provide for the authorization and/or issuance of the Reorganized Leslie Common Stock as identified in the Plan Supplement.

**9.5.     Reorganized Leslie Common Stock.** On the Effective Date, all of the issued and outstanding shares of common stock of Leslie shall become Reorganized Leslie Common Stock as of the Effective Date.

**9.6.     Corporate Governance of Reorganized Leslie.** On or after the Effective Date (i) the current directors of Leslie will serve on the Board of Directors of Reorganized Leslie, as identified in the Disclosure Statement with any further changes set forth in the Plan Supplement and (ii) the current officers of Leslie, as identified in the Disclosure Statement with any further changes set forth in the Plan Supplement, will serve as officers of Reorganized Leslie, subject to any applicable employment agreements.

**9.7.     Effectuating Documents; Further Transactions.** Any officer, member or manager of or director of Leslie or Reorganized Leslie, as the case may be, shall be, and hereby is, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Secretary of Leslie is hereby authorized to certify or attest to any of the foregoing, if necessary.

Leslie and Reorganized Leslie, and all other parties, including all holders of Claims entitled to receive Distributions under the Plan, shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, provided, that such documents and instruments are reasonably acceptable to such party or parties.

**9.8.    Treatment of each Settling Asbestos Insurance Entity.** Leslie shall recommend to the Bankruptcy Court that any such Asbestos Insurance Entity should be entitled to treatment under section 524(g) of the Bankruptcy Code, solely with respect to the policy or policies that are the subject of the Insurance Settlement Agreement, by identifying such Asbestos Insurance Entity as a Settling Asbestos Insurance Entity and setting forth the corresponding policies on Exhibit F to the Plan, as such exhibit may be amended by Leslie from time to time prior to the Confirmation Date.

## ARTICLE X.

## EFFECT OF CONFIRMATION

**10.1.    Vesting of Reorganized Leslie's Assets.** Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Plan Documents or the Confirmation Order, the property of the Estate of Leslie (except for the Leslie Contribution) shall vest in Reorganized Leslie on the Effective Date free and clear of any and all Liens, Claims, Encumbrances and other interests of any Entity. From and after the Effective Date, Reorganized Leslie may operate its business and may use, acquire, and dispose of property free of any restrictions imposed under the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Court. Without limiting the generality of the foregoing, Reorganized Leslie may, without application to, or approval by, the Bankruptcy Court, pay Professional fees and expenses that Reorganized Leslie incurs after the Effective Date.

**10.2.    Preservation of Certain Causes of Action; Defenses.** Except as provided in Section 10.6 below, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Leslie, as successor in interest to Leslie and its Estate, shall retain and may enforce any and all rights, Claims, and Causes of Action accruing to or that are property of Leslie or its Estate pursuant to the Bankruptcy Code or any statute or legal theory, including any Avoidance Action, any rights to, Claims or Causes of Action for recovery under any policies of insurance issued to or on behalf of Leslie but not including Asbestos Insurance Rights and Asbestos Insurance Actions, and any rights, Claims, and Causes of Action against third parties related to or arising out of Allowed Claims, and Reorganized Leslie shall retain and may enforce all defenses and counterclaims to all Claims asserted against Leslie or its Estate, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code. Reorganized Leslie may pursue such Claims, rights, or Causes of Action, as appropriate, in its sole and absolute discretion. Notwithstanding anything in Section 10.2 of the Plan to the contrary, neither Leslie nor Reorganized Leslie shall have any rights to pursue any Avoidance Actions or Derivative Liability Claims against any of the CIRCOR Related Parties or Watts Related Parties or any of their Representatives. Reorganized Leslie does not intend to pursue any Avoidance Actions.

Notwithstanding anything in this Section 10.2 to the contrary, but subject to Section 9.3 above, on the Effective Date all Claims, defenses, rights and Causes of Action of Leslie and Reorganized Leslie relating to Asbestos PI Claims, Asbestos Insurance Rights and Asbestos Insurance Actions, shall be transferred and assigned to the Asbestos PI Trust. Except as

33

otherwise provided in Section 10.2 of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Asbestos PI Trust shall retain and may enforce such Claims, defenses, rights and Causes of Action and shall retain and may enforce all defenses and counterclaims to all Claims or Demands asserted against the Asbestos PI Trust with respect to such Asbestos PI Claims, including, but not limited to, setoff, recoupment and any rights under section 502(d) of the Bankruptcy Code; provided, however, that no such defenses, Causes of Action, or counterclaims may be asserted against any Asbestos Protected Party.  The Asbestos PI Trust shall be deemed to be the appointed representative to, and may, pursue, litigate, compromise and settle any rights, Claims, or Causes of Action transferred to it, as appropriate, in accordance with its and its beneficiaries' best interests.

Nothing in this Section 10.2, however, shall be deemed to be a transfer by Leslie or Reorganized Leslie of any Claims, rights, Causes of Action, or defenses relating to assumed Executory Contracts or which otherwise are required by Reorganized Leslie to conduct its business in the ordinary course subsequent to the Effective Date.

**10.3.    Institution and Maintenance of Legal and Other Proceedings.**  From and after the Effective Date to the Trust Distribution Effective Date, the Asbestos PI Trust, shall be empowered and entitled to pursue, compromise or settle Leslie's or Reorganized Leslie's interests in any and all Asbestos Insurance Actions.  From and after the Trust Distribution Effective Date, the Asbestos PI Trust shall be empowered and entitled, in its sole and absolute discretion, to pursue, compromise or settle Leslie's or Reorganized Leslie's interests in any and all Asbestos Insurance Actions.  The duties, obligations and liabilities of any Asbestos Insurance Entity under all insurance policies, including, but not limited to, the Asbestos PI Insurance Contracts, all Insurance Settlement Agreements, and all other settlement agreements are not enlarged or diminished, reduced or eliminated by any aspect of the Chapter 11 Case, provided, that all Asbestos PI Insurer Coverage Defenses are preserved in accordance with Section 10.4 of the Plan.

