**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| LESLIE CONTROLS, INC., | : Case No. 10-12199 (CSS) |
| | : |
| Debtor.[1] | : **Hearing Date: TBD** |
| | : **Objection Deadline: TBD** |

## DEBTOR'S MOTION TO STRIKE THE OBJECTING INSURERS OBJECTIONS TO CONFIRMATION OF THE DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION

Leslie Controls, Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" or "Leslie") hereby moves to strike (the "Motion") the Objections to Confirmation of the Debtor's First Amended Plan of Reorganization (collectively, the "Objections") filed by Century Indemnity Co. ("Century"); Fireman's Fund Insurance Co. ("Fireman's Fund"); National Union Fire Insurance Co. of Pittsburgh, Pa. ("National Union"); and Winterthur Swiss Insurance Co. and Yasuda Fire & Marine Insurance Co. (U.K.) Ltd. ("Winterthur & Yasuda") (collectively, the "Objecting Insurers"). With a notable absence of reliance on precedent from other asbestos bankruptcies, the Objecting Insurers assert their same panoply of confirmation objections that have been repeatedly rejected by courts reviewing reorganization plans containing "insurance neutrality provisions" similar to the one proposed by the Debtor in the Amended Plan. In effect, the Objecting Insurers ask this Court to ignore this precedent and instead seize the alleged "opportunity . . . to be the first [court] to get this right." Transcript of Proceedings at 41:8-9, In re Leslie Controls, Inc., Aug. 9, 2010 (No. 10-12199). While the Debtor will demonstrate that the Objecting Insurers' confirmation objections are legally unavailing in the Debtor's responses to the Objections due to be filed on October 7, 2010, here, the Debtor demonstrates that the

---

[1] The last four digits of the Debtor's federal tax identification number are 3780.

Objecting Insurers lack the necessary injury to assert their objections at all. Accordingly, the Debtor requests that the Objections be stricken for lack of standing.

## Preliminary Statement

1.      It is well established law within the Third Circuit that where a debtor's proposed plan of reorganization in an asbestos-related bankruptcy case contains an insurance neutrality provision that expressly preserves the insurers' rights and defenses, the insurers lack standing to object to the confirmation of the plan. In re Combustion Eng'g, Inc., 391 F.3d 190, 217-18 (3d Cir. 2004); Hartford Acc. & Indem. Co. v. Global Indus. Techs, Inc., No. 06-1749, 2008 U.S. Dist. LEXIS 108185, *10-13 (W.D. Pa. July 26, 2008); In re Federal-Mogul, Inc., No. 01-10578, 2007 WL 4180545, at *41-42 (Bankr. D. Del. Nov. 16, 2007); In re Pittsburgh Corning Corp., 417 B.R. 289, 317 (Bankr. W.D. Pa. 2006). This is so because, pursuant to the insurance neutrality provision, any issues as to the plan's impact on the debtor's insurers are reserved for a post-confirmation coverage proceeding in a different forum.

2.      Here, the Debtor's First Amended Plan of Reorganization [Docket No. 172] (as may be amended or modified, the "Amended Plan") contains an insurance neutrality provision that, just like the similar provisions at issue in each of the above-listed cases, expressly preserves all of the parties' rights, claims, and defenses under the Objecting Insurers' various insurance policies. See Amended Plan, § 10.4. It therefore follows inexorably that the Objecting Insurers lack the necessary injury or standing to object to the confirmation of Leslie's Amended Plan.

3.      Indeed, the insurance neutrality provision in the Debtor's Amended Plan employs language to which at least one of the Objecting Insurers — Century — has already stipulated to in another asbestos-related bankruptcy case. In re G-I Holdings Inc., 420 B.R. 216, 242-43 (Bankr. D.N.J. 2009). This drives home the conclusion, already clear from the cases cited above,

2

that the Objecting Insurers lack standing to object to the Amended Plan, and their Objections should therefore be stricken.

## Background

4.    On July 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code.

5.    On July 22, 2010, an official committee of unsecured creditors (the "Committee") was appointed by the Office of the United States Trustee. On August 11, 2010, the Court entered an order appointing the future claimants' representative (the "FCR").

6.    The Debtor continues to manage and operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    On August 20, 2010, the Debtor filed the Amended Plan and related disclosure statement [Docket No. 173] (as may be amended or modified, the "Disclosure Statement").[2] The Debtor filed nonmaterial modifications to the Amended Plan on September 13, 2010 [Docket No. 213] (the "Nonmaterial Modifications").

8.    The Amended Plan contemplates the establishment of a trust under section 524(g) of the Bankruptcy Code (the "Asbestos PI Trust") and an injunction (the "Asbestos PI Channeling Injunction") that will channel all current asbestos-related Claims and future asbestos-related Demands to the Asbestos PI Trust. The Asbestos PI Channeling Injunction will cover all asbestos-related personal injury and wrongful death claims and demands based in whole or in part on the alleged conduct or products of Leslie (the "Leslie Asbestos Claims"). The Asbestos PI Channeling Injunction will also channel to the Asbestos PI Trust all current asbestos-related Claims and future asbestos-related Demands based in whole or in part upon Leslie Asbestos

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan or Disclosure Statement, as applicable.

