IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LESLIE CONTROLS, INC., | : | Case No. 10-12199 (CSS) |
| | : | |
| Debtor.[1] | : | |
| | : | |

## DEBTOR'S MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE FIRST AMENDED PLAN OF REORGANIZATION OF LESLIE CONTROLS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The above-captioned debtor and debtor-in-possession ("Leslie" or the "Debtor") hereby submits this memoranda of law (the "Memorandum of Law") in support of confirmation of the First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code, dated as of August 20, 2010 (as amended and supplemented, the "Plan")[2] pursuant to section 1129 of title 11 of the United States Code (the "Bankruptcy Code"). By this Memorandum of Law, the Debtor seeks to demonstrate that the Plan satisfies all applicable requirements of the Bankruptcy Code. **Part I** sets forth the burden of proof the Debtor is required to meet to seek confirmation of the Plan under section 1129 of the Bankruptcy Code. **Part II** demonstrates that the Debtor has satisfied the elements of section 1129 of the Bankruptcy Code that must be satisfied for the Plan to be confirmed. **Part III** demonstrates that the Debtor has satisfied the elements of section 524(g) of the Bankruptcy Code, including the requirements to obtain a channeling injunction of present and future Asbestos PI Claims against

---

[1] The last four digits of the Debtor's federal tax identification number are 3780.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Plan.

it, the CIRCOR Related Parties and the Watts Related Parties.  Accordingly, the Debtor

respectfully submits that the Plan should be confirmed.

## FACTS

On July 12, 2010 (the "Petition Date"), the Debtor filed a voluntary petition in this Court

for relief under Chapter 11 of the Bankruptcy Code.  The factual background regarding the

Debtor, including its business operations, its capital and debt structure, and the events leading to

the filing of its bankruptcy case, is set forth in the Declaration of G. Wayne Day in Support of

Chapter 11 Petition and First Day Pleadings (the "First Day Declaration") [Docket No. 3] and

fully incorporated herein by reference.  The Debtor continues to manage and operate its business

as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.  On July 22,

2010, an official committee of unsecured creditors (the "Committee") was appointed by the

Office of the United States Trustee.

On the Petition Date, the Debtor filed the Plan of Reorganization of Leslie Controls, Inc.

Under Chapter 11 of the Bankruptcy Code [Docket No. 15] and Disclosure Statement Pursuant

to Section 1125 of the Bankruptcy Code with Respect to the Plan of Reorganization of Leslie

Controls, Inc. Under Chapter 11 of the Bankruptcy Code [Docket No. 16].  As described in detail

in the First Day Declaration, the Plan reflects the terms of a settlement entered into prior to the

Petition Date among the Debtor, CIRCOR, the Ad Hoc Committee and the Pre-Petition Future

Claimants' Representative.

On August 12, 2010, the Debtor filed the First Amended Plan of Reorganization of Leslie

Controls, Inc. Under Chapter 11 of the Bankruptcy Code [Docket No. 141] and the First

Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect

2

to the First Amended Plan the Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code [Docket No. 142].

On August 19, 2010, the Court entered an order approving the Solicitation Procedures Motion (the "Solicitation Procedures Order") [Docket No. 166] that, among other things (i) approved the adequacy of the Disclosure Statement; (ii) approved the Voting and Solicitation Procedures; (iii) established October 12, 2010 at 11:00 a.m. (prevailing Eastern time) as the Confirmation Hearing; and (iv) established September 27, 2010 at 4:00 p.m. (prevailing Eastern time) as the deadline (the "Objection Deadline") to file and serve objections to the Plan.

On August 20, 2010, the Debtor filed the First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code dated August 20, 2010 (as amended or modified, the "Plan") [Docket No. 172].  On August 20, 2010, the Debtor filed the First Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code with Respect to the First Amended Plan the Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code dated August 20, 2010 (as amended or modified, the "Disclosure Statement") [Docket No. 173].

On September 13, 2010, the Debtor filed the Notice of Filing of Nonmaterial Modifications to the Plan reflecting modifications to Section 9.3 (The Asbestos PI Trust), Section 10.4 (Insurance Neutrality) and Section 13.2 (Retention of Jurisdiction) (the "Plan Modifications") [Docket No. 213].

On September 17, 2010, the Debtor filed the Plan Supplement to First Amended Plan of Reorganization of Leslie Controls, Inc. Under Chapter 11 of the Bankruptcy Code (the "Plan Supplement") [Docket No. 238].

3

Any additional pertinent facts are set forth in the First Day Declaration, the Disclosure Statement, the Plan, the papers filed by the Debtor in support of confirmation of the Plan, including the Voting Declaration and the proposed confirmation order, and any evidence presented or testimony that may be adduced at the hearing to commence on October 26, 2010 regarding confirmation of the Plan (the "Confirmation Hearing"). Such facts are incorporated herein as if fully set forth herein.

## THE PLAN

In order to resolve its mounting asbestos-related liabilities, prior to the Petition Date, the Debtor commenced negotiations with CIRCOR (the Debtor's parent company), the Ad Hoc Committee (comprised of counsel for certain holders of Asbestos PI Claims), and the Pre-Petition Future Claimants' Representative (James L. Patton, Jr.) and reached an agreement that is embodied in the Plan.

The Plan contemplates the establishment of a trust under section 524(g) of the Bankruptcy Code (the "Asbestos PI Trust") and an injunction (the "Asbestos PI Channeling Injunction") that will channel all current asbestos-related Claims and future asbestos-related Demands to the Asbestos PI Trust. The Asbestos PI Channeling Injunction will cover all asbestos-related personal injury and wrongful death claims and demands based in whole or in part on the alleged conduct or products of Leslie (the "Leslie Asbestos Claims"). The Asbestos PI Channeling Injunction will also channel all current asbestos-related Claims and future asbestos-related Demands based in whole or in part upon Leslie Asbestos Claims against certain parties related to Leslie, including, but not limited to, past and present affiliates of Leslie, past and present officers and directors of Leslie, predecessors in interest to Leslie, and any entity that owned a financial interest in Leslie or its affiliates or predecessors.

46392/0001-6971070v4

Leslie or Reorganized Leslie, as applicable, and CIRCOR will make contributions to the Asbestos PI Trust as follows on the Effective Date:  Reorganized Leslie will contribute: (i) the Leslie Promissory Note, which provides for the payment of a principal amount of $1 million, with interest, payable in equal quarterly installments over ten years; and (ii) an assignment of any and all rights of Leslie to proceeds under existing insurance policies that provide coverage for Asbestos Personal Injury Claims, and $2,625,000 of the proceeds of the Insurance Settlement Agreement between Leslie and Continental Casualty Company dated April 19, 2010, plus the proceeds, if any, of any other Insurance Settlement Agreement that were received by Leslie on or after January 1, 2010.  CIRCOR will contribute: (i) the CIRCOR Cash in the amount of $74 million; and (ii) a pledge of 100% of the outstanding voting equity interests in Reorganized Leslie as security for the Leslie Promissory Note.

The Plan provides for the Asbestos PI Trust to make distributions on account of all Allowed Asbestos PI Claims asserted by current and future claimants in accordance with specific procedures (the "Asbestos PI Trust Distribution Procedures"), but leaves all other creditors wholly unimpaired.  The Asbestos PI Trust Distribution Procedures establish criteria for the payment of Asbestos PI Claims, including the supporting evidence required to be submitted to establish the process by which Asbestos PI Claims will be reviewed by the Asbestos PI Trust and specify liquidated values for Allowed Claims based on the type and severity of the underlying disease.

## ARGUMENT

### I.    THE DEBTOR WILL SATISFY THE BURDEN OF PROOF UNDER SECTION 1129 OF THE BANKRUPTCY CODE.

To obtain confirmation of the Plan, the Debtor must demonstrate that the Plan satisfies the provisions of section 1129(a) of the Bankruptcy Code by a preponderance of the evidence.

5

11 U.S.C. § 1129(a). In re Armstrong World Indus. Inc., 348 B.R. 111, 120 (Bankr. D. Del. 2006). As set forth below, the Debtor will demonstrate, by a preponderance of the evidence, that all of the subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan. The Debtor also will demonstrate that the Plan meets the requirements of section 524(g) of the Bankruptcy Code.