**10.4.    Insurance Neutrality.**  Notwithstanding anything to the contrary in the Confirmation Order or the Plan, but subject to the proviso below, nothing in the Confirmation Order or the Plan (including any other provision that purports to be preemptory or supervening) shall in any way operate to impair, or have the effect of impairing, the insurers' legal, equitable or contractual rights, if any, in any respect. The rights of the insurers shall be determined under the insurance contracts, applicable law or insurance settlement agreements, as applicable; provided, however, that nothing in this Section 10.4 shall preclude the entry or effectiveness of the Asbestos PI Channeling Injunction or shall affect or limit, or be construed as affecting or limiting, the protections afforded to the Asbestos Protected Parties under the Asbestos PI Channeling Injunction, or shall affect or limit, or be construed as affecting or limiting, the releases, covenants and/or agreements in the Asbestos PI Trust Agreement (or any releases granted in connection therewith).

**10.5.    Terms of Injunction and Automatic Stay.**  All of the injunctions and/or stays in existence immediately prior to the Confirmation Date provided for in or in connection with the Chapter 11 Case, whether pursuant to section 105, 362, or any other

34

provision of the Bankruptcy Code, the Bankruptcy Rules or other applicable law, including, but not limited to, the injunction provided for by the Preliminary Injunction Order shall remain in full force and effect until the injunctions set forth in the Plan become effective pursuant to a Final Order, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, Reorganized Leslie may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

Each of the injunctions contained in the Plan or the Confirmation Order shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by the Plan or the Confirmation Order.  All actions of the type or nature of those to be enjoined by such injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

**10.6.    No Liability for Certain Released Claims.**  Neither Leslie, Reorganized Leslie, the other Asbestos Protected Parties, nor the Asbestos PI Trust (except, as it relates to the Asbestos PI Trust, with respect to the Asbestos PI Claims) does, or shall be deemed to, assume, agree to perform, pay, or indemnify creditors for any liabilities or obligations of Leslie relating to or arising out of the operations of, or assets of, Leslie whether arising prior to or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date.  Neither Reorganized Leslie, nor the Asbestos PI Trust shall be liable for any Derivative Liability Claim, except that Reorganized Leslie and the Asbestos PI Trust shall assume their respective obligations specified in the Plan and the Confirmation Order.

Effective automatically on the Trust Distribution Effective Date, the Asbestos Protected Parties and their respective Representatives shall unconditionally and irrevocably be fully released from any and all Derivative Liability Asbestos PI Claims.

**10.7.    Title to Asbestos PI Trust Assets.**  On the Effective Date, title to all of the Asbestos PI Trust Assets shall vest in the Asbestos PI Trust free and clear of all Claims, Equity Interests, Encumbrances and other interests of any Entity, subject to the provisions of Sections 9.3 and 10.3 above.  The Asbestos PI Trust shall be empowered and entitled to process and, after the Trust Distribution Effective Date, pay Asbestos PI Claims in accordance with the Asbestos PI Trust Distribution Procedures and the Asbestos PI Trust Agreement.

**10.8.    Dissolution of Official Committees; Continuation of Future Claimants' Representative; Creation of the Asbestos PI Trust Advisory Committee.** Effective on the Effective Date, any committee appointed in the Chapter 11 Case shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except with respect to applications for compensation by Professionals or reimbursement of expenses incurred as a member of an official committee and any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order or pending appeals of any other order entered in the Chapter 11 Case.

As provided in Section 9.3(d) above, the Confirmation Order shall provide for the appointment of the Asbestos PI Trust Advisory Committee effective as of the Effective Date. The Confirmation Order shall also provide that, from and after the Effective Date, the Future Claimants' Representative shall continue to serve as provided in the Plan and the Asbestos PI Trust Agreement, to perform the functions specified and required therein. The Future Claimants' Representative also may, at his option, participate in any: (a) appeal of the Confirmation Order; (b) hearing on a claim for compensation or reimbursement of a Professional; or (c) adversary proceeding pending on the Effective Date in which the Future Claimants' Representative is a party.

Upon termination of the Asbestos PI Trust: (a) the members of the Asbestos PI Trust Advisory Committee and the Future Claimants' Representative shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Case; and (b) the Asbestos PI Trust Advisory Committee shall be deemed dissolved and the Future Claimants' Representative's employment shall be deemed terminated.

All reasonable and necessary post-Effective Date fees and expenses of the professionals retained by the Asbestos PI Trust Advisory Committee and the Future Claimants' Representative shall be paid exclusively by the Asbestos PI Trust in accordance with the terms of the Asbestos PI Trust Agreement, and Reorganized Leslie shall not be liable for any such fees and expenses. The parties shall attempt to resolve any dispute regarding the payment of such fees and expenses in good faith, and if they shall fail to resolve such dispute, they shall submit the dispute to the Bankruptcy Court for resolution.

## ARTICLE XI.

## RELEASES, INJUNCTIONS AND WAIVERS OF CLAIMS

**11.1.    Discharge.**  Except as specifically provided for in Sections 4.1, 4.2, 4.3 and 11.10 of the Plan, pursuant to section 1141(d)(1)(A) of the Bankruptcy Code, confirmation of the Plan shall discharge Leslie and Reorganized Leslie from any and all Claims of any nature whatsoever, including, without limitation, all Claims and liabilities that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, whether or not: (a) a Proof of Claim based on such Claim was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any Schedules of Leslie; (b) such Claim is or was allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has voted on or accepted the Plan. Except as specifically provided for in Sections 4.1, 4.2, 4.3 and 11.8 of the Plan, as of the Effective Date the rights provided in the Plan shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims against Leslie or Reorganized Leslie or any of their respective assets and properties.