46392/0001-7040039v2

Claims against certain parties related to Leslie, including, but not limited to, past and present

affiliates of Leslie, past and present officers and directors of Leslie, predecessors in interest to

Leslie, and any entity that owned a financial interest in Leslie or its affiliates or predecessors.

Finally, the Asbestos PI Channeling Injunction will also apply to any and all Claims and

Demands asserted against any of Leslie's Asbestos Insurance Entities that settle with Leslie prior

to the Confirmation Date, to the extent Leslie agrees to provide section 524(g) protection to such

Asbestos Insurance Entities.

      9.     Under the Amended Plan, Reorganized Leslie will contribute the following to the

Asbestos PI Trust:  (a) the Leslie Promissory Note and (b) an assignment of any and all rights of

Leslie (x) to proceeds under existing insurance policies that provide coverage for Leslie Asbestos

Claims and (y) to $2,625,000 of the proceeds of the Insurance Settlement Agreement between

Leslie and Continental Casualty Co. dated April 19, 2010, plus the proceeds, if any, of any other

Insurance Settlement Agreement that are received by Leslie on or after January 1, 2010.

      10.    CIRCOR, on behalf of itself, the CIRCOR Protected Parties and the Watts

Protected Parties, will make the following contributions to the Asbestos PI Trust:  (a) the

CIRCOR Cash in the amount of $74 million and (b) a pledge of 100% of the outstanding voting

equity interests in Reorganized Leslie as security for the Leslie Promissory Note.

      11.    The Plan as originally filed on July 12, 2010 contained a neutrality provision to

which the Objecting Insurers objected (the "Original Insurance Neutrality Provision").  That

provision provided:

> Notwithstanding anything to the contrary in the Confirmation Order or the
> Plan, but subject to the proviso below, nothing in the Confirmation Order
> or the Plan (including any other provision that purports to be preemptory
> or supervening) shall in any way operate to impair, or have the effect of
> impairing, the insurers' legal, equitable or contractual rights, if any, in any
> respect.  The rights of the insurers shall be determined under the insurance

4

> contracts, applicable law or insurance settlement agreements, as
> applicable; provided, however, that nothing in this Section 10.4 shall
> preclude the entry or effectiveness of the Asbestos PI Channeling
> Injunction or shall affect or limit, or be construed as affecting or limiting
> the releases, covenants and/or agreements in the Asbestos PI Trust
> Agreement (or any releases granted in connection therewith).

See Original Plan, § 10.4.

12.    The Debtor proposed changes to address the Objecting Insurer's concerns but

received no response from the Objecting Insurers.  Accordingly, the Debtor unilaterally amended

the Original Insurance Neutrality Provision to make it consistent with language that a number of

the Objecting Insurers previously had accepted by stipulation in other proceedings.  In doing so,

the Debtor has included an insurance neutrality provision broader than that required by the Third

Circuit in Combustion Engineering.  391 F.3d at 217-18.

13.    Thus, the Amended Plan, as amended by the Nonmaterial Modifications, includes

the following provision preserving all rights and defenses of Leslie's insurers (and Leslie itself)

under the potentially applicable insurance policies (the "Insurance Neutrality Provision"):

> Notwithstanding anything to the contrary in the Confirmation Order, the
> Plan, or any plan document, but subject to the proviso below, nothing in
> the Confirmation Order, the Plan or any of the plan documents including
> any other provision that purports to be preemptory or supervening, shall in
> any way operate to or have the effect of impairing in any respect the legal,
> equitable or contractual rights, if any, of any entity that issued or entered
> into any Asbestos PI Insurance Contract including but not limited to
> policies issued to the Debtor or its predecessors and the various Insurance
> Settlement Agreements.  Nothing in the Plan or the Confirmation Order
> shall preclude any entity from asserting in any proceeding any and all
> claims, defenses, rights or causes of action that such entity has or may
> have under or in connection with any of the Asbestos PI Insurance
> Contracts or otherwise.  Nothing in the Plan or the Confirmation Order
> shall be deemed to waive any claims, defenses, rights or causes of action
> that any entity has or may have under the provisions, terms, conditions,
> defenses and/or exclusions contained in the Asbestos PI Insurance
> Contracts, including but not limited to any and all claims, defenses, rights
> or causes of action based upon or arising out of the claims that are
> liquidated, resolved, discharged, channeled or paid in connection with the
> Plan.  However, nothing in this Section 10.4 shall preclude the entry or

5

effectiveness of the Asbestos PI Channeling Injunction or shall affect or limit, or be construed as affecting or limiting, the protections afforded to the Asbestos Protected Parties under the Asbestos PI Channeling Injunction, or shall affect or limit, or be construed as affecting or limiting the releases, covenants and/or agreements in the Asbestos PI Trust Agreement (or any releases granted in connection therewith).

See Amended Plan, § 10.4.