## II.    THE PLAN COMPLIES WITH SECTION 1129 OF THE BANKRUPTCY CODE.

### A.    The Plan Satisfies the Requirements Under Section 1129(a) of the Bankruptcy Code.

#### 1.    The Plan Complies With All Applicable Provisions of the Bankruptcy Code.

Under section 1129(a)(1) of the Bankruptcy Code, a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). The legislative history of section 1129(a)(1) and case law provide that this provision encompasses the requirements of sections 1122 and 1123 governing classification of claims and contents of the plan, respectively. See H.R. Rep. No. 95-595, at 412 (1977); Kane v. Johns-Manville Corp., 843 F.2d 636, 848-49 (2d Cir. 1988). As demonstrated below, the Plan fully complies with all of the applicable provisions of the Bankruptcy Code as required by section 1129(a)(1), including, without limitation, sections 1122 and 1123.

#### (a)    Classification of Claims and Interests.

Section 1122 of the Bankruptcy Code authorizes multiple classes of claims or interests as long as each claim or interest within a class is substantially similar to other claims or interests in that class. 11 U.S.C. § 1122. Claims or interests in a class need not be identical, but rather should be similar in legal character or effect with respect to the debtor. See, e.g., In re AOV Indus., Inc., 792, F.2d 1140, 150-51 (D.C . Cir. 1986) (affirming plan confirmation where claims

6

guaranteed by third party were grouped in same class as non-guaranteed claims).  Differing

classifications in a plan are proper if there is a sufficient and fair basis for the classification and

the debtor is able to "adduce credible proof of a legitimate reason for separate classification of

similar claims."  In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 757 (Bankr.

S.D.N.Y. 1992) ("Courts have found that the Bankruptcy Code only prohibits the identical

classification of dissimilar claims.  It does not require that similar classes be grouped

together. . . .").

Article III of the Plan provides for separate classification of any right to payment

("Claims") and any right, title and interest of Equity Interests in Leslie ("Equity Interests") in

Classes based upon differences in the legal nature and/or priority of such Claims and Equity

Interests.  The Plan divides Claims against and Equity Interests in the Debtor into these Classes

on the basis of (a) their security position, if any (i.e., secured Claims and unsecured Claims are

separately classified), (b) their legal ranking (i.e., debt obligations are classified separately from

equity interests), and (c) other relevant criteria.

In addition to the Administrative Expense Claims, Priority Tax Claims and the DIP Claim

listed in Article II of the Plan, which are not required to be designated as separate classes, the

Plan designates six (6) Classes of Claims and Equity Interests.  The Claims and Equity Interests

placed in each Class are substantially similar to other Claims and Equity Interests, as the case

may be, in each such Class.  The Debtor's classification of Claims and Equity Interests under the

Plan (a) was not for the purpose of creating a consenting impaired Class under the Plan, and (b)

does not unfairly discriminate between or among holders of Claims or Equity Interests.

Moreover, as discussed below, valid business, factual, and legal reasons exist for separately

7

classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests.

Class 1 consists of Allowed Priority Claims against the Debtor, which include Claims that are granted priority in payment under section 507(a) of the Bankruptcy Code.  Class 1 is unimpaired under the Plan, and each holder of a Priority Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

Class 2 consists of Allowed Secured Claims against the Debtor, including Claims arising under agreements and obligations of Leslie to the extent of the value of any security given by Leslie therefor or obligations secured by the amount of any valid, non-avoidable rights of setoff of the holder under section 553 of the Bankruptcy Code.  Class 2 is unimpaired under the Plan, and each holder of a Secured Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

Class 3 consists of Allowed General Unsecured Claims, which generally include the claims of trade and other business creditors for goods and services provided to Leslie prior to the Commencement Date.  Class 3 is unimpaired under the Plan, and each holder of a General Unsecured Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

Class 4 is comprised of Asbestos PI Claims, which means each of the following: (i) a Leslie Asbestos PI Claim; (ii) an Indirect Asbestos PI Claim; (iii) a Derivative Liability Asbestos PI Claim; and (iv) an Asbestos PI Trust Expense.  Class 4 is impaired under the Plan, and each holder of an Asbestos PI Claim was entitled to vote to accept or reject the Plan to the extent and in the manner provided in Plan and the Solicitation Procedures Order.

46392/0001-6971070v4

Class 5 is comprised of Intercompany Claims, which is any General Unsecured Claim held by an Affiliate of Leslie against Leslie or by Leslie against an Affiliate of Leslie. Class 5 is unimpaired under the Plan, and each holder of a General Unsecured Claim is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

Class 6 is comprised of the Equity Interests in Leslie, all of which are held by CIRCOR. Class 6 is unimpaired under the Plan, and each holder of a Class 6 Equity Interest is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan.

As set forth above, as required by section 1122 of the Bankruptcy Code, each Class of Claims and Equity Interests under the Plan contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within such Class. Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of section 1122 of the Bankruptcy Code.

### (b)    Contents of Plan.

Section 1123(a) of the Bankruptcy Code sets forth eight requirements with which every Chapter 11 plan must comply. 11 U.S.C. § 1123(a). As demonstrated herein, the Plan fully complies with each such requirement.

Article III of the Plan designates Classes of Claims and Classes of Equity Interests as required by section 1123(a)(1). Under the Bankruptcy Code, claims arising under section 507(a)(2), 507(a)(3) or 507(a)(8) need not be classified and must only be designated. Accordingly, Administrative Expense Claims, the DIP Claim and Priority Tax Claims are designated in Article II of the Plan. Article III of the Plan specifies the Classes of Claims that are not impaired under the Plan and Article IV of the Plan specifies the treatment of each Class of Claims and Equity Interests as required by sections 1123(a)(2) and 1123(a)(3), respectively.

9

The treatment of each Claim or Equity Interest in each particular Class is the same as the treatment of each other Claim or Equity Interest in such Class as required by section 1123(a)(4).

Articles VI, VII, VIII and IX and various other provisions of the Plan set forth the means for implementation of the Plan as required by section 1123(a)(5).

Section 1123(a)(6) is satisfied because Section 9.4 of the Plan provides that the Debtor is authorized to adopt the Certificate of Amendment to Certificate of Incorporation and Amendment to By-Laws, which prohibit the issuance of nonvoting equity securities, and the forms of these documents were part of the Plan Supplement.

Section 1123(a)(7) is satisfied because Section 9.3 of Plan contains provisions with respect to the manner of selection of the Asbestos PI Trustee, the Future Claimants' Representative, and the initial members of the Asbestos PI Trust Advisory Committee. As set forth in the Plan Supplement, the Asbestos PI Trustee will be The Honorable Alfred Wolin (ret'd). The initial members of the Asbestos PI Trust Advisory Committee will be: Alan Brayton, John Cooney, Joseph Rice, Mark H. Iola and Steven Kazan. Section 9.6 of Plan and the Plan Supplement identifies the members of the Board of Directors and officers of Reorganized Leslie.

Section 1123(a)(8) is inapplicable here as it applies only when the debtor is an individual, not a corporation.

Section 1123(b) sets forth the permissive provisions that may be incorporated into a Chapter 11 plan. 11 U.S.C. § 1123(b). Each provision of the Plan is consistent with section 1123(b). Specifically, pursuant to Article IV of the Plan, Classes 1, 2, 3, 5 and 6 are rendered unimpaired and Class 4 (Asbestos PI Claims) is impaired. Article IV specifies the treatment of Claims and Equity Interests in those Classes, as contemplated by section 1123(b)(l). Section 7 of

10

the Plan provides for the assumption, assumption and assignment, or rejection, as appropriate, of the executory contracts and unexpired leases of the Debtor not previously assumed, assumed and assigned, or rejected under section 365 of the Bankruptcy Code as contemplated by section 1123(b)(2).

Based upon the foregoing, the Plan complies fully with the requirements of sections 1122 and 1123, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

## 2. The Debtor Has Complied With the Bankruptcy Code.

Section 1129(a)(2) of the Bankruptcy Code requires that the Debtor "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). Section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code. See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure"). Here, the Debtor has complied with the applicable provisions of title 11, including the provisions of sections 1125 and 1126 of the Bankruptcy Code regarding disclosure and plan solicitation.