**11.2.    Injunction.**  Except as specifically provided for in Sections 4.1, 4.2, 4.3 and 11.10 of the Plan, all persons or Entities who have held, hold or may hold Claims or Demands are permanently enjoined, from and after the Effective Date,

36

from: (a) commencing or continuing in any manner any action or other proceeding of any kind against Reorganized Leslie with respect to such Claim or Demand; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against Reorganized Leslie with respect to such Claim or Demand; (c) creating, perfecting, or enforcing any Encumbrance of any kind against Reorganized Leslie or against the property or interests in property of Reorganized Leslie with respect to such Claim or Demand; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to Reorganized Leslie or against the property or interests in property of Reorganized Leslie, with respect to such Claim or Demand; and (e) pursuing any Claim or Demand released pursuant to this Article XI of the Plan.

11.3.    **Exculpation.**  None of the Released Parties shall have or incur any liability to any holder of a Claim or Equity Interest, including, without limitation, the Asbestos PI Claims, for any act or omission in connection with, related to, or arising out of: (a) the Chapter 11 Case; (b) pursuit of confirmation of the Plan; (c) consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan or the Asbestos PI Trust Distribution Procedures; (d) the Plan; or (e) the negotiation, formulation and preparation of the Plan, the Plan Documents, and any of the terms and/or settlements and compromises reflected in the Plan and the Plan Documents, except for willful misconduct or gross negligence as determined by a Final Order, and, in all respects, Leslie, Reorganized Leslie, and each of the other Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and the Plan Documents.

11.4.    **Release by Debtor Released Parties of Released Parties.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtor, Reorganized Leslie, any other Debtor Released Party and any Entity seeking to exercise the rights of the Estate, in each case, whether individually or collectively, including, without limitation, any successor to the Debtor or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall be deemed to forever release, waive and discharge the Released Parties of all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which the Debtor, any other Debtor Released Parties of the Estate are entitled to assert including, without limitation, any Derivative Liability Asbestos PI Claims and Derivative Liability Claims asserted on behalf of the Debtor, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the conduct of the Debtor's business, the Chapter 11 Case, this Plan or Reorganized Leslie (other than the rights under this Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained herein is intended to operate as a release of any potential claims based upon gross negligence

37

or willful misconduct.  Notwithstanding anything contained in this Section 11.4, nothing contained in this Plan shall discharge or release any Claim of or Demand by any of the Released Parties, the Asbestos PI Trust or any holder of an Asbestos PI Claim against any Asbestos Insurance Entity.

     11.5.    **Release by Non-Debtor Released Parties of Released Parties.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Non-Debtor Released Parties shall be deemed to forever release, waive and discharge the Released Parties and the Asbestos PI Trust of and from all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities which the Non-Debtor Released Parties are entitled to assert, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the conduct of the Debtor's business, the Chapter 11 Case, this Plan or Reorganized Leslie (other than the rights under this Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder); provided, however, that nothing contained herein is intended to operate as a release of any potential claims based upon gross negligence or willful misconduct. Notwithstanding anything contained in this Section 11.5, nothing contained in this Plan shall discharge or release any Claim of or Demand by any of the Released Parties, the Asbestos PI Trust or any holder of an Asbestos PI Claim against any Asbestos Insurance Entity.  Notwithstanding anything contained in this Section 11.5, or elsewhere in this Plan (including but not limited to in Sections 9.3(j), 10.6, 11.3 and 11.7) or the Plan Documents, nothing contained in this Plan or the Plan Documents shall discharge, release, impair, enjoin, or prejudice in any way any claim, rights, or demands that any of the Watts Related Parties have asserted or may assert under (1) the Distribution Agreement dated as of October 1, 1999 by and between Watts Industries, Inc. and CIRCOR or (2) any insurance policy or contract providing coverage to any or all of the Watts Related Parties.

     11.6.    **Release by Holders of Claims and Equity Interests.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim or Demand against, or Equity Interest in, Leslie, who receives a Distribution pursuant to the Plan shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities whatsoever against the Released Parties whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, or occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Estate, the conduct of the Debtor's business, the Chapter 11 Case, this Plan or Reorganized Leslie (other than the rights under this Plan, the Plan Documents, and the contracts, instruments, releases and other agreements or documents delivered or to be delivered hereunder), including, for the

38

avoidance of doubt, any and all Causes of Action that the holder of an Asbestos PI Claim, the Asbestos PI Trust or the Future Claimants Representative did commence or could have commenced against any officer or director of Leslie (serving in such capacity) that is based upon or arising from any acts or omissions of such officer or director occurring prior to the Effective Date on account of such Asbestos PI Claim, to the fullest extent permitted under section 524(e) of the Bankruptcy Code and applicable law (as now in effect or subsequently extended); provided, however, that nothing contained herein is intended to operate as a release of (a) any potential claims based upon gross negligence or willful misconduct or (b) any claim by any federal, state or local authority under the Internal Revenue Code or other tax regulation or any applicable environmental or criminal laws.

      **11.7.    Asbestos PI Channeling Injunction.**  Pursuant to the Confirmation Order and section 524(g) of the Bankruptcy Code, and subject to Section 11.8 below, the sole recourse of any holder of an Asbestos PI Claim on account of such Asbestos PI Claim shall be against the Asbestos PI Trust.  Each such holder shall be and is enjoined from taking legal action directed against Leslie, Reorganized Leslie, any of the CIRCOR Related Parties or Watts Related Parties, or any other Asbestos Protected Party, or their respective property, for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery relating to such Asbestos PI Claim.

      **11.8.    Limitations of Injunctions.**  The releases set forth in the Plan and the injunction set forth in Section 11.7 above shall not enjoin:

            **(a)**    the rights of Entities to the treatment accorded to them under Articles III and IV above, as applicable, including the rights of Entities with Asbestos PI Claims to assert such Claims or Demands against the Asbestos PI Trust in accordance with the Asbestos PI Trust Distribution Procedures; and

            **(b)**    the rights of Entities to assert any Claim, debt, obligation, or liability for payment of Asbestos PI Trust Expenses against the Asbestos PI Trust.