### Jurisdiction and Venue

14.    The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue for this proceeding and the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

15.    The statutory bases for the relief sought are sections 105, 1109 and 1128 of the Bankruptcy Code.

### Basis for Relief Requested

16.    By this Motion, the Debtor seeks entry of an order striking the Objecting Insurers' Objections due to a lack of standing.  At this point in the proceedings, the Objecting Insurers could have only limited standing to object to the insurance-related aspects of the Amended Plan as it is related to insurance.  However, because the Amended Plan here contains a broad Insurance Neutrality Provision that preserves all of their rights and defenses, the Objecting Insurers cannot demonstrate a potential injury they would face if the Amended Plan is confirmed.  As a result, the Objecting Insurers lack standing, as confirmed by extensive directly applicable precedent within the Third Circuit.  Combustion Eng'g, 391 F.3d at 217-18; Global Indus., 2008 U.S. Dist. LEXIS 108185 at *10-13; Federal-Mogul, 2007 WL 4180545, at *41; Pittsburgh Corning, 417 B.R. at 317.

6

I.  **The Objecting Insurers, As Non-Creditors of the Debtor's Estate, Have Limited Standing in the Bankruptcy Proceeding.**

17.     The determination of whether an entity has standing to appear and be heard in a

Chapter 11 case involves a two-step process.  First, the prospective litigant must satisfy the

minimum constitutional requirements for standing in federal court.  Second, if constitutional

standing is present, the prospective litigant must establish that it is a party in interest within the

meaning of section 1109(b) of the Bankruptcy Code.  Warth v. Seldin, 422 U.S. 490, 498 (1975);

see also Fair Hous. Council of Suburban Phila. v. Montgomery Newspapers, 141 F.3d 71, 74

(3d Cir. 1998);.  As the bankruptcy case progresses, who has standing to intervene in the

proceeding becomes more restricted.  The standard for those who can object to the confirmation

of a plan for reorganization is higher than for an appearance in the proceeding generally.[3]  In re

Fuller-Austin Insulation, No. 98-2038-JJF, 1998 WL 812388, at *3 (D. Del. Nov. 10, 1998).

18.     To establish standing to object to confirmation of the Plan, the Objecting Insurers

would need to show that the Amended Plan, solely as it relates to insurance, adversely affects

their interests.  In short, this Court must determine if the Amended Plan potentially impairs the

Objecting Insurers' financial or legal interests.  To preemptively address the potential concerns

of the Objecting Insurers, the Debtor's proposed Plan includes the Insurance Neutrality

Provision, as amended, in section 10.4, which protects the interests of all parties to the insurance

---

[3] Notably, even at the point in the case where the bar to standing was at its lowest, the Objecting Insurers' basis for standing, at least with respect to non-insurance issues, was tentative at best.  This Court acknowledged this fact at the August 9, 2010 hearing, noting:

> I think it's a very weak argument that the insurers have standing on that issue.  I think that in all likelihood were I to rule on it as opposed to assuming it, I would rule there was no standing.  But given where I am on the merits, I need not reach the standing issue.  So assuming arguendo that the . . . insurers have standing, I will nonetheless overrule the objection based on the merits of their objection.

Transcript of Proceedings at 70:7-14, In re Leslie Controls, Inc., Aug. 9, 2010 (No. 10-12199).  The Objecting Insurers' standing to object to the confirmation of the Plan now faces an even higher level of scrutiny.

46392/0001-7040039v2

policies and leaves those rights and risks unaffected.  Despite the inclusion of section 10.4, the

Objecting Insurers, in an attempt to manufacture standing, raise a variety of technical objections

to the Amended Plan's Insurance Neutrality Provision and the Amended Plan itself.  However,

these concerns are fully addressed by the Insurance Neutrality Provision.  Therefore, the

Amended Plan, as proposed, obviates the Objecting Insurers' standing to raise each and every of

their objection to the confirmation of the Amended Plan.

      A.      <u>The Objecting Insurers Lack the Minimum Constitutional Requirements for Standing in Federal Court and the Objecting Insurers are not Parties in Interest within the Meaning of Section 1109(b) of the Bankruptcy Code.</u>

19.      Standing is a non-waivable threshold issue that must be reviewed for each

potential participant in a case.  <u>Warth</u>, 422 U.S. at 498; <u>United States v. AVX Corp.</u>, 962 F.2d

108, 116 n.7 (1st Cir. 1992).  Without standing, a participant is barred from being heard.

Bankruptcy courts, as adjunct units of federal district courts, are subject to the same

jurisdictional constraints of Article III of the United States Constitution.  <u>N.J. Dep't of Envtl.</u>

<u>Prot. & Energy v. Heldor Indus., Inc.</u>, 989 F.2d 702, 707 n.8 (3d Cir. 1993) ("[T]o the extent

[bankruptcy courts] exercise 'the judicial Power of the United States' they are subject to Article

III's jurisdictional constraints.").  In bankruptcy cases, as in all federal cases, the burden of

establishing standing rests squarely on the party seeking to invoke the court's jurisdiction.  <u>See</u>

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>Warth</u>, 422 U.S. at 518.

20.      In order to meet the Article III standing requirements; the Objecting Insurers are

required to establish, at a minimum, the existence of three elements:  "(1) a personal injury (2)

fairly traceable to the defendant's allegedly unlawful conduct, which is (3) likely to be redressed

by the requested relief."  <u>City of Farmers Branch v. Pointer (In re Pointer)</u>, 952 F.2d 82, 85 (5th

Cir. 1992); <u>Vt. Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 771

46392/0001-7040039v2

(2000). These three elements together constitute "the irreducible constitutional minimum of standing." Lujan, 504 U.S. at 560. The Objecting Insurers cannot satisfy these minimal constitutional requirements for standing because the Amended Plan in no way harms their pecuniary or legal interests. To the contrary, the Amended Plan specifically preserves any and all rights and obligations of the parties to the Objecting Insurers' insurance policies.