### (a) Transmittal and Mailing of Materials were Proper and Notice was Adequate.

As fully incorporated herein and set forth in the Motion of the Debtor for an Order Approving (I) the Disclosure Statement; (II) the Solicitation and Voting Procedures; (III) Deadlines and Procedures to File Objections to the Plan; and (V) the Form and Manner of Notice of Confirmation Hearing (the "Solicitation Procedures Motion") [Docket No. 64], which was approved on August 19, 2010 pursuant to the Solicitation Procedures Order, and the Affidavits of

Service found at Docket Nos. 192, 198, 245, 251, 302 and 334 the transmittal and mailing of solicitation materials were proper and notice was adequate. In addition, publication notice as evidenced by the Affidavits of Publication found at Docket Nos. 190, 191, 207, 208 and 248 was adequate and complied with the Solicitation Procedures Order.

### 3.    Plan Modifications Are Non-Material.

On September 13, 2010, the Debtor filed the Plan Modifications that modified Section 9.3 (The Asbestos PI Trust), Section 10.4 (Insurance Neutrality) and Section 13.2 (Retention of Jurisdiction). These modifications were made to address concerns to those provisions raised by counsel to certain asbestos insurance carriers.

Section 1127(a) of the Bankruptcy Code provides:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of the title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

Section 1127(d) provides:

> Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

Bankruptcy Rule 3019, designed to implement § 1127(d), in turn, provides in relevant part that:

> In a . . . chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all

creditors and equity security holders who have previously accepted the plan.

Bankruptcy Rule 3019.

Section 1127 of the Bankruptcy Code gives a plan proponent the right to modify the plan "at any time" before confirmation. This right would be meaningless if the promulgation of any plan modification, ministerial or substantive, adverse to certain claimants or not, necessitated re-soliciting votes. Accordingly, in keeping with traditional bankruptcy practice, courts have typically allowed the proponent to make non-material changes to a plan without any special procedures or vote resolicitation. See, e.g., In re Am. Solar King Corp., 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) ("if a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well") (citation omitted); see also Enron Corp. v. New Power Co. (In re New Power Co.), 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("[T]he bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification *materially and adversely* changes the way that claim or interest holder is treated") (emphasis added); Legend Radio Group, Inc. v. Sutherland (In re Legend Radio Group, Inc.), No. 98-1720, No. 99-1639, No. 99-1640, 2000 U.S. App. LEXIS 6422, at *16 n.6 (4th Cir. Apr. 7, 2000) (in defining "modification" in appeal involving post-confirmation plan modification under section 1127(b), relying on language in section 222 of former Bankruptcy Act, which engendered current Bankruptcy Rule 3019 and permitted pre-confirmation modification without resolicitation if modification "does not *materially and adversely* affect the interests of creditors") (emphasis added); In re Mt. Vernon Plaza Comm. Urban Redev. Corp. I, 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987) (all creditors were deemed to have accepted plan as

13

modified because "[n]one of the changes negatively affects the repayment of creditors, the length of the [p]lan, or the protected property interests of parties in interest").

The Plan Modifications do not materially affect the way any claim or interest holder is treated. Accordingly, the requirements of section 1127(d) of the Bankruptcy Code have been met and the resolicitation of votes is not required.

### 4.    The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law.

Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). "[F]or purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." In re PWS Holding Corp., 228 F.3d 224, 242 (3d Cir. 2000); see also In re Century Glove, Inc., Civ. A. Nos. 90-400-SLR, 90-401 -SLR, 1993 WL 239489, at *4 (D. Del. Feb. 10, 1993) ("Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of section 1129(a)(3) is satisfied."); see also In re Coram Healthcare Corp., Inc., 271 B.R. 228, 234 (Bankr. D. Del. 2001) ("The good faith standard requires that the plan be proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code") (citations omitted).

In the "context of a [c]hapter 11 plan, courts have held [that] a plan is to be considered in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code." In re PPI Enters. (US.), Inc., 228 B.R. 339, 347 (Bankr. D. Del 1998) (quoting In re Toy & Sports Warehouse, Inc., 37 B.R. at 149); Greer v. Gaston & Snow (In re Gaston & Snow), Nos. 93 Civ. 8517 (JGK), 93 Civ. 8628 (JGK), 1996

WL 694421, at *9 (S.D.N.Y. Dec. 4, 1996) ("failure to propose a plan in good faith occurs when the Plan is not proposed with honesty, good intentions, and to effectuate the reorganization of the enterprise, but rather for some other motive") (citations omitted); see also In re Leslie Fay Cos., Inc., 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997).

Here, the Plan accomplishes this goal by providing the means through which the Debtor may resolve the Asbestos PI Claims and continue to operate as a viable entity. The Plan establishes the Asbestos PI Trust, described below, through which all Asbestos PI Claims will be satisfied.

The Asbestos PI Trust will allow the holders of Asbestos PI Claims to realize the highest possible recoveries under the circumstances. The Plan is the result of extensive arms-length negotiations among (i) the Debtor, CIRCOR, the Ad Hoc Committee and the Pre-Petition Future Claimants' Representative prior to the Petition Date and (ii) the Debtor, CIRCOR, the Committee and the Future Claimants' Representative after the Petition Date. The overwhelming support of the Plan by the holders of Asbestos PI Claims reflects their acknowledgment that the Plan provides fundamental fairness to the parties holding Asbestos PI Claims. Inasmuch as the Plan promotes the objectives and purposes of the Bankruptcy Code, the Plan has been filed in good faith and the requirements of section 1129(a)(3) are satisfied.

### 5.    The Plan Provides that Payments Made by the Debtor for Services or Costs and Expenses are Subject to Court Approval.

Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Court as reasonable. 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be

subject to review and approval as to their reasonableness by the Court.  See In re Calpine Corp.,

No. 05-60200, 2007 WL 4565223, at *12 (Bankr. S.D.N.Y. Dec. 19, 2007); In re River Village

Assocs., 161 B.R. 127, 141 (Bankr. E.D. Pa. 1993); In re Resorts Int'l, 145 B.R. 412, 475

(Bankr. D.N.J. 1990); In re Elsinore Shore Associates, 91 B.R. 238, 267-68 (Bankr. D. N.J.

1988).

Pursuant to this Court's Order Establishing Procedures For Interim Compensation and

Reimbursement Of Expenses For Professionals And Committee Members, dated August 9, 2010

[Docket No. 116], this Court has authorized and approved the payment of certain fees and

expenses of professionals retained in this case.  All such fees and expenses, as well as all other

accrued fees and expenses of professionals through the Effective Date, remain subject to final

review for reasonableness by the Court under section 330.  In addition, pursuant to sections

503(b)(3) and (4), the Court must review any application for substantial contribution to ensure

compliance with the statutory requirements and that the fees requested are reasonable.

The foregoing procedures for the Court's review and ultimate determination of the fees

and expenses to be paid by the Debtor satisfy the objectives of section 1129(a)(4).  See Elsinore

Shore, 91 B.R. at 268 (requirements of section 1129(a)(4) satisfied where plan provided for

payment of only "allowed" administrative expenses).  Based upon the foregoing, the Plan

complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

> **6.      The Debtor Has Disclosed All Necessary Information Regarding Directors, Officers, and Insiders.**

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the

identity and affiliations of the proposed officers and directors of a reorganized debtor; that the

appointment or continuance of such officers and directors be consistent with the interests of

creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtor. 11 U.S.C. § 1129(a)(5). The Debtor has satisfied the foregoing requirements. Section 9.6 of Plan and the Plan Supplement identifies the members of the Board of Directors and officers of Reorganized Leslie, and the appointment to, or continuance in, such offices of such person is consistent with the interests of holders of Claims against and Equity Interests in the Debtor and with public policy. The identity of any insider that will be employed or retained by Reorganized Leslie and the nature of such insider's compensation have also been fully disclosed, to the extent applicable in the Plan Supplement. The continued employment of the officers and directors of the Debtor as contemplated by the Plan has the support of the Debtor, the Future Claimants' Representative and the Committee and thus satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

### 7.    The Plan Does Not Contain Rate Changes Subject to the Jurisdiction of Any Governmental Regulatory Commission.

Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by the reorganized debtor in the operation of its businesses approve any rate change provided for in the plan. 11 U.S.C. § 1129(a)(6). This provision is inapplicable in the instant case. The Plan does not provide for rate changes subject to the jurisdiction of any governmental regulatory agency by Reorganized Leslie. Hence, regulatory approval is unnecessary under the terms of the statute.