      **11.9.    Releases and Indemnification by Leslie.**  As of the Effective Date, Leslie and Reorganized Leslie hereby release and are permanently enjoined from prosecuting or attempting to prosecute any Derivative Liability Claims and any and all Causes of Action against the Released Parties that Leslie or Reorganized Leslie have, may have or claim to have, now or in the future, that are property of, assertable on behalf of, or derivative of Leslie.  Reorganized Leslie also will indemnify, release and hold harmless each of the CIRCOR Related Parties and the Watts Related Parties pursuant to the provisions of, and to the extent set forth in, the Plan.

      **11.10.    Indemnification and Reimbursement Obligations.**  For purposes of the Plan, the obligations of Leslie to indemnify and reimburse persons who are or were directors, officers, or employees of Leslie on the Commencement Date or at any time thereafter against and for any obligations as provided in Leslie's certificate

39

of incorporation, by-laws, applicable state law, or other agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Commencement Date. Such obligations shall be assumed by Reorganized Leslie on the Effective Date. In furtherance of the foregoing, Reorganized Leslie shall use its commercially reasonable efforts to maintain or procure insurance for the benefit of such directors, officers, or employees at levels satisfactory to Reorganized Leslie and the Asbestos PI Trust.

11.11. **Asbestos Insurance Entity Injunction.** Notwithstanding anything to the contrary elsewhere in the Plan, all Entities except the Asbestos PI Trust, Leslie, or Reorganized Leslie that have held or asserted, that hold or assert, or that may in the future hold or assert any Cause of Action, including but not limited to any Insurer Contribution Claim, against any Settling Insurer, based on, relating to, arising out of, or in any way connected with any Asbestos PI Claim, Asbestos Insurance Right, Asbestos PI Insurance Contract, or Insurance Settlement Agreement whenever or wherever arisen or asserted (including all Claims in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty) shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim, Demand, or Cause of Action, including: (a) commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, Demand, or Cause of Action against any Settling Insurer, or against the property of any Asbestos Insurance Entity, with respect to any such Cause of Action; (b) enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Settling Insurer, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or Cause of Action; (c) creating, perfecting, or enforcing, in any manner, directly or indirectly, any Encumbrance against any Asbestos Insurance Entity, or the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or Cause of Action; and (d) asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any obligation of any Settling Insurer, or against the property of any Asbestos Insurance Entity, with respect to any such Claim, Demand, or Cause of Action. The Asbestos PI Trust shall have the sole and exclusive authority at any time to terminate, reduce, or limit the scope of, the Asbestos Insurance Entity Injunction. The Asbestos Insurance Entity Injunction is issued solely for the benefit of the Asbestos PI Trust and is not issued for the benefit of any Asbestos Insurance Entity, and no Asbestos Insurance Entity is a third-party beneficiary of the Asbestos Insurance Entity Injunction.

**11.12. Reduction of Insurance Judgments.** Any right or Cause of Action that an Asbestos Insurance Entity may have under applicable non-bankruptcy law against any other Asbestos Insurance Entity (but for the Asbestos Insurance Entity Injunction), shall be channeled to and become a right or Cause of Action solely as an offset claim against the Asbestos PI Trust and not against the other Asbestos Insurance Entity in question. Any such right or Cause of Action to which an Asbestos Insurance Entity may be entitled, if any, shall be solely a setoff against any recovery of the Asbestos PI Trust from that Asbestos Insurance Entity and under no circumstances shall that Asbestos Insurance Entity receive an affirmative recovery of funds from the Asbestos PI Trust or any other Asbestos Insurance Entity for such right or Cause of Action. Any setoff in favor of an Asbestos Insurance Entity shall not constitute a classified or unclassified Claim or Demand under the Plan and shall not be subject to or impaired by the Plan, except as provided in this Section. Instead, any such setoff shall be determined, calculated, and applied solely as a matter of applicable non-bankruptcy law without regard to the Plan, (except as provided in this Section) or any bankruptcy law or decision.

## ARTICLE XII.

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**12.1.    Conditions Precedent to Confirmation of the Plan.** The following are conditions precedent to confirmation of the Plan that must be satisfied, unless waived in accordance with Section 12.3 below:

**(a)**    The Confirmation Order shall be acceptable in form and substance to Leslie and CIRCOR, after consultation with the Asbestos Claimants Committee and the Future Claimants' Representative.

**(b)**    At least two-thirds (2/3) in amount and seventy-five percent (75%) in number of those holders of Class 4 Asbestos PI Claims actually voting on the Plan shall have voted to accept the Plan.

**(c)**    The Confirmation Order shall, among other things:

(i)    order that the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(ii)    provide that, except with respect to obligations specifically preserved in the Plan, including without limitation, Section 11.10 above, Leslie is discharged effective on the Effective Date (in accordance with the Plan) from any Claims and Demands, and Leslie's liability in respect thereof, whether reduced to judgment or contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, that arose from any agreement of Leslie entered into or obligation of Leslie incurred before the Effective Date, or from any

41

conduct of Leslie prior to the Effective Date, or whether such interest accrued before or after the Commencement Date, is extinguished completely;

        (iii)     provide for the Asbestos PI Channeling Injunction;

        (iv)     provide that, as part of the Leslie Contribution to the Asbestos PI Trust, Leslie or Reorganized Leslie is obligated to assign (or cause to be assigned) the Asbestos Insurance Rights and the Asbestos Insurance Actions.