21.    Assuming, arguendo, that the Objecting Insurers could satisfy the minimum standing requirements of Article III, they still fail to establish that they are a "party in interest" under section 1109(b) of the Bankruptcy Code. Section 1109(b) of the Bankruptcy Code anticipates that a debtor, trustee, creditors' committee, equity security holders' committee, creditor, equity security holder, or any indenture trustee could meet the criteria for standing. 11 U.S.C. § 1109(b). Because the Objecting Insurers are not a creditor of the estate, they must demonstrate that they meet the general criteria to be granted standing as a party in interest. This is a burden they have not and cannot carry.

22.    While the term "party in interest" has been interpreted to include any entity with a potential pecuniary interest directly or adversely affected by a bankruptcy case, see, e.g., Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm., 321 B.R. 147, 158 (D.N.J. 2005), courts have excluded persons who merely are interested in the result of a bankruptcy proceeding. See, e.g., In re Martin Paint Stores, 199 B.R. 258, 264 (Bankr. S.D.N.Y. 1996). Indeed, courts consistently remind parties that the term is not without limitations. Id.; In re Innovative Commc'n Co., Nos. 2008-114, 2008-115, 2009 U.S. Dist. LEXIS 71051, at *10-12 (D.V.I. Aug. 10, 2009) (holding that standing must be made on a case by case basis, so that broad-sweeping determinations of standing or no standing were inappropriate). One court warned that "it is . . . important that the court take care not to be so liberal in granting such applications as to over-

9

burden the reorganization process by allowing numerous parties to interject themselves into the case on every issue, to the extent that the goal of a speedy and efficient reorganization is hampered." In re Pub. Serv. Co. of N.H., 88 B.R. 546, 554 (Bankr. D.N.H. 1988). Instead, consistent with general principles of federal standing, "courts must determine on a case by case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." In re Amatex Corp., 755 F.2d 1034, 1042 (3d Cir. 1985); accord Roslyn Sav. Bank v. Comcoach Corp. (In re Comcoach Corp.), 698 F.2d 571, 573 (2d Cir. 1983); In re Johns-Manville Corp., 36 B.R. 743, 747-48 (Bankr. S.D.N.Y. 1984).

23.    As a preliminary matter, the Objecting Insurers do not meet their burden of establishing standing because their Objections reduce to nothing more than either (1) a litany of generic grievances about 524(g) itself and the process of establishing a 524(g) Trust in *any* reorganization, or (2) a variety of concerns specifically reserved by the Amended Plan's Insurance Neutrality Provision. To the first point, several of the Objecting Insurers ask this Court to deny confirmation because the Amended Plan will itself impair the Objecting Insurer's contractual rights regardless of any "insurance neutrality provision." See Century Objection at 16; Firemen's Fund Objection at 6-8. Such objections are at best an assertion that the Objecting Insurers may face injury if the Amended Plan is approved because 524(g) Trusts are intrinsically harmful, and no insurance neutrality provision could ever be sufficient to protect against injury. This objection, however, asks too much, especially considering that some of the Objecting Insurers have stipulated to neutrality provisions comparable to section 10.4 of the Amended Plan in other cases. See, e.g., G-I Holdings, 420 B.R. at 242-43 ("Debtors agreed to include certain clarifying language into its proposed confirmation order, and in exchange . . . Century agreed to

withdraw their objection.") (citing Conf. Hr'g Tr. 15, Sept. 30, 2009)).[4] Moreover, concerns of

this nature are not only beyond the Debtor's control, but also that of the courts. Accordingly,

this generalized concern in the outcome of the bankruptcy case is not sufficient to confer

standing under sections 1109(b) and 1128(b). In re Int'l Oriental Rug Ctr., Inc., 165 B.R. 436,

440 (Bankr. N.D. Ill. 1994) (holding that would-be movants' "salutary interest" in ensuring that

the debtor not engage in false advertising was not sufficient to confer standing); In re Fuller-

Austin Insulation, 1998 WL 812388, at *3 (holding that marginal parties who face only

incidental harm are not parties in interest); see also In re A.P.I., Inc., 331 B.R. 828, 858-60

(Bankr. D. Minn. 2005); Martin Paint Stores, 199 B.R. at 264. More importantly, this is neither

the proper time nor forum for a pedantic rumination on the "fairness" of 524(g) Trusts when

there is well-established precedent for their use.