### 8.    The Releases, Injunctions and Exculpation Provisions In The Plan Are Appropriate.

Section 1123(b)(6) of the Plan provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of the [Bankruptcy Code]." In

17

accordance with section 1123(b)(6) of the Bankruptcy Code, Article XI of the Plan contains certain release, exculpation and injunction provisions in favor of the Debtor and certain Release Parties.[3]  These provisions should be approved because they are fair and reasonable, supported by valuable consideration and essential to the reorganization and realization of substantial value for the benefit of the parties in interest in this Chapter 11 Case.

The Plan's exculpation provision is appropriate and vital under the circumstances of the Chapter 11 Case because it provides protection to those interested parties that were essential to the development of the Plan, the prosecution of this case and who exercised good faith in negotiating and implementing the restructuring.  The Third Circuit has held that exculpation provisions similar to that proposed in the Plan are appropriate where – as is the case here – the exculpated parties have acted in good faith in negotiating and implementing a Chapter 11 Plan and prosecuting this case.  See In re PWS Holding Corp., 228 F.3d 224, 246-47 (3d Cir. 2000) (observing that creditors providing services to the debtors are entitled to a "limited grant of immunity … for actions within the scope of their duties … .").

Likewise, the release and injunction provisions in the Plan are fair and necessary under the circumstances of the Chapter 11 Case.  Specifically, the Plan includes a release by the Debtor Released Parties of the Released Parties, a release by the Non-Debtor Released Parties of Released Parties and a release by holders of claims and equity interests of the Released Parties. The Released Parties share an identity of interest with the Debtor in seeing the Plan succeed and

---

[3] The Released Parties include:  (a) the Debtor; (b) Reorganized Leslie; (c) the Ad Hoc Committee; (d) the Committee; (e) the CIRCOR Related Parties; (f) the Watts Related Parties; (g) the DIP Lender; (h) the Pre-Petition Future Claimants' Representative; (i) the Future Claimants' Representative; (j) the Asbestos Protected Parties; (l) any current or former Representative of each of the foregoing and (m) for each of the foregoing Entities, such Entity's current and former principals, employees, agents, officers, directors, financial advisors, attorneys, investment bankers, accountants, consultants and other professionals, agents and any of their successors and assigns.

18

the Debtor reorganize, and the Released Parties have made substantial contributions to the

Debtor's reorganization. Furthermore, such releases are integral components of the Plan and

absent such releases, it is unlikely that the Debtor would be able to confirm a Plan, as CIRCOR's

willingness to provide the CIRCOR Asbestos PI Trust Contribution and enter into the CIRCOR

Pledge that make up a substantial component of the assets for distribution to holders of Class 4

(Asbestos PI Claims) is contingent upon the granting of such releases. The release of the Debtor

Released Parties[4] is necessary as those entities provided a substantial contribution to the Debtor's

reorganization either prior to the Chapter 11 filing or during the Chapter 11 case or will assist

with the implementation of the Debtor's reorganization after the Effective Date. There has been

an overwhelming acceptance of the releases as reflected by the fact that the only holders of

claims not deemed to accept the Plan, the holders of Class 4 (Asbestos PI Claims), voted as a

class to accept the Plan and will receive a distribution as provided under the Plan and the

Asbestos PI Trust Distribution Procedures. Accordingly, the releases meet the legal standards of

fairness and necessity to the Debtor's reorganization required to justify such releases in light of

the factual circumstances of this Chapter 11 Case. See Gillman v. Continental Airlines (In re

Continental Airlines), 203 F.3d 203, 214 (3d Cir. 2000); In re Zenith Electronics Corp., 241 B.R.

92, 110 (Bankr. D. Del. 1999).

---

[4] The Debtor Released Parties include: the Debtor, Reorganized Leslie, the officers, directors and employees of the Debtor who were either serving in such capacities as of the Confirmation Date, or who had served in such capacities during the Chapter 11 Case, the officers, directors and employees of Reorganized Leslie serving in such capacity after the Effective Date and the Debtor's and Reorganized Leslie's former officers and directors, principals, employees, agents, financial advisors, attorneys, investment bankers, accountants, consultants and other professionals, agents and any of their successors and assigns.

19

9.    **The Plan Is in the Best Interests of All Creditors**
**of and Equity Interest Holders.**

Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of

creditors and equity interest holders.  This "best interests" test focuses on individual dissenting

creditors than classes of claims.  See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St.

P'ship, 526 U.S. 434, 442, n. 13 (1999).  The best interests test requires that each holder of a

claim or equity interest either accept the plan or receive or retain under the plan property having

a present value, as of the effective date of the plan, not less than the amount such holder would

receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  11

U.S.C. § 1129(a)(7).

"[U]nder the bests interests test, the court must find that each [dissenting] creditor will

receive or retain value that is not less than the amount he [or she] would receive if the debtors

were liquidated" as of the effective date of the Plan.  In re Leslie Fay Co., 207 B.R. at 787; see

also In re Am. Family Enters., 256 B.R. 377, 403 (D.N.J. 2000).

Pursuant to section 1126(f) of the Bankruptcy Code, a class that is unimpaired under a

plan is conclusively deemed to have accepted the plan.  Here, Class 1 (Other Priority Claims),

Class 2 (Secured Claims), Class 3 (General Unsecured Claims, Class 5 (Intercompany Claims)

and Class 6 (Equity Interests in Leslie) are unimpaired under the Plan and, therefore, section

1129(a)(7) is not implicated.  Class 4 (Asbestos PI Claims), the only impaired classes entitled to

vote on the Plan, has overwhelmingly voted to accept the Plan.

With respect to those holders of Class 4 (Asbestos PI Claims) that did not vote to accept

the Plan, the Liquidation Analysis attached as Appendix D to the Disclosure Statement and the

Chapter 11 Recovery Analysis attached as Appendix E to the Disclosure Statement establishes

that the best interests test is satisfied.  In either the low or high recovery analysis illustrated,

confirmation of the Plan will provide holders of Class 4 (Asbestos PI Claims) with a recovery that is greater than those creditors would receive in a liquidation in a hypothetical Chapter 7 case. Creditors will receive a better recovery through the distributions contemplated by the Plan because, among other things, substantially more assets will be available under the Plan through the contributions of Leslie and CIRCOR to the Asbestos PI Trust as part of the Plan. In addition, as set forth in the Liquidation Analysis, the increased costs associated with a liquidation under Chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee.

Confirmation of the Plan and the establishment of the Asbestos PI Trust provides each holder of a Class 4 (Asbestos PI Claim) that voted to reject the Plan with a recovery that is significantly better than such holder would receive in a Chapter 7 liquidation of the Debtor. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### 10.   Acceptance by Impaired Classes

Section 1129(a)(8) of the Bankruptcy Code requires that each class of impaired claims or interests accept the plan, as follows: "With respect to each class of claims or interests - (A) such class has accepted the plan; or (13) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).

Here, Classes 1, 2, 3, 5, and 6 are unimpaired and Class 4, the only impaired class, has overwhelmingly accepted the Plan. Therefore, the requirements of section 1128(a)(8) of the Bankruptcy Code are satisfied.

**11.    The Plan Provides for Payment in Full of All
Allowed Priority Claims.**

Section 1129(a)(9) of the Bankruptcy Code requires that persons holding allowed claims

entitled to priority under section 507(a) receive specified cash payments under the plan.  Unless

the holder of a particular claim agrees to a different treatment with respect to such claim, section

1129(a)(9) of the Bankruptcy Code sets forth the treatment the plan must provide.  11 U.S.C.

§ 1129(a)(9).