        (v)     provide that, as part of the Leslie Contribution to the Asbestos PI Trust, Leslie is obligated to contribute the Leslie Promissory Note on the Effective Date;

        (vi)     provide that, as the CIRCOR Asbestos PI Trust Contribution to the Asbestos PI Trust, CIRCOR is obligated to contribute (or cause to be contributed) the CIRCOR Cash and the CIRCOR Pledge on the Effective Date;

        (vii)     provide that Reorganized Leslie and the Asbestos PI Trust shall execute the Promissory Note;

        (viii)    provide that the Asbestos PI Trust, CIRCOR and Reorganized Leslie shall enter into the Pledge Agreement;

        (ix)     provide that CIRCOR shall retain its Equity Interests which shall become Reorganized Leslie Common Stock as of the Effective Date;

        (x)     provide that, subject to the limitations expressly set forth in Section 10.4 above all transfers of assets of Leslie contemplated under the Plan shall be free and clear of all Claims and Encumbrances against or on such assets;

        (xi)     authorize the implementation of the Plan in accordance with its terms and provide that, on the Effective Date, all of the transactions listed in Section 9.2 shall have occurred, as set forth therein;

        (xii)    provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city or other municipality transfer taxes, mortgage recording taxes and any other stamp or similar tax;

        (xiii)    approve in all respects the other settlements, transactions and agreements to be effected pursuant to the Plan, including, without limitation, the Asbestos PI Trust Agreement, the Asbestos PI Trust Distribution Procedures, the Leslie Promissory Note, the Pledge Agreement, the Asbestos PI Trust Indemnification Agreement and the other Asbestos PI Trust Documents, and the release of CIRCOR Related Parties and Watts Related Parties with respect to Derivative Liability Asbestos PI Claims in exchange for the CIRCOR Asbestos PI Trust Contribution;

(xiv)    provide that all Executory Contracts assumed or assumed and assigned by Leslie during the Chapter 11 Case or under the Plan shall remain in full force and effect for the benefit of Reorganized Leslie or the assignee thereof notwithstanding any provision in such contract or lease (including those provisions described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease;

(xv)    provide that the transfers of property by Leslie (except for the Leslie Contribution) to Reorganized Leslie (A) are or will be legal, valid, and effective transfers of property; (B) vest or will vest Reorganized Leslie with good title to such property, except as expressly provided in Section 10.2 of the Plan; (C) do not and will not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (D) do not and will not subject Reorganized Leslie to any liability by reason of such transfer under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, any laws affecting or effecting successor or transferee liability; and

(xvi)    provide that any attorney-client, work product or other privilege that applies to the Asbestos Records shall be subject to the terms of the Asbestos Records Cooperation Agreement.

(d)    in addition to the foregoing, the Confirmation Order shall contain the following findings of fact and conclusions of law, among others:

(i)    The Asbestos PI Channeling Injunction is to be implemented in accordance with the Plan and the Asbestos PI Trust;

(ii)    The Plan does not provide for the liquidation of all or substantially all of the property of Leslie, that Reorganized Leslie will continue in business as an ongoing reorganized debtor, and that confirmation of the Plan is not likely to be followed by the liquidation of Reorganized Leslie or the need for further financial reorganization;

(iii)    The Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, those requiring that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(iv)    As of the Commencement Date, Leslie had been named as a defendant in personal injury and wrongful death actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(v)    The Asbestos PI Trust is to be funded by the Leslie Contribution and the CIRCOR Asbestos PI Trust Contribution;

(vi)    The Asbestos PI Trust, on the Effective Date, by the exercise of contingent rights granted under the Plan, and pursuant to the Leslie Promissory Note and the Pledge Agreement, would be entitled to own the majority of

43

Reorganized Leslie Common Stock in accordance with the terms of the Pledge
Agreement;

(vii)    The Asbestos PI Trust is to use its assets and income to pay
Asbestos PI Claims;

(viii)    Leslie is likely to be subject to substantial future Demands
for payment arising out of the same or similar conduct or events that gave rise to the
Asbestos PI Claims, and all such Demands are subject to the Asbestos PI Channeling
Injunction;

(ix)    The actual amounts, numbers, and timing of Demands
cannot be determined;

(x)    Pursuit of Demands outside the procedures prescribed by
the Plan and the Asbestos PI Trust Distribution Procedures is likely to threaten the Plan's
purpose to deal equitably with Asbestos PI Claims;

(xi)    The terms of the Asbestos PI Channeling Injunction,
including any provisions barring actions against third parties, are set forth in the Plan and
the Disclosure Statement;

(xii)    The Plan separately classifies Class 4 Asbestos PI Claims,
and at least two-thirds (2/3) in amount and seventy-five percent (75%) of the members in
such Class that voted on the Plan have voted to accept the Plan;

(xiii)    Pursuant to: (A) the Asbestos PI Trust Distribution
Procedures; (B) court order; or (C) otherwise, the Asbestos PI Trust will operate through
mechanisms such as structured, periodic, or supplemental payments, pro rata
distributions, matrices, or periodic review of estimates of the numbers and values of
Asbestos PI Claims or other comparable mechanisms, that provide reasonable assurance
that the Asbestos PI Trust will value, and be in a financial position to pay, similar
Asbestos PI Claims in substantially the same manner;

(xiv)    The Asbestos PI Trust will make payments to Asbestos PI
Claims pursuant to the Asbestos PI Trust Distribution Procedures as funds become
available and as Asbestos PI Claims are liquidated, while maintaining sufficient resources
to pay future valid Asbestos PI Claims on a substantially equivalent basis;

(xv)    The Future Claimants' Representative was appointed by the
Bankruptcy Court pursuant to section 524(g) of the Bankruptcy Code as part of the
proceedings leading to the issuance of the Asbestos PI Channeling Injunction for the
purpose of protecting the interests of Future Demand Holders who do not currently hold
asbestos-related Claims arising out of the conduct or products of Leslie;

(xvi)    In light of the benefits provided, or to be provided, to the
Asbestos PI Trust and/or Reorganized Leslie by or on behalf of each current and future

44

Asbestos Protected Party, the Asbestos PI Channeling Injunction is fair and equitable to all creditors and Future Demand Holders;