      24.     To the second point, the Objecting Insurers' specific challenges to the details of

the Amended Plan are all redressed by the inclusion of the Insurance Neutrality Provision. In

anticipation of the positions expressed in the Objections, the Debtor included the broad Original

Insurance Neutrality Provision in its Plan, which was broadened further by amendment. This

---

[4] The amended insurance neutrality language stipulated to by Century in G-I Holdings provided:

> Notwithstanding anything to the contrary in this confirmation order, the plan or any plan document, nothing in this confirmation order, the plan or any of the plan documents including any other provision that purports to be peremptory or supervening, shall in any way operate to or have the effect of impairing in any respect the legal, equitable or contractual rights, if any, of any entity that issued any insurance policies including but not limited to policies issued to GAF Corporation, the Ruberoid Company or any of the Debtors or their predecessors and the various agreements related to the policies together with the policies defined as the insurance agreements, under or in connection with such insurance agreements. Nothing in the plan or this confirmation order shall preclude any entity from asserting in any proceeding any and all claims, defenses, rights or causes of action that such entity has or may have under or in connection with any of the insurance agreements or otherwise. Nothing in the plan or this confirmation order shall be deemed to waive any claims, defenses, rights or causes of action that any entity has or may have under the provisions, terms, conditions, defenses and/or exclusions contained in the insurance agreements, including but not limited to any and all claims, defenses, rights or causes of action based upon or arising out of the claims that are liquidated, resolved, discharged, channeled or paid in connection with the plan.

G-I Holdings, 420 B.R. at 242-43.

46392/0001-7040039v2

Provision obviates any basis for the Objecting Insurers even to suggest they are injured by the

Amended Plan and, as a result, undermines any ability they may have had to make a credible

argument that they have standing.  The bankruptcy court in <u>Mid-Valley</u> explained it this way:

> The insurers are not harmed by a requirement that Debtors fund a plan of
> reorganization when that requirement does not include a mandate to
> certain insurers to contribute to Plan funding regardless of the terms of the
> insurance policies, defenses to coverage, and the like.  That is, even if the
> Plan were to provide that the insurers' liability is the amount that the Plan
> says Debtors will pay, the Plan does not say that the insurers cede
> coverage defenses or contractual rights or anything else to which their
> policies might entitle them.

<u>In re Mid-Valley, Inc.</u>, 305 B.R. 425, 429 (Bankr. W.D. Pa. 2004).[5]  The court held that the

insurers' obligation to pay was "not affected by this bankruptcy case" and the insurers thus

lacked standing to raise their non-insurance objections.  <u>Id.</u> at 431.  Similarly, because any

insurance-related aspect of the Amended Plan to which the Objecting Insurers may take issue is

fully reserved for resolution in a later proceeding, the Objecting Insurers' interests are preserved

and unaffected, and they lack standing to object to the Amended Plan.

  B. <u>The Insurance Neutrality Provision Protects the Objecting Insurers from Injury,
Thereby Eliminating Their Standing.</u>

  25. The Amended Plan's Insurance Neutrality Provision generally reserves the rights,

defenses, claims and obligations of all parties to various insurance policies and related

agreements to which the Debtor and the respective insurers are parties.  <u>See</u> Amended Plan, §

10.4.  Moreover, neither the Insurance Neutrality Provision nor the other provisions of the

Amended Plan imposes liability on the Objecting Insurers or any other Asbestos Insurance

Entity.  To the extent any other parts of the Amended Plan may negatively affect insurance, the

---

[5] In <u>Mid-Valley</u>, certain insurers filed motions to dismiss jointly administered Chapter 11 cases as bad-faith filings, and objected to the appointment of the future claimants' representative.  The court held that the insurers lacked standing with respect to these issues because they were not creditors of the estate and had no legally cognizable interest in the issue. 305 B.R. at 427.

46392/0001-7040039v2

Insurance Neutrality Provision supersedes those to protect the interests of the insurers. Id.

("*Notwithstanding* anything to the contrary in the Confirmation Order, the Plan, or any plan

document, but subject to the proviso below, *nothing* in the Confirmation Order, the Plan or any

of the plan documents *including any other provision that purports to be preemptory or*

*supervening*, shall in any way operate to or have the effect of impairing in any respect the legal,

equitable or contractual rights, if any, of any entity that issued or entered into any Asbestos PI

Insurance Contract." (emphasis added)).  As a whole, the Amended Plan's Insurance Neutrality

Provision unequivocally ensures that if an insurer receives a demand for payment under its

respective insurance policy or policies, but wishes to contest the existence, scope, or applicability

of coverage under the policy or policies or the merits of the underlying claim, based on perceived

adverse impacts caused by the Amended Plan or otherwise, the insurer is free to pursue those

contentions under applicable non-bankruptcy law, Amended Plan confirmation notwithstanding.

26.     Contrary to what the Objecting Insurers assert, section 10.4 protects and preserves

the pre-petition and post-petition interests of the insurers, without diminishing their rights or

increasing their burdens. Federal-Mogul, 2007 WL 4180545, at *41 (citing Combustion Eng'g,

391 F.3d at 217).  The proposed Insurance Neutrality Provision is decidedly fair and effective in

protecting the rights of the insurance companies.  In fact, the precise language is modeled on

language to which some of the Objecting Insurers previously stipulated in G-I Holdings, and

which that court approved as "insurance neutral."  420 B.R. at 231.  As noted by the court in G-I

Holdings, the neutrality language was based on language approved by the Third Circuit in

Combustion Engineering but modified to clarify particular provisions with respect to insurance

neutrality.  Id.  Similar to the language in G-I Holdings, the Amended Plan's current Insurance

Neutrality Provision is broader than what has been judicially required by the Third Circuit and its

46392/0001-7040039v2

district courts.  See, e.g., Combustion Eng'g, 391 F.2d at 217-18; see also Pittsburgh Corning,

417 B.R. at 317 (finding the debtor's plan of reorganization insurance neutral because it did not

"diminish the rights of the Objecting Insurers or increase their burdens").