Pursuant to Section 2.1 of the Plan, and in accordance with sections 1129(a)(9)(A) and

(B), all Allowed Administrative Expense Claims will be paid in full, in Cash, on, or as soon

thereafter as is reasonably practicable, the latest of (a) the Effective Date, (b) the first Business

Day after the date that is thirty calendar days after the date the Administrative Expense Claim

becomes an Allowed Administrative Expense Claim, and (c) the date the Allowed

Administrative Expense Claim becomes due and payable according to its terms.  Pursuant to

Section 4.1 of the Plan, all Allowed Priority Claims under section 507(a) (excluding Priority Tax

Claims under section 507(a)(8) described below) will be paid in full, in Cash, on, or as soon

thereafter as reasonably practicable, the later of the Effective Date and the date the Priority

Claim becomes an Allowed Priority Claim.

Section 2.2 of the Plan provides that Reorganized Leslie, in its sole discretion, may

choose whether Allowed Priority Tax Claims will be paid either in full in Cash or in installment

payments in Cash on the latest of the Effective Date, the date such Priority Tax Claim becomes

an Allowed Claim, or as soon thereafter as practicable.  Installment payments must be paid over

a period ending not later than five years after the Commencement Date of the Plan in a manner

not less favorable than the most favored nonpriority General Unsecured Claim provided for by

the Plan.

46392/0001-6971070v4

Section 2.3 of the Plan provides that, on the Effective Date, the Allowed DIP Claim shall be paid in Cash on the Effective Date.

Accordingly, section 1129(a)(9) is satisfied.

### 12.    At Least One Class of Impaired Claims Has Accepted the Plan.

As required by section 1129(a)(10) of the Bankruptcy Code, at least one Class of Claims or Equity Interests that is impaired under the Plan has accepted the Plan, not counting the acceptance of insiders.  As set forth above and in the Voting Declaration, Class 4 (Asbestos PI Claims), which was impaired and entitled to vote under the Plan, accepted the Plan.  The holders of such Claims are not insiders as defined by section 101(31) of the Bankruptcy Code, and as such the acceptance by this class satisfies section 11129(a)(10) of the Bankruptcy Code.

### 13.    The Plan Is Not Likely to be Followed by Liquidation or the Need for Further Financial Reorganization.

Section 1129(a)( 11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation.  As described below, and as demonstrated in the Disclosure Statement, the Plan is feasible within the meaning of this provision.  The feasibility test set forth in section 1129(a)(11) requires the Court to determine whether the Plan is workable and has a reasonable likelihood of success.  See United States v. Energy Res. Co., 495 U.S. 545, 549 (1990); IRS v. Kaplan (In re Kaplan), 104 F.3d 589, 597 (3d Cir. 1997); see also In re U.S. Truck Co., 47 B.R. 932, 944 (E.D. Mich. 1985), aff'd, 800 F.2d 581 (6th Cir. 1986) ("Feasibility does not, nor can it, require the certainty that a reorganized company will succeed."); In re Adelphia Bus. Solutions, Inc., 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003); In re Sound Radio, Inc., 103 B.R. 521, 523 (D.N.J. 1989), aff'd, 908 F.2d 964 (3rd Cir. 1990); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 762 (Bankr. S.D.N.Y.

23

1992) ("It is not necessary that success be guaranteed, but only that the plan present a workable scheme of organization and operation from which there may be a reasonable expectation of success.") (quotations omitted); In re Texaco, 84 B.R. 893, 910 (Bankr. S.D.N.Y. 1988) ("All that is required is that there be reasonable assurance of commercial viability.").

As described below and as set forth in the Disclosure Statement, the Plan is feasible within the meaning of section 1129(a)(11) of the Bankruptcy Code.

Courts have identified the following factors as probative: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. Toy & Sports Warehouse, 37 B.R. 141, 151 (Bankr. S.D.N.Y. 1984) (citing In re Landmark at Plaza Park, Ltd., 7 B.R. 653, 659 (Bankr. D.N.J. 1980)); Resorts Int'l, 145 B.R. at 479; see also Texaco, 84 B.R. 893 at 910.

For purposes of determining whether the Plan satisfies the above-described feasibility standards, the Debtor has analyzed its ability to fulfill its obligations under the Plan, and submits that (i) the Plan allows for an expeditious resolution of the Debtor's Chapter 11 Case and emergence to maximize the value of the Debtor's estate; (ii) the Plan allows the Debtor to resolve its Asbestos PI Claims through the Asbestos PI Channeling Injunction; (iii) the provisions of the Plan can and will be performed; and (iv) consummation of the Plan will not be followed by the liquidation or need for further financial reorganization of Reorganized Leslie.

Leslie commenced this Chapter 11 Case to preserve and contribute its remaining assets to a section 524(g) trust for the benefit of its present holders and future demand holders of Asbestos

PI Claims. Leslie's asbestos liability is what led to the commencement of this case. As of the Petition Date, Leslie had approximately 1,307 pending Asbestos PI Claims.

The Asbestos PI Channeling Injunction contemplated by the Plan establishes a single means of dealing with Asbestos PI Claims. Each holder of an Asbestos PI Claim shall be enjoined from taking legal action against Leslie, Reorganized Leslie, the CIRCOR Related Parties, or any Watts Related Parties, for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery with respect to such Asbestos PI Claim. The Asbestos PI Channeling Injunction will channel all current and future Asbestos PI Claims to the Asbestos PI Trust. The Asbestos PI Channeling Injunction and the Asbestos PI Trust ensure the Debtor's long-term success.

With respect to the Debtor's ability to conduct an ongoing business after confirmation, the Plan provides that Reorganized Leslie will have operations that will enable it to generate sufficient income to continue as a going concern and meet its various obligations under the Plan and in the ordinary course of its business post-Effective Date. The Debtor prepared Reorganized Leslie's Projections attached as Exhibit C to the Disclosure Statement (the "Projections") relating to the financial performance that could be reasonably anticipated from the operations of Reorganized Leslie after the Effective Date. The Projections analyze the ability of the Reorganized Leslie to meet its obligations under the Plan and to maintain sufficient liquidity and capital resources to conduct its business. The Projections indicate that the Reorganized Leslie should have sufficient cash flow to fund its operations for five years following the Effective Date of the Plan.

The foregoing and the Projections demonstrate that Reorganized Leslie will be able to make all payments required pursuant to the Plan and sustain Reorganized Leslie as a viable

46392/0001-6971070v4

operating entity.  Therefore, confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization of Reorganized Leslie and, thus, the Plan satisfies the feasibility standard of section 1129(a)( ii) of the Bankruptcy Code.

### 14.    All Statutory Fees Have Been or Will Be Paid.

Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 [title 28, the United States Code], as determined by the court at the hearing on confirmation of the plan." 11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930,] chapter 123 of title 28" are afforded priority as administrative expenses.  Id. § 507(a)(1).  In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, the Plan provides that all such fees and charges payable will be paid on or before the Effective Date and thereafter as may be required.  See Plan § 14.12.

### 15.    The Plan Adequately and Properly Treats Retiree Benefits.

Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.  Pursuant to section 7.5 of the Plan, the Reorganized Leslie will continue to pay all retiree benefits of the Debtor (within the meaning of section 1114 of the Bankruptcy Code), if any, at previously established levels. Therefore, the Plan meets the requirements of section 1129(a)(13) of the Bankruptcy Code.

### III.    THE PLAN SATISFIES THE REQUIREMENTS FOR ENTRY OF THE ASBESTOS PI CHANNELING INJUNCTION UNDER SECTION 524(g) OF THE BANKRUPTCY CODE.

The Plan satisfies the Bankruptcy Code's requirements for entry of a Channeling Injunction in favor of Leslie and the Protected Parties.  Accordingly, the Debtor requests that the

26

Bankruptcy Court enter, in connection with confirmation of the Plan, the Asbestos PI Channeling Injunction under section 524(g) of the Bankruptcy Code.