(xvii) The Plan and its acceptance otherwise comply with sections 524(g) and 1126 of the Bankruptcy Code, and confirmation of the Plan is in the best interests of all creditors;

(xviii) The Asbestos PI Trust will have the sole and exclusive authority as of the Effective Date to satisfy or defend against all Asbestos PI Claims;

(xix) The duties, obligations and liabilities of any Asbestos Insurance Entity under all insurance policies, all Insurance Settlement Agreements, and all other settlement agreements, are not enlarged or diminished, reduced or eliminated by any aspect of this Chapter 11 Case; provided, however, that all Asbestos PI Insurer Coverage Defenses are preserved in accordance with Section 10.4 above;

(xx) The Asbestos PI Channeling Injunction is essential to the Plan and Leslie's reorganization efforts;

(xxi) The CIRCOR Asbestos PI Trust Contribution constitutes substantial assets of the Plan and the reorganization, is essential to the feasibility of the Plan and the successful reorganization of the Debtor; and constitutes a sufficient basis upon which to provide the CIRCOR Related Parties and the Watts Related Parties with the protections afforded to them under the Plan, Plan Documents and Confirmation Order;

(xxii) The release received by the CIRCOR Related Parties and the Watts Related Parties in exchange for the CIRCOR Asbestos PI Trust Contribution is essential to the global settlement of Asbestos PI Claims arising from the conduct or products of Leslie reflected in this Plan;

(xxiii) The terms and conditions of the Leslie Promissory Note, the Pledge Agreement and any related documents are essential to the success and feasibility of the Plan. All such documents shall constitute legal, valid, binding and authorized obligations of the parties obligated thereunder, enforceable in accordance with their terms. On the Effective Date, all of the liens and security interests granted in accordance with such documents shall be deemed approved and shall be legal, valid, binding and enforceable liens on the collateral in accordance with the terms of each agreement; and

(xxiv) Reorganized Leslie and the Asbestos PI Trust to be established pursuant to the Plan, are valid legal Entities separate and distinct from one another and each of Reorganized Leslie and the Asbestos PI Trust are not and may not in the future be held liable for any liability of the other entities based upon any legal or equitable theory, including those consisting of or relating to veil piercing, alter ego, successor liability, fraudulent transfer, or conspiracy, including but not limited to fraudulent transfer or fraudulent conveyance claims under applicable state or federal law.

45

**12.2.   Conditions Precedent to the Effective Date of the Plan.** The following are conditions precedent to occurrence of the Effective Date of the Plan that must be satisfied, unless waived in accordance with Section 12.4 below:

(a)   The Confirmation Order, in form and substance acceptable to Leslie and CIRCOR, after consultation with the Asbestos Claimants Committee and the Future Claimants' Representative, shall have been entered by the Bankruptcy Court and accepted and affirmed by the District Court or issued by the District Court;

(b)   The Asbestos PI Channeling Injunction shall be in full force and effect;

(c)   All authorization, consents and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained;

(d)   All Plan Documents shall have been executed and delivered; and

(e)   All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

**12.3.   Conditions Precedent to the Trust Distribution Effective Date.** The following are conditions precedent to occurrence of the Trust Distribution Effective Date that must be satisfied, unless waived in accordance with Section 12.4 below:

(a)   All of the conditions set forth in Section 12.2 above have been and still are satisfied; and

(b)   The Confirmation Order, as entered by the Bankruptcy Court and accepted and confirmed by the District Court or issued by the District Court, has become a Final Order without modification.

**12.4.   Waiver of Conditions Precedent.** To the fullest extent permitted by law, any of the conditions precedent set forth in Sections 12.1, 12.2 and 12.3 above may be waived or modified, in whole or in part, by Leslie, after consultation with and written consent by CIRCOR, the Future Claimants' Representative, and the Asbestos Claimants Committee. Any such waiver or modification may be effected at any time without leave or order of the Bankruptcy Court or District Court, and without any other formal action.

**12.5.   Effect of Failure of the Effective Date of the Plan.** In the event that Leslie determines it is appropriate, after consultation with and consent by CIRCOR, the Future Claimants' Representative and the Asbestos Claimants Committee, prior to the Effective Date, upon notification submitted by Leslie to the Bankruptcy Court: (A) the Confirmation Order shall be vacated; (B) no Distributions under the Plan shall be made; and (C) Leslie and all holders of Claims against and Equity Interests in Leslie shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred. If the Confirmation Order is vacated pursuant to this Section 12.5, nothing contained in the Plan shall: (A) constitute or be deemed a waiver or release of any Claims or Equity Interests by, against, or in Leslie or

46

any other Entity; or (B) prejudice in any manner the rights of Leslie or any other Entity in the Chapter 11 Case or any other or further proceedings involving Leslie.

## ARTICLE XIII.

## JURISDICTION OF BANKRUPTCY COURT

**13.1.    Retention of Jurisdiction.**    Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall, to the fullest extent permitted by law, retain and have exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Case and the Plan, including, among other things, jurisdiction to:

**(a)**    hear and determine any and all objections to and proceedings involving the allowance, estimation, classification, and subordination of Claims that have been or properly should have been brought in the Bankruptcy Court (other than Asbestos PI Claims) or Equity Interests;

**(b)**    hear and determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Asbestos PI Trust after the Effective Date, including any proceedings with respect to any Avoidance Actions (except to the extent that any such Avoidance Actions has been released under the Plan or the Confirmation Order) or otherwise to recover assets for the benefit of the Estate or the Asbestos PI Trust;

**(c)**    hear and determine all objections to the termination of the Asbestos PI Trust;

**(d)**    hear and determine such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, or the Asbestos PI Trust Agreement;

**(e)**    hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos PI Channeling Injunction;

**(f)**    hear and determine any conflict or other issues that may arise in the Chapter 11 Case and the administration of the Asbestos PI Trust;