        27.    In Combustion Engineering, for instance, the Third Circuit explained what

"insurance neutral" language should look like.  391 F.2d at 217-18.  There, the court was called

upon to consider an appeal by certain insurers that objected to their policyholder's plan of

reorganization, asserting an array of objections similar to those asserted by the Objecting

Insurers in this proceeding.  The Third Circuit rejected the insurers' appeal with respect to all

non-insurance issues and approved insurance neutrality language which provided that nothing in

the plan "'shall in anyway [sic] operate to, or have the effect of, impairing insurers' legal,

equitable or contractual rights, if any in any respect.'"[6]  Id. at 217 (brackets in original).  The

court noted that this language "preserves insurers' pre-petition rights under the subject insurance

policies and settlements."  Id.  The Third Circuit held that "[s]o long as claims are paid in a

---

[6] The Insurance Neutrality Provision at issue in Combustion Engineering said in full:

> **3.2.4.4 Insurance Related Rights** Notwithstanding anything to the contrary in the Plan
> or any of the Plan documents, nothing in the Plan or any of the Plan Documents
> (including any other provision that purports to be preemptory or supervening), shall in
> any way operate to, or have the effect of, impairing the insurers' legal, equitable or
> contractual rights, if any, in any respect.  The rights of insurers shall be determined under
> the Subject Insurance Policies or Subject Insurance Settlement Agreements as applicable.
>
> Nothing in the Plan or in the Confirmation Order shall preclude any Entity from asserting
> in any proceeding any and all claims, defenses, rights or causes of action that it has or
> may have under or in connection with any Subject Insurance Policy or any Subject
> Insurance Settlement Agreement.  Nothing in the Plan or the Confirmation Order shall be
> deemed to waive any claims, defenses, rights, or causes of action that any Entity has or
> may have under the provisions, terms, conditions, defenses, and/or exclusions contained
> in any Subject Insurance Policy or any Subject Insurance Settlement Agreement,
> including, but not limited to (a) any and all such claims, defenses, rights, or causes of
> action based upon or arising out of Asbestos Claims that are liquidated, resolved,
> discharged, channeled, or paid in connection with the Plan, and (b) any Asbestos
> Insurance Entity's right to contest insurance coverage for any claim resolved pursuant to
> the TDP.

See Combustion Engineering Plan for Reorganization, § 3.2.4.4. at 4-5 (Oct. 7, 2005).

46392/0001-7040039v2

manner consistent with the rights and conditions set forth in the subject policies," the insurers

were not "aggrieved" and therefore lacked standing to object to the confirmation of the plan. Id.

28.    Similarly, the court in Pittsburgh Corning, 417 B.R. at 315 n.45, held that the

plan's insurance neutrality provision prevented the insurers from having standing to object to the

plan. The court rendered its decision based on the following language from the amended plan:

> [W]ith respect to PPG, its contribution to the Asbestos PI Trust "fully
> resolves and satisfies the PPG Entities' alleged and disputed liabilities for
> the Asbestos PI Trust Claims. . . . This finding, however, shall not be
> binding and shall not have collateral estoppel effect on the PPG Non-
> Participating Insurers in any coverage litigation regarding the insurance
> coverage obligations of the PPG Non-Participating Insurers."

Id. at 316 (citing the Second Amended Plan of Reorganization, §8.1.15.). In evaluating the

neutrality provisions of the plan, the court held that this language made the overall plan

"insurance neutral" and that "[b]ecause the plan in insurance neutral, the insurers' rights are not

affected and they do not have standing to object." Id. at 315 n.45, 317. Moreover, the court

positively compared the language at issue in Pittsburgh Corning with that approved as insurance

neutral in Combustion Engineering. Id. at 317 (citing Combustion Eng'g, 391 F.3d at 217).[7]

Although the language in section 10.4 is slightly different than that at issue in Pittsburgh

Corning, the effect is the same; the same rights, claims and defenses are preserved.

29.    Similarly, this Court recognized that insurers do not have a right to object

generally to the confirmation of a plan when its provisions are insurance neutral. Federal-Mogul,

2007 WL 4180545, at *42. The language at issue in Federal-Mogul is similar to the language in

the Amended Plan. Importantly, the Federal-Mogul court recognized that the insurance

---

[7] The court ultimately did not confirm the plan at issue in Pittsburgh Corning, based on non-insurance grounds not
present in the Debtor's Amended Plan. Specifically, the court found that the plan was unconfirmable under section
1129 of the Bankruptcy Code because it impermissibly channeled the independent claims against the non-debtors,
owners and affiliates of the debtor with whom they also shared insurance, that involved a product other than the
debtor's and did not assert conduct or liability derivative of the debtor.

neutrality language used in the plan "broadly preserves the [insurers'] rights and defenses to coverage" and did "not affect the direct interests of the [insurers with the exception of an assignment issue], and hence the [insurers] lack[ed] standing to contest Confirmation of the Plan." Id. The court held that the Third Circuit's decision on insurance neutrality language in Combustion Engineering controlled and deprived insurers of standing. Id.