**A.**    **The Asbestos PI Trust Satisfies the Structure and Funding Requirements of Section 524(g)(2)(B)(i) of the Bankruptcy Code.**

Section 524(g)(1)(A) authorizes a court to enter, in connection with confirmation of a plan of reorganization, an injunction to enjoin entities from taking legal action to recover, directly or indirectly, payment for asbestos-related claims or demands if the plan of reorganization establishes a trust to resolve and pay such claims. To support the Court's entry of such an injunction, the trust to which such claims and demands are channeled must meet the structure and funding requirements of section 524(g)(2)(B)(i) of the Bankruptcy Code. For the reasons set forth below, the Asbestos PI Trust comports with those requirements.

**1.**    **The Trust Will Assume the Asbestos-Related Liabilities of the Debtor as Required by Section 524(g)(2)(B)(i)(I).**

In order to receive a 524(g) Channeling Injunction, section 524(g)(2)(B)(i)(I) requires that an asbestos-claims trust assume the liabilities of a debtor that, as of the petition date, has been named as a defendant in actions to recover damages for asbestos-related claims. As explained in detail in the Disclosure Statement, Leslie has been named as defendant in a number of lawsuits for Asbestos PI Claims. See Disclosure Statement, Article II.B.

The purpose of the Asbestos PI Trust to be created under the Plan is to assume all of Leslie's liabilities arising from Asbestos PI Claims. See Plan, Section 9.3. Accordingly, the Asbestos PI Trust meets this requirement because, on the Effective Date, the Asbestos PI Trust will assume all liability and responsibility for all Asbestos PI Claims. Id.

27

2.    **The Trust Will be Funded in Part by Securities**
**of the Debtor as Required by Section**
**524(g)(2)(B)(i)(II).**

In order for the Asbestos PI Trust to continue to be able to process and pay the current and future Asbestos PI Claims, section 524(g)(2)(B)(i)(II) requires that an asbestos-claims trust "be funded in whole or in part by the securities of 1 or more of the debtors involved in such plan and by the obligation of such debtor or debtors to make future payments, including dividends."

This requirement is satisfied here because the Asbestos PI Trust will be funded, in part, by the securities of Leslie and by the obligation of Leslie to make future payments. On the Effective Date, Leslie will execute and deliver to the Asbestos PI Trust a Promissory Note for the payment of a principal amount of $1,000,000.00. The Promissory Note is a security of Leslie within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(49). Further, under the express terms of the Promissory Note, Leslie is required to make quarterly payments to the Trust. Thus, under the Plan, the Trust will "funded in whole or in part by the securities" of Leslie and by "the obligation of [Leslie] to make future payments," thereby satisfying the plain language of Section 524(g)(2)(B)(i)(II). See In re G-1 Holdings, Inc., 420 B.R. 216, 271 (D.N.J. 2009) (finding Section 524(g)(2)(B)(i)(II) satisfied when the debtor funded the Asbestos Trust with a note payable in quarterly installments); In re Quigley, 2010 WL 3528818, *26-27 (Bankr. S.D.N.Y. Sept. 8, 2010) (holding that Section 524(g)(2)(B)(i)(II) should be applied according to its plain terms); In re USG Corp., No. 01-2094 (Bankr. D. Del. June 15, 2006) (confirmed plan involved promissory note); In re ABB Lummus, No. 06-10401 (Bankr. D. Del. June 29, 2006) (trust funded by interest-bearing note).

28

3.    **If Specified Contingencies Occur, the Trust Has the Right to Own a Majority of the Membership Interests of the Debtor as Required by Section 524(g)(2)(B)(i)(III).**

Section 524(g)(2)(B)(i)(III) requires that, pursuant to the plan, the Asbestos PI Trust "is to own, or by the exercise of rights granted under such plan would be entitled to own if specified contingencies occur, a majority of the voting shares of – (aa) each such debtor; (bb) the parent corporation of each such debtor; or (cc) a subsidiary of each such debtor that is also a debtor." This requirement is satisfied here.

On the Effective Date, CIRCOR, Reorganized Leslie, and the Asbestos PI Trust will enter into the Pledge Agreement pursuant to which CIRCOR will grant the Asbestos PI Trust a security interest in 100% of the outstanding voting equity interests in Reorganized Leslie as security for Leslie's obligations under the Leslie Promissory Note. See Disclosure Statement Article VII.B. Thus, section 524(g)(2)(B)(i)(III) is satisfied because the Asbestos PI Trust will be entitled to own the majority of the voting shares of the Debtor upon the occurrence of certain contingencies provided for in the Promissory Note.

This structure is common among other asbestos claims trusts and one that courts regularly find satisfies the statutory prerequisites of section 524(g)(2)(B)(i)(III). See, e.g., In re J.T. Thorpe Co., Case No. 02 41487 H5 11 (Bankr. S.D. Tex.) (parent pledged all of its interest in the reorganized debtor in order to secure a promissory note given to asbestos claims trust); In re Mid Valley, Inc., et al., Case No. 03 35592 (Bankr. W.D. Pa.) (parent pledged 51% of the issued and outstanding equity interests of the reorganized debtor to secure a promissory note given to asbestos claims trust); In re USG Corp., Case No. 01 2094 (Bankr. D. Del.) (reorganized debtor entered into a promissory note with asbestos claims trust, which provided that upon an event of default and demand by the asbestos claims trust, recognized debtor would pledge 51%

29

of the aggregate voting power of all outstanding shares of reorganized debtor); In re ABB

Lummus Global Inc., Case No. 06 10401 (Bankr. D. Del.) (parent pledged 51% of all issued and

outstanding shares of debtor's capital stock as security promissory note to the asbestos claims

trust).

**4.      The Asbestos PI Trust Will Use its Assets to Pay
Asbestos PI Claims and Future Demands as
Required by Section 524(g)(2)(B)(i)(IV).**

Section 524(g)(2)(B)(i)(IV), which requires a plan under which the asbestos claims trust

"is to use its assets or income to pay claims and demands," is also satisfied.  Under the Plan, the

Asbestos PI Trust will assume liability and responsibility for Asbestos PI Claims and Demands.

See Plan, Section 9.3.  Further, the Asbestos PI Trust will use its assets to pay Claims and

Demands in accordance with the Plan, the Asbestos PI Trust Agreement, the Asbestos PI Trust

Distribution Procedures, and the Confirmation Order.  See Plan Exhibits A and C.  Thus, the

requirements of subsection (IV) are satisfied.

Accordingly, based on the foregoing provisions of the Plan and other applicable

documents, the Asbestos PI Trust satisfies the structure and funding requirements of an asbestos-

claims trust set forth in section 524(g)(2)(B)(i) of the Bankruptcy Code.

**B.      The Record Amply Supports the Determinations
Required Under Section 524(g)(2)(B)(ii) of the
Bankruptcy Code.**

To support the issuance of a channeling injunction under section 524(g)(1)(A), section

524(g)(2)(B)(ii) of the Bankruptcy Code requires the Court to make certain specified

determinations.  The record provides ample support for the Court to make each such finding.

30

1.    **The Debtor is Likely to be Subject to Substantial**
      **Future Demands as Required by Section**
      **524(g)(2)(B)(ii)(I).**

First, a court must find that "the debtor is likely to be subject to substantial future demands for payment arising out of the same or similar conduct or events that gave rise to the claims that are addressed by the injunction." 11 U.S.C. § 524(g)(2)(B)(ii)(I).

Leslie's history and the nature of asbestos-related litigation support this finding in connection with confirmation of the Plan. Although Leslie ceased distributing any products that included asbestos-containing component parts in the late 1980s (and for certain products covered by military specifications, the early 1990s), asbestos-related personal injury or wrongful death claims based on Leslie's historical operations began to be filed against Leslie from 2000 to 2002, and have increased significantly from 2005 to the present. As of August 20, 2010, Leslie was a named defendant in approximately 1,340 pending Asbestos PI Claims. See Disclosure Statement, Article II.B. Further, numerous claims were being filed each month throughout the period leading up to the Petition Date.

Based on the long latency period of asbestos-related disease and the substantial number of asbestos-related personal injury lawsuits asserted against Leslie during an extended period of years and continuing as of the Petition Date, Leslie likely will be subject to substantial future Demands for payment arising from the same conduct or events that gave rise to Asbestos PI Claims, which supports that finding required by section 524(g)(2)(B)(ii)(I).