**(g)**    enter such orders as are necessary to implement and enforce the injunctions described herein, including, if necessary, in connection with application of the protections afforded by section 524(g) of the Bankruptcy Code to the Asbestos Protected Parties;

**(h)**    hear and determine any and all applications pursuant to section 330 or 503 of the Bankruptcy Code for allowance of any compensation for Professional services rendered and reimbursement of expenses incurred in connection therewith any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

**(i)**    enter such orders authorizing non-material modifications to the Plan as may be necessary to comply with section 468B of the Internal Revenue Code;

(j)        hear and determine any applications pending on the Effective Date for the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts to which Leslie is a party, and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom;

(k)        hear and determine any and all applications, Claims, causes of action, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or commenced by Reorganized Leslie or any other party in interest subsequent to the Effective Date;

(l)        consider any technical modifications of the Plan, and remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order, to the extent authorized by the Bankruptcy Code; provided, that there shall be no modification made at any time that would reduce or eliminate any of the protections provided herein to the Asbestos Protected Parties or releases provided with respect to the Derivative Liability Asbestos PI Claims;

(m)        issue orders in aid of confirmation, consummation and execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code, including but not limited to compelling the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(n)        hear and determine any proposed compromise and settlement of any Claim against or cause of action by or against Leslie that has been or properly should have been brought in the Bankruptcy Court;

(o)        hear and determine any timely objections to Administrative Expense Claims asserted or to Proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to Allow or Disallow any Disputed Claim, in whole or in part;

(p)        hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(q)        hear and determine such other matters as may be set forth in the Confirmation Order or other orders of the Bankruptcy Court, or which may arise in connection with the Plan, the Confirmation Order, or the Effective Date, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r)        hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder, including, but not limited to, performance of Leslie's duties under the Plan;

(s)        enforce remedies upon any default under the Plan;

(t)        hear and determine any other matter not inconsistent with the Bankruptcy Code;

46392/0001-6454424v16

(u)    hear and determine any claim that in any way challenges or is related to any provision in the Confirmation Order, including, without limitation, the provision of the Confirmation Order set forth in Section 12.1(d)(xxi); and

(v)    enter a final decree closing the Chapter 11 Case.

If and to the extent that the Bankruptcy Court is not permitted under applicable law to exercise jurisdiction over any of the matters specified above, the reference to the "Bankruptcy Court" in the preamble to this Section 13.1 shall be deemed to be a reference to the "District Court." Notwithstanding the terms of this Section 13.1, the Bankruptcy Court shall retain continuing but not exclusive jurisdiction over Asbestos Insurance Actions; provided, however, that this Section 13.1 shall not confer or grant jurisdiction to the Bankruptcy Court when the Asbestos Insurance Action is governed by an otherwise applicable arbitration provision. Notwithstanding anything in this Section 13.1 to the contrary, the Asbestos PI Trust Agreement and the Asbestos PI Trust Distribution Procedures shall govern the satisfaction of Asbestos PI Claims and the forum in which Asbestos PI Claims shall be determined.

**13.2.    Modification of Plan.** Leslie, with the consent of CIRCOR, any official committee, the Asbestos Claimants Committee, and the Future Claimants' Representative, may alter, amend, or modify the Plan or any Schedules or Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended Schedules or Exhibits in the Plan or the Plan Supplement, provided, that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and Leslie shall have complied with section 1125 of the Bankruptcy Code, to the extent necessary. Further, Leslie, with the consent of CIRCOR, any official committee, the Asbestos Claimants Committee, and the Future Claimants Representative may alter, amend, or modify the Plan or any Schedules or Exhibits thereto at any time after entry of the Confirmation Order and before the Plan's substantial consummation, provided, that: (a) the Plan, as modified, altered, or amended, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and finds that the circumstances warrant such modification. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the Bankruptcy Court, if any, such holder changes its previous acceptance or rejection.

Notwithstanding anything in this Section 13.2, there shall be no modification to the Plan made at any time that would reduce or eliminate any of the protections provided herein to the Asbestos Protected Parties or releases provided with respect to the Derivative Liability Asbestos PI Claims or (ii) any of the contributions to the Asbestos PI Trust.

**13.3.    Compromises of Controversies.** From and after the Effective Date Reorganized Leslie shall be authorized to compromise controversies not involving the Asbestos PI Trust, or Asbestos PI Claims, on such terms as Reorganized Leslie may determine, in its sole discretion, to be appropriate.

49

**13.4.    Revocation or Withdrawal of the Plan.**  Leslie reserves the right to revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If Leslie revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be null and void in all respects; any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Equity Interest or Class of Claims or Equity Interests), any assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall: (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, Leslie or any other Entity, (b) prejudice in any manner the rights of Leslie or any Entity in any further proceedings involving Leslie; or (c) constitute an admission of any sort by Leslie or any other Entity.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

**14.1.    Governing Law.**  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or a Schedule or Exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, the rights, duties and obligations arising under the Plan, and the instruments agreements and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware without giving effect to the principles of conflicts of law thereof.

**14.2.    Administrative Expense Claims Bar Date.**  All Administrative Expense Requests must be made by application filed with the Bankruptcy Court and served on counsel for the Debtor no later than the Administrative Expense Claims Bar Date.  In the event that the Debtor or Reorganized Debtor objects to an Administrative Expense Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expense Claim.  Notwithstanding the foregoing, (a) no application seeking payment of an Administrative Expense Claim need be filed with respect to an undisputed post-petition obligation which was paid or is payable by the Debtor in the ordinary course of business; provided, however, that in no event shall a post-petition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, obligations arising from personal injury, property damage, products liability, consumer complaints, employment law (excluding claims arising under workers' compensation law), secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business; and (b) no application seeking payment of an Administrative Expense Claim need be filed with respect to Cure owing under an executory contract or unexpired lease if the amount of Cure is fixed by order of the Bankruptcy Court.