30.    Likewise, in the Global Industrial Technologies, Inc. asbestos-related bankruptcy case, the bankruptcy court held that the insurers lacked standing to object to confirmation of the plan in light of the plan's insurance neutrality clause, and the district court agreed  Global Indus., 2008 U.S. Dist. LEXIS 108185, *10-13.  As the court explained, "[w]hether any insurer will be obligated to pay the Trust anything under the assigned policies will be decided in a separate action under the terms of the particular policy, in accordance with the insurance neutrality provisions of the Plan. . . . The insurers can assert their coverage defenses in these subsequent actions.  However, those defenses to coverage do not confer standing to participate in plan confirmation proceedings." Id. at *12 (citation and footnote omitted).

31.    The objections raised by the insurers here have been raised (often by these same Objecting Insurers) and uniformly rejected in numerous asbestos bankruptcy cases as a basis for standing because of similar insurance neutrality language.  See, e.g., Combustion Eng'g, 391 F.3d 190 at 218; Federal-Mogul, 2007 WL 4180545, at *42; Pittsburgh Corning, 417 B.R. at 317; G-I Holdings, 420 B.R. at 231.  The Objecting Insurers' objections are of five general types:  (1) the Plan does not preserve their right to participate in the defense and settlement of claims; (2) the Plan does not allow the Objecting Insurers to consent to settlement; (3) the Plan supposedly assigns Debtor's interest in the policies inappropriately; (4) the Plan bars the Objecting Insurers from seeking contribution from other insurers; and (5) the Trust Distribution

Procedures (the "TDP") claims values and criteria are unreasonable.  See Century Objection at 5.

None of these objections raise issues that are sufficient to constitute injury giving rise to

standing.  Coverage defenses, consent to settlement, and the reasonableness of TDP values and

criteria are all non-bankruptcy, insurance coverage issues.  Those coverage issues are fully

preserved for subsequent coverage litigation and do not need to be addressed by this Court.

See Pittsburgh Corning, 417 B.R. at 317 ("Because the [plan] does not diminish the rights of the

Objecting Insurers or increase their burdens under the subject insurance policies, the court finds

that it is 'insurance neutral.'  As a result, the insurers have no standing to object to

confirmation.").  Moreover, the law is well-settled that insurance rights can be assigned without

insurer consent.  See Combustion Eng'g, 391 F.3d at 218; In re ACandS, Inc., 2008 Bankr.

LEXIS 2169, *33 (Bankr. D. Del. May 6, 2008); Pittsburgh Corning, 417 B.R. at 313, 317.  The

Debtor is not aware of any cases that have held to the contrary.  The assignment itself causes no

injury because the insurers' defenses to contest liability under the policies are fully preserved.

Contribution from other insurers is addressed by the Amended Plan's judgment reduction

provision, section 11.12, as discussed below.

  32. Given the encompassing and unambiguous Insurance Neutrality Provision, the

Objecting Insurers cannot be injured by confirmation of the Amended Plan.  Without an injury,

they lack any legally cognizable interest in the Plan sufficient to bring them within the broad, but

not unlimited, class of "parties of interest" entitled to object to confirmation of the Plan under

section 1128(b) of the Bankruptcy Code.  As a result, the Objections should be stricken for lack

of standing.

46392/0001-7040039v2

**II.    The Objecting Insurers' Objections to the Insurance Neutrality Provision are Without Merit.**

33.    In an effort to conjure standing in this proceeding, the Objecting Insurers raise a variety of technical objections to the Amended Plan's Insurance Neutrality Provision.  However, these Objections are without merit.  Accordingly, the Objecting Insurers are unable to show a personal injury caused by the confirmation of the Amended Plan, as the Amended Plan is insurance neutral.  Having failed to satisfy the constitutional requirements for standing under Article III, it is axiomatic that the Objecting Insurers lack standing to raise the Objections.  In re Int'l Forex of Cal., Inc., 247 B.R. 284, 289 (Bankr. S.D. Cal. 2000).

34.    First, the Objecting Insurers challenge the Insurance Neutrality Provision on the grounds that it does not limit the arguments or claims that can be made by the Debtor in later proceedings.  See Century Objection at 19-21; Winterthur & Yasuda Objection at 9.  This argument, however, ignores that the Insurance Neutrality Provision does not limit the arguments the insurance companies may make in later proceedings either.  The Insurance Neutrality Provision is exactly that:  neutral.  This means that whenever one side is shielded by the Provision, the other side is shielded as well.  When one side is allowed to reserve future claims and defenses, the other side is allowed to do so as well.  Instead of giving one side a "sword" and the other side a "shield," the Insurance Neutrality Provision gives each side both swords *and* shields.  The Insurance Neutrality Provision assures that rights and obligations of both the Debtor and the insurance companies are equally protected and preserved in future proceedings.  The Objecting Insurers seek to protect their rights and the Debtor's obligations while simultaneously depriving the Debtor of its rights and relieving the Objecting Insurers' of their obligations.  This runs counter to the very purpose of an insurance neutrality provision and is decidedly not neutral within the Amended Plan.