2.    **The Amounts, Numbers, and Timing of Future**
      **Demands Cannot Be Determined as Required by**
      **Section 524(g)(2)(B)(ii)(II).**

Section 524(g)(2)(B)(ii)(II) of the Bankruptcy Code requires that a court find that "the actual amounts, numbers, and timing of such future demands cannot be determined." Due to

31

risk-based nature of asbestos-related diseases, the long latency period for such diseases, the

substantial historical sales of Leslie's products at issue in the asbestos litigation, the substantial

but variable number of asbestos-related personal injury lawsuits that had been asserted against

Leslie during an extended period of years and continuing as of the Petition Date, and the history

of the asbestos litigation, it is clear that the amounts, numbers, and timing of future Demands

against Leslie cannot be determined.

> ### 3. Pursuit of Asbestos PI Claims Outside the Procedures Set Forth in the Plan Would Jeopardize the Plan's Purpose to Deal Equitably with Asbestos PI Claims and Future Demands as Required by Section 524(g)(2)(B)(ii)(III).

Section 524(g)(2)(B)(ii)(III) of the Bankruptcy Code requires a finding that "pursuit of

such [future asbestos-related] demands outside the procedures prescribed by such plan is likely

to threaten the plan's purpose to deal equitably with claims and future demands." Here, pursuit

of asbestos claims outside the procedures prescribed by the plan is likely to make it impossible to

deal equitably with present claims and future demands. Leslie lacks sufficient assets to pay in

full both its pending claims and its anticipated future demands. As such, allowing present

claimants to pursue claims in the tort system would make it impossible to deal equitably with

future claimants. See Disclosure Statement, Article I.B-D. Future claimants would have no

recourse other than to pursue claims against CIRCOR or Watts, but no Court has ever imposed

liability on either CIRCOR or Watts for Leslie's asbestos-related liabilities and any such claims

would, at a minimum, face very substantial hurdles and be highly speculative. Accordingly, the

pursuit of asbestos-related Demands against Leslie outside the Asbestos PI Trust Distribution

Procedures contemplated by the Plan would likely threaten the Plan's purpose to deal equitably

46392/0001-6971070v4

with Asbestos PI Claims, including future Demands, which supports the finding required in section 524(g)(2)(B)(ii)(III).

4.      **The Terms of the Asbestos PI Channeling Injunction Are Set Forth in the Plan and Disclosure Statement, and a Separate Class of Asbestos Claimants Voted in Favor of the Plan by At Least 75% of those Voting, as Required by Section 524(g)(2)(B)(ii)(IV).**

Section 524(g)(2)(B)(ii)(IV)(aa) of the Bankruptcy Code requires the Court to find that, as part of the confirmation process, the terms of the channeling injunction proposed, including "any provisions barring actions against third parties," are set forth in the plan of reorganization and the disclosure statements in support of the plan.  Here, the terms of the channeling injunction, including the provisions that will bar actions against third parties, are clearly set forth in both the Plan and the Disclosure Statement, and are referenced on the front page of each document.  See Plan, Art. XI; Disclosure Statement, Article VII.

524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code requires the Court to find that "a separate class or classes of the claimants whose claims are to be addressed by a trust described in clause (i) is established and votes, by at least 75 percent of those voting, in favor of the plan."  Leslie designated a separate class, Class 4 under the Plan, for all Asbestos PI Claims.  See Plan, Art. IV.  The Voting Declaration establishes that Class 4 claimants voted, by more than 75 percent of those voting, in favor of the Plan.

5.      **Trust Distribution Procedures Provide Reasonable Assurance That the Trust Will be in Position to Value and Pay Asbestos PI Claims and Future Demands, as Required by Section 524(g)(2)(B)(ii)(V).**

Finally, Section 524(g)(2)(B)(ii)(V) of the Bankruptcy Code requires a court to find that:

46392/0001-6971070v4

> the trust will operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present claims and future demands, or other comparable mechanisms, that provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner.

Here, as set forth in Section 9.3 of the Plan, the Asbestos PI Trust will pay Asbestos PI Claims in accordance with the Asbestos PI Trust Distribution Procedures. These procedures contain mechanisms that provide reasonable assurance that the Asbestos PI Trust will value, and be in a financial position to pay, present holders of Asbestos PI Claims and future asbestos-related Demands that involve similar claims in substantially the same manner.

For example, the Asbestos PI Trust Distribution Procedures establish a schedule of seven asbestos-related diseases, along with specific liquidated values, anticipated average values and caps on liquidated values, to further the Asbestos PI Trust's goal of paying claimants "over time as equal a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system." See Asbestos PI Trust Distribution Procedures (attached as Exhibit C to Plan), § 2.1. Payments to holders of Asbestos PI Claims for all but one of the seven asbestos-related diseases will be based on the liquidated value of such claim times the Payment Percentage then in effect. Id. The initial Payment Percentage will be set at 40% upon establishment of the Asbestos PI Trust and periodically will be reevaluated based on current estimates of the Asbestos PI Trust's assets and liabilities, as well as the estimated value of pending and projected future claims. Id. at § 2.3.

Accordingly, the Asbestos PI Trust Distribution Procedures to be used by the Asbestos PI Trust, which include mechanisms such as supplemental payments, pro rata distributions, matrices and periodic review of estimates of the numbers and values of present Asbestos PI claims and

34

future asbestos-related Demands, provide reasonable assurance that the Asbestos PI Trust will value and be in a financial position to pay present holders of Asbestos PI Claims and future asbestos-related Demands in substantially the same manner.  As a result, the Plan and the Asbestos PI Trust Distribution Procedures contemplated therein support the findings required in section 524(g)(2)(B)(II)(V).

  **C.**  **The Court May Extend the Asbestos PI Channeling Injunction to the Protected Parties, Pursuant to Section 524(g)(4)(A)(ii).**

  Section 524(g)(4)(A)(ii) of the Bankruptcy Code designates certain entities that may be protected by a channeling injunction entered pursuant to section 524(g)(1)(A).  It provides that a channeling injunction entered pursuant to section 524(g)(1)(A) may bar any action directed against a third party who is identifiable from the terms of such injunction (by name or as part of an identifiable group) and is alleged to be directly or indirectly liable for the conduct of, claims against, or demands on the debtor to the extent such alleged liability of such third party arises by reason of-

    (I) the third party's ownership of a financial interest in the debtor, a past or present affiliate of the debtor, or a predecessor in interest of the debtor;

    (II) the third party's involvement in the management of the debtor or a predecessor in interest of the debtor, or service as an officer, director or employee of the debtor or a related party;

    (III) the third party's provision of insurance to the debtor or a related party; or

    (IV) the third party's involvement in a transaction changing the corporate structure, or in a loan or other financial transaction affecting the financial condition, of the debtor or a related party, including but not limited to-

      (aa) involvement in providing financing (debtor or equity), or advice to an entity involved in such a transaction; or

35

> (bb) acquiring or selling a financial interest in an entity as part of such a transaction.

11 U.S.C. § 524(g)(4)(A)(ii). Article XI of the Plan provides that the Asbestos PI Channeling

Injunction will bar certain actions against any Asbestos Protected Party. In addition to the

Debtor and the Reorganized Debtor, the Plan defines Asbestos Protected Party to include:

> Leslie, Reorganized Leslie, any of the CIRCOR Related Parties or Watts Related Parties, or any other Asbestos Protected Party, or their respective property, for the purpose of directly or indirectly collecting, recovering, or receiving payment or recovery relating to such Asbestos PI Claims.

Plan, Section 11.7.

Thus, as required by section 524(g)(4)(A)(ii), each Asbestos Protected Party under the Plan is

either identifiable from the definition or is a member of an identifiable group. Moreover, each of

the Leslie Affiliates, CIRCOR Affiliates, and Watts Affiliates is individually listed by name on

Schedules 1, 2, and 3. Accordingly, they are identifiable.