**14.3.    Notices.**  To be effective, all notices, requests and demands to or upon Leslie, or, as applicable, upon CIRCOR, the Future Claimants' Representative and the

Asbestos Claimants Committee, shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, and addressed as follows:If to Leslie:

Leslie Controls, Inc.
c/o Tom Warner
12501 Telecom Drive
Tampa, FL 33637-0906

with a copy (which alone will not constitute notice) to:

Norman L. Pernick, Esq.
Marion M. Quirk, Esq.
Cole, Schotz, Meisel, Forman & Leonard, P.A.
500 Delaware Avenue, 1410
Wilmington, DE 19801

If to CIRCOR or its Affiliates:

CIRCOR International, Inc.
c/o Alan Glass
25 Corporate Drive, Suite 130
Burlington, MA 01803

With a copy to (which alone will not constitute notice) to:

William R. Hanlon, Esq.
Richard M. Wyner, Esq.
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, DC 20001

If to the Future Claimants' Representative

James L. Patton, Jr., Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801

with a copy (which alone will not constitute notice) to:

Edwin J. Harron, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 West Street, 17th Floor
Wilmington, DE  19801

46392/0001-6454424v16

If to the Asbestos Claimants Committee:

Natalie D. Ramsey, Esq.
Montgomery, McCracken, Walker & Rhoads LLP
1105 North Market Street
15th Floor
Wilmington, DE  19801

**14.4.    Plan Supplement.**  Any and all Exhibits, lists, or Schedules referred to herein or in the Disclosure Statement but not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the deadline established by the Bankruptcy Court for the filing and service of objections to the Plan.  Thereafter, the Plan Supplement will be available for inspection in the office of the Clerk of the Bankruptcy Court during normal court hours and at an internet site maintained for Leslie by the Claims and Balloting Agent, with the web address set forth in the Disclosure Statement.  Claimants also may obtain a copy of the Plan Supplement, once filed, from Leslie by written request sent to the following address:

Epiq Bankruptcy Solutions, LLC
757 Third Avenue
Third Floor
New York, NY 10017

**14.5.    Inconsistencies.**  To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.  To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

**14.6.    Reservation of Rights.**  If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or deemed prejudiced by any such concession or settlement.  Moreover, if the Plan does not become effective no party in interest in the Chapter 11 Case shall be bound or prejudiced by any representation, written or oral, made by any party in connection with the Plan or the negotiation or prosecution of the Plan, including without limitation the representations made in the Plan, the Disclosure Statement or the Confirmation Order.

**14.7.    Tax Reporting and Compliance.**  In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, Leslie, and Reorganized Leslie, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  No holder of an Allowed Claim against Leslie shall effectuate any withholding with respect to the cancellation or satisfaction of such Allowed Claim under the Plan.  Reorganized

Leslie is hereby authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all taxable periods of Leslie ending after the Commencement Date through, and including, the Effective Date of the Plan.

**14.8.   Exemption from Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes as provided in such section 1146(a).

**14.9.   Binding Effect.**  The rights, benefits and obligations of any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity (including, but not limited to, any trustee appointed for Leslie under Chapters 7 or 11 of the Bankruptcy Code).  The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Chapter 11 Case to a case under Chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

**14.10.   Severability.**  Upon the unanimous agreement of Leslie or Reorganized Leslie, as the case may be, CIRCOR, any official committee, unless such committee has been dissolved, the Asbestos Claimants Committee, and the Future Claimants' Representative, any provision of the Plan, the Confirmation Order, the Asbestos PI Channeling Injunction, or any of the Exhibits to the Plan that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction may be deemed ineffective as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated to the extent of such prohibition, unenforceability, or invalidation, without invalidating the effectiveness of the remaining provisions of the Plan, the Plan Documents, the Confirmation Order, the Asbestos PI Channeling Injunction and the Exhibits to the Plan or affecting the validity or enforceability of such provision and such remaining provisions in any other jurisdiction.

**14.11.   Further Authorizations.**  Leslie and Reorganized Leslie, as applicable, and, after the Effective Date, the Asbestos PI Trust, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings as each deems necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, the Plan.

**14.12.   Payment of Statutory Fees.**  All fees due and owing under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, as pro-rated to the Effective Date, shall be paid on or before the Effective Date.  Reorganized Leslie shall pay all such fees that arise after the Effective

Date but before the closing of the Chapter 11 Case, as pro-rated to the closing of the Chapter 11 Case.

**14.13. Prepayment.** Except as otherwise provided in the Plan, the Plan Documents, or the Confirmation Order, Reorganized Leslie shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, that any such prepayment shall not violate or otherwise prejudice the relative priorities and parities among the Classes of Claims.

**14.14. Effective Date Actions Simultaneous.** Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. Actions required to be taken after the Effective Date or as soon as thereafter as is reasonably practicable shall be deemed to have been made on the Effective Date.

**14.15. General Statements.** Statements of a general nature set forth in this Plan shall not be construed to limit or restrict the specific provisions herein.

46392/0001-6454424v16

Dated:  August 20, 2010          **LESLIE CONTROLS, INC.**

                        By:  _____
                              Name:  G. Wayne Ray
                              Title:  Chief Restructuring Officer


Dated:  August 20, 2010          **COLE, SCHOTZ, MEISEL,**
                              **FORMAN & LEONARD, P.A.**

                        By:  _____
                              Norman L. Pernick (No. 2290)
                              Marion M. Quirk (No. 4136)
                              Sanjay Bhatnagar (No. 4829)
                              500 Delaware Avenue, Suite 1410
                              Wilmington, DE  19801
                              Telephone: (302) 652-3131
                              Facsimile: (302) 652-3117

                                    -and-

                              G. David Dean
                              300 East Lombard Street, Suite 2000
                              Baltimore, MD  21202
                              Telephone: (410) 230-0660
                              Facsimile: (410) 230-0667

                              Counsel for the Debtor and
                              Debtor in Possession