46392/0001-7040039v2

35.    Second, the Objecting Insurers' concern about internally conflicting provisions is without merit.  Specifically, the Objecting Insurers assert that section 10.4 and section 11.11, the Asbestos Insurance Entity Injunction Provision, contradict one another because both appear to contain supervening language.  See Century Objection at 16, 32-34.  In short, Century argues that if section 10.4 does not take precedence over section 11.11, Century will be precluded from asserting a contribution claim against any Settling Insurer.  Century hypothesizes that this would prejudice it because it may in the future defend Leslie in a suit challenging the Asbestos PI Trust's resolution of a claimant's claim and, in doing so, advance "not only its own share of defense and indemnity costs, but also costs that, as a matter of insurance coverage law, should be shared by other insurers whose policies are also triggered by the claim in question."  See Century Objection at 12 & n.38.  In making this assertion, Century asks this court to hypothesize that sometime in the future a claimant might challenge the Asbestos PI Trust's resolution of his or her claim in the tort system, that the Asbestos PI Trust might ask Century to defend and pay the claim in full, and that Century would do so, even though it believed that a portion of what it pays was properly the obligation of some Settling Insurer.

36.    Such a hypothetical has no basis in reality and is far from the concrete, particularized injury-in-fact required for standing.  Century conveniently ignores that the policy it issued Leslie is a second-layer excess policy, that there are no other policies of solvent insurers at its level, and that Century would no doubt refuse to defend any such claim unless it was satisfied that the underlying insurance had been exhausted and that Century's policy was the only remaining coverage.  The hypothetical also assumes that Century would not assert any of the myriad defenses it currently says it has and which are preserved by section 10.4, and most improbably, that Century would agree with the Asbestos PI Trust to advance payments on behalf

19

of other insurers without taking into account and obtaining the benefits and protections of the reduction in judgment provision of section 11.12 of the Amended Plan. Courts have routinely found such hypothetical, attenuated, and implausible claims to be insufficient to support standing. <u>Lujan</u>, 504 U.S. at 561; <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

37.    Third, the Objecting Insurers mischaracterize the final clause of the of the Insurance Neutrality Provision. <u>See</u> Century Objection at 17; Fireman's Fund Objection at 9-10. This last clause is not intended to deprive an insurer of its day in court to establish that its rights have been prejudiced in any way or to relieve it of some or all of its obligations to pay a particular asbestos-related claim. Instead, the proviso is intended simply to confirm that the protections of the Asbestos PI Channeling Injunction to the Debtor, the Asbestos PI Trust, and the other Asbestos Protected Parties will not be hindered in any way by section 10.14.

38.    Fourth, as discussed above, to the extent the Objecting Insurers protest that the creation of the 524(g) Trust under the Amended Plan is inherently not neutral, this is not an issue redressable by this Court. <u>See</u> Century Objection at 28.

39.    In light of the courts' favorable and directly applicable rulings in <u>Combustion Engineering</u>, <u>Pittsburgh Corning</u>, <u>Federal-Mogul</u>, and <u>Global Industrial</u>, the Insurance Neutrality Provision contained in section 10.4 of the Amended Plan sufficiently addresses the Objecting Insurers' concerns.[8] The Objecting Insurers will not be injured by the confirmation of the Debtor's Amended Plan because the Amended Plan is "insurance neutral" by preserving the Objecting Insurers' pre-petition rights, including the ability to argue that their rights have been

---

[8] For the Court's convenience, counsel for the Debtor will submit insurance neutrality provisions that have been approved by other Courts marked against the insurance neutrality provision proposed by the Debtor in the Amended Plan.

20

prejudiced to participate in the defense and resolution of claims and that their policies or

proceeds have been inappropriately assigned to the Asbestos PI Trust.  Indeed, the Insurance

Neutrality Provision goes well beyond anything a court previously has required.  Consequently,

the Objecting Insurers lack standing under sections 1109(b) and 1128(b) of the Bankruptcy

Code, and the Objection should be stricken.

### Notice

40.    Notice of this Motion has been provided to counsel to the Objecting Insurers,

counsel to the Committee and counsel to the FCR.  In light of the nature of the relief requested in

this Motion, the Debtor submits that no other or further notice is required.

### No Prior Request

41.    No previous request for the relief sought herein has been made to this or any other

court.

21

WHEREFORE, for the reasons set forth above, the Debtor respectfully requests that the

Court overrule the Objection in its entirety and grant such other and further relief as this Court

deems just and proper.

Dated:  September 30, 2010          **DICKSTEIN SHAPIRO LLP**
        Wilmington, Delaware          John Heintz, Esq.
                                  Justin Lavella, Esq.
                                  1825 Eye Street NW
                                  Washington, DC  20006

                                  *Special Insurance Counsel for the Debtor and*
                                  *Debtor in Possession*

                                  **COLE, SCHOTZ, MEISEL**
                                  **FORMAN & LEONARD, P.A.**

By:  _____
                                  Norman L. Pernick (No. 2290)
                                  Marion M. Quirk (No. 4136)
                                  Sanjay Bhatnagar (No. 4829)
                                  500 Delaware Avenue, Suite 1410
                                  Wilmington, DE  19801
                                  Telephone: (302) 652-3131
                                  Facsimile: (302) 652-3117

                                     -and-

                                  G. David Dean
                                  300 East Lombard Street, Suite 2000
                                  Baltimore, MD  21202
                                  Telephone: (410) 230-0660
                                  Facsimile: (410) 230-0667

                                  *General Bankruptcy Counsel for Debtor and Debtor*
                                  *in Possession*