Further, as set forth in the Plan, the Asbestos PI Claims against the Protected Parties that

are subject to the Channeling Injunction arise by reason of the Protected Party's "ownership of a

financial interest in the debtor," "involvement in the management of the debtor," and/or "loan or

other financial transaction affecting the financial condition, of the debtor or a related party," as

required by section 524(g)(4)(A)(ii). The theories against the CIRCOR Related Parties and

Watts Related Parties subject to the Channeling Injunction arise from theories of derivative

liability such as "alter ego" or "fraudulent conveyance" related to CIRCOR and/or Watts'

present and past ownership of Leslie.[5] See, e.g., Plan, Sections 1.14 (defining "Asbestos PI

---

[5] As set forth in Article II.A.2 of the Disclosure Statement, in 1989, the stock of Leslie was purchased by Watts and Leslie became a wholly-owned subsidiary of Watts. In 1999, Watts spun off a number of subsidiary companies formerly included in its industrial, oil, and gas division, including Leslie Controls, Inc., as subsidiaries of (continued...)

36

Claim" as including (a) a Leslie Asbestos PI Claim; (b) a Derivative Liability Asbestos PI Claim;

(c) an Indirect Asbestos PI Claim; and (d) an Asbestos PI Trust Expense."); 1.63 (defining

"Derivative Liability Asbestos PI Claim" as claims against Watts Related or CIRCOR Related

Parties).  Such claims, by their nature, arise by reason of the CIRCOR or Watts' "ownership of a

financial interest in the debtor" or "involvement in the management of the debtor" (i.e., "alter

ego" claims), or "loan[s] or other financial transaction affecting the financial condition, of the

debtor or a related party." (i.e., "fraudulent conveyance" claims).    Accordingly, a Channeling

Injunction covering the CIRCOR Related Parties or Watts Related Parties complies with section

524(g)(4)(A)(ii).

The Asbestos PI Channeling Injunction is firmly supported by recent decisions and is

similar to the injunctions entered in other asbestos-related Chapter 11 cases.  See, e.g., In re

Federal Mogul Corp., et al., Case No. 01 10578 (Bankr. Del. Nov. 8, 2007); In re Owens

Corning, et al., Case No. 00 03837 (Bankr. Del. Sept. 26, 2006); In re Armstrong World Indus.,

Inc., Case No. 00 04471 (Bankr. Del. Aug. 18, 2006); In re USG Corp., et al., Case No. 01 02094

(Bankr. Del. June 15, 2006).  Thus, the Court may extend the Asbestos PI Channeling Injunction

to shield all Asbestos Protected Parties from liability for any Asbestos PI Claims, including any

future asbestos-related Demands.

_____

(…continued)

a newly-created company, CIRCOR.  In connection with the spin-off, a Distribution Agreement between Watts and
CIRCOR provided in part that "[o]n and after the Distribution Date, Circor shall indemnify . . . each member of the
Watts Group . . . (the 'Watts Indemnitees') from and against any and all damage, loss, liability and expense . . .
incurred or suffered by any of the Watts Indemnitees and arising out of . . . any of the Circor Liabilities, whether
before or after the Distribution Date."

46392/0001-6971070v4

D.    **Entry of the Asbestos PI Channeling Injunction Is Fair and Equitable with Respect to Future Asbestos Claimants.**

Section 524(g)(4)(B)(ii) requires a court to determine that entry of the channeling injunction, and the protection from liability that is afforded to the parties named therein, "is fair and equitable with respect to the persons that might subsequently assert such demands, in light of the benefits provided, or to be provided, to such trust on behalf of such debtor or debtors or such third party." 11 U.S.C. § 524(g)(4)(B)(ii).  Courts consider the value contributed in determining whether this provision is satisfied.  See, e.g. In re Kaiser Aluminum Corp., 2006 WL 616243, at *17 (Bankr. D. Del. Feb. 6, 2006) (holding that the issuance of a channeling injunction in favor of protected parties was fair and equitable in light of substantial contribution to the trust), aff'd, 343 B.R. 88 (D. Del. 2006); In re JT Thorpe Co., 308 B.R. 782, 790-91 (Bankr. S.D. Tex. 2003) (contributions to the trust provided benefits such that entry of channeling injunction under section 524(g) was fair and equitable), aff'd 2004 WL 720263 (S.D. Tex. Mar. 3, 2004).  To determine whether a channeling injunction is "fair and equitable," the court must examine the benefits of the contributions made by CIRCOR and Reorganized Leslie under the Plan.

Under the Plan, Leslie will contribute to the Asbestos PI Trust (1) the Leslie Promissory Note, in the face amount of $1 million, and (2) an assignment of any and all rights of Leslie (i) to proceeds under existing insurance policies and provide coverage for Asbestos PI Claims, and (ii) to $2,625,000 of the proceeds of an Insurance Settlement Agreement.  In addition, under the Plan, CIRCOR, on behalf of itself and Watts, will contribute to the Asbestos PI Trust (1) the CIRCOR Cash in the amount of $74 million, and (2) a pledge of 100% of the outstanding voting equity interests in Reorganized Leslie as security for the Leslie Promissory Note.  See Plan, Sections 1.48-1.50, 1.93, 9.2.

38

These substantial amounts were the products of due diligence on Asbestos PI Claims against Leslie, CIRCOR, and Watts, and extensive, arms-length negotiations between Leslie and CIRCOR on one hand, and the Ad Hoc Asbestos Claimants Group and its professionals, and the Pre-Petition Future Claimants' Representative and his professionals on the other.  As part of this diligence, these sophisticated parties and their counsel analyzed any potential exposure CIRCOR and Watts may have to Leslie's asbestos tort liability based on various theories of derivative liability, such as fraudulent conveyance, alter ego, or various state-law claims, which CIRCOR and Leslie maintain are meritless.  Indeed, no court has ever imposed liability on either CIRCOR or Watts for Leslie's distribution of products with asbestos-containing component parts, and neither CIRCOR nor Watts has ever paid to settle such a claim, leaving the value of any such claims questionable, and at most speculative.  Nonetheless, the parties examined potential liability exposure as well as costs of litigation and factored them into their final agreed contribution, arriving at final contribution amounts the parties and their counsel agreed were fair and equitable to both present and future claimants, in exchange for a Channeling Injunction that covers Leslie and the Watts and CIRCOR Related Parties.

Further, CIRCOR and Leslie's Contributions to the Plan allow future demand holders to recover much more than would otherwise be available through the tort system.  Without this substantial contribution, the holders of Asbestos PI Claims, including future claimants, likely would receive substantially less.  As explained, with Leslie's assets and available insurance quickly diminishing, future claimants in the tort system would soon be left to pursue only the speculative claims against CIRCOR or Watts on theories of derivative liability.  These claims are likely to yield either nothing at all, or substantially less than claims against Leslie itself. Therefore, the value of the CIRCOR contribution on behalf of itself and Watts (in exchange for

protection by the Channeling Injunction) far outweighs the amount future claimants are likely to recover against CIRCOR or Watts, and promotes a fair and equitable distribution of funds to Asbestos PI Claimants and Future Demand Holders.

In sum, without the CIRCOR and Leslie contributions to the Trust, an inequitable distribution of assets and lower recoveries would occur.  Instead, the Plan channels all Asbestos PI Claims to the Asbestos PI Trust for a fair and equitable distribution to all holders of Asbestos PI Claims.  The Asbestos PI Claims will be paid fairly and equitably through funds augmented by CIRCOR and Leslie's Trust Contributions.  Therefore, section 524(g)(4)(B)(ii) is satisfied.

46392/0001-6971070v4

## CONCLUSION

The Plan complies with and satisfies all of the requirements of sections 1129 and 524(g)

of the Bankruptcy Code and, thus, should be confirmed.

Dated: October 22, 2010
       Wilmington, Delaware

**COLE, SCHOTZ, MEISEL**
**FORMAN & LEONARD, P.A.**

By: *Marion Quirk*
    Norman L. Pernick (No. 2290)
    Marion M. Quirk (No. 4136)
    Sanjay Bhatnagar (No. 4829)
    500 Delaware Avenue, Suite 1410
    Wilmington, DE  19801
    Telephone: (302) 652-3131
    Facsimile: (302) 652-3117

      -and-

    David Dean
    300 East Lombard Street, Suite 2000
    Baltimore, MD  21202
    Telephone: (410) 230-0660
    Facsimile: (410) 230-0667

    Counsel for the Debtor and
    Debtor-in-Possession

46392/0001-6971070